**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

STEVEN J. RUSHING                              CIVIL ACTION

VERSUS                                         NO. 19-653-JWD-SDJ

JOHN YEARGAIN, et al.

---

**ORDER**

Before the Court are the following five (5) motions filed by both Parties in this litigation:

1. Motion to Extend Discovery Deadline for Written Fact Discovery (R. Doc. 34) filed by Defendants on January 29, 2021;

2. Expedited Motion to Compel Defendant Erin Watson Horzelski's Oral Answers to Deposition Questions (R. Doc. 35) filed by Plaintiff on February 4, 2021;

3. Expedited Motion to Compel Defendants' Answers to Discovery Requests (R. Doc. 36) filed by Plaintiff on February 4, 2021;

4. Expedited Motion to Continue the Deposition of Plaintiff (R. Doc. 37) filed by Plaintiff on February 4, 2021; and

5. Expedited Motion for 14 Day Extension of Expert Discovery (R. Doc. 60), filed by Plaintiff on April 5, 2021.

All of these Motions are opposed (R. Docs. 46, 47, 48, 49, and 62) and are discussed, in turn, below. The Court will first address the Motions to Compel and Motion to Continue before turning to the Motions for Extensions.

## I.    Relevant Background

This case arises out of the termination of the employment of Plaintiff, "a tenured full professor," at Southeastern Louisiana University ("SLU").[1]  On January 29, 2021, with the February 4, 2021 fact discovery deadline[2] fast approaching, Defendants filed a Motion to extend

---

[1] R. Doc. 1 at 2.
[2] R. Doc. 31.

that deadline for an unspecified amount of time to allow Plaintiff to respond to written discovery requests recently propounded on him by Defendants.[3]  Shortly thereafter, on February 4, 2021, Plaintiff filed three (3) discovery motions, seeking to compel Defendant Erin Watson Horzelski to orally respond to certain deposition questions,[4] to compel Defendants to more fully respond to certain of Plaintiff's discovery requests,[5] and to continue the deposition of Plaintiff.[6]

On February 11, 2021, the undersigned conducted a telephone conference with the Parties, at which was discussed the pending discovery motions.  At the conference, the Court strongly encouraged the Parties to work together to resolve their discovery disputes, and, to that end, ordered the Parties to meet and confer to attempt a resolution.[7]  The Parties also were ordered to file a Joint Status Report on or before February 22, 2021, and, if needed, file oppositions to the pending discovery motions by March 1, 2021.[8]  Failing to reach any level of compromise, the Parties filed separate Status Reports, Plaintiff on February 22, 2021 (R. Doc. 42), and Defendants on February 23, 2021 (R. Doc. 44), explaining that while compromises were discussed, the Parties were unable to resolve any of their disputes regarding discovery.[9]  Subsequently, on March 1, 2021, Defendants filed oppositions to Plaintiff's three pending motions (R. Doc. 46, 47, and 48), and Plaintiff filed an opposition to Defendants' motion (R. Doc. 49).  Plaintiff, on March 26, 2021, also filed Replies in support of his motions (R. Doc. 57, 58, and 59).

On April 5, 2021, the deadline for the close of expert discovery, Plaintiff filed the fifth motion here at issue, requesting a 14-day extension of the expert discovery deadline so that Plaintiff could obtain "a rebuttal expert report to support a motion in limine" to exclude the expert

---

[3] R. Doc. 34.
[4] R. Doc. 35.
[5] R. Doc. 36.
[6] R. Doc. 37.
[7] R. Doc. 40.
[8] *Id.*
[9] *See* R. Doc. 42 at 2-5; R. Doc. 44 at 2-5.

report of Defendants' expert for purposes of trial.[10]  This Motion also is opposed, with Defendants filing their Opposition on April 12, 2021 (R. Doc. 64), in response to an expedited briefing schedule issued by the Court.[11]  Plaintiff then filed a Reply in support of his request (R. Doc. 66) on April 15, 2021, which was followed shortly thereafter by a Sur-reply from Defendants on April 20, 2021 (R. Doc. 67).

## II.    Law and Analysis

### A.  Motions to Compel

#### 1.  Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (internal quotations omitted).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other

---

[10] R. Doc. 60 at 1.
[11] R. Doc. 61.

source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1)-(2). A party must respond or object to interrogatories and requests for production in writing within 30 days of service. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b).

If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2 (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once the moving party establishes that the

materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.* (quoting *Mirror Worlds*, 2016 WL 4265758, at *1). *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."). "A trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (citation omitted).

### 2. Plaintiff's Expedited Motion to Compel Defendant Erin Watson Horzelski's Oral Answers to Deposition Questions (R. Doc. 35)

Plaintiff's first Motion to Compel seeks to compel Defendant Erin Watson Horzelski ("Dr. Horzelski") to provide oral answers to three questions posed to her by Plaintiff's counsel during her deposition occurring on January 25 and 26, 2021.[12] According to Plaintiff, in response to three specific questions asked by Plaintiff's counsel, Dr. Horzelski "only provided evasive and non-responsive remarks."[13] However, in his Reply, Plaintiff concedes that Dr. Horzelski answered one of these three questions and withdraws it from his Motion.[14] As such, Plaintiff hereby seeks oral answers to the following two questions:

1.  Are you responsible for making sure that the proper procedures are followed during the Faculty Senate Executive Council meetings?

2.  Is the parliamentarian supposed to advise you on parliamentary procedures during the Faculty Senate Executive Council meetings?

---

[12] R. Doc. 35 at 1-2.
[13] *Id.* at 2.
[14] R. Doc. 58 at 5.

As argued by Plaintiff, Dr. Horzelski was asked these questions "under oath, numerous times" but "refused" to answer them.[15]  Plaintiff also takes issue with defense counsel's objections that these two questions were asked and answered, claiming such objections were "not in good faith" and "only caused to impair the orderly taking of Dr. Horzelski's deposition."[16]

Defendants, in contrast to Plaintiff's assertions, claim that Dr. Horzelski "did appear for her deposition (twice), did answer all questions asked, never refused to answer any question (nor was she ever instructed not to answer), and provided both direct and explanatory responses each of the *multiple* times that the three (3) questions at issue were posed."[17]  Defendants also state that "to the extent that plaintiff's counsel presented the motion allegedly to obtain only a direct answer, i.e. 'yes' or 'no,' Horzelski agreed to submit written responses under oath, making this motion entirely unnecessary."[18]  Defendants then cite specific portions of the transcripts showing where Dr. Horzelski provided answers to the questions posed by Plaintiff's counsel.[19]

In reviewing Plaintiff's request, the Court notes that for Question 1, Plaintiff's counsel asks it approximately five (5) different times,[20] and each time, Dr. Horzelski provides an answer, albeit not in the form of a "yes" or "no," which appears to be what Plaintiff here seeks.  Similarly, Question 2 is asked approximately four (4) different times,[21] with responses provided each time again.  Further, while defense counsel does object as asked and answered several times, Dr. Horzelski is never instructed not to answer and never fails to provide a response each time.

---

[15] R. Doc. 35 at 2.
[16] R. Doc. 35-1 at 6.
[17] R. Doc. 47 at 1.  Note that this Opposition was filed before Plaintiff withdrew the third question from his Motion, hence the reference to "three" questions.
[18] *Id.*
[19] *Id.* at 4-9.
[20] R. Doc. 35-2 at 3, 12:17-13:3; 4, 13:18-14:3; 4, 14:23-15:5; 4-5, 16:10-17:3; 5, 17:4-18:1.
[21] *Id.* at 8, 31:16-32:3; 8, 32:4-9; 8, 32:11-20; 9, 33:7-20.

As set forth above, Federal Rule of Civil Procedure 26(b)(2)(C) allows a court, "[o]n motion or on its own" to "limit the frequency or extent of discovery otherwise allowed…if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Here, Plaintiff is asking to reconvene a deposition that already was taken over the course of two days to again ask questions that already were asked multiple times and for which responses were given, even though defense counsel has offered to provide sworn written responses to these same questions. Finding that this information can be obtained, if needed, from some other more convenient, less burdensome and less expensive source and, given the two-day deposition, Plaintiff has had ample opportunity to seek this information, the Court **denies** this Motion by Plaintiff.

### 3. Plaintiff's Expedited Motion to Compel Defendants' Answers to Discovery Requests (R. Doc. 36)

Plaintiff's second Motion to Compel seeks an order compelling Defendants to provide supplemental responses and all responsive document to certain specified requests for production and to provide complete answers to certain specified interrogatories.[22] According to Plaintiff, Defendants provided responses to Plaintiff's propounded discovery requests on December 29, 2020.[23] On February 1, 2021, Plaintiff requested a Rule 37 conference to discuss Defendants' discovery responses, which the Parties subsequently held on February 3, 2021.[24] Per Plaintiff, he represented at said conference that he "might withdraw this motion in whole or in part if Defendant

---

[22] Specifically, Plaintiff seeks "supplemental responses and all documents responsive to requests for production numbers 1, subparts 5, 8, and 11, and requests for production numbers 16, 18, 19 and 21" and "full and complete answers to interrogatories 6, 8, 10, 12 and 13." R. Doc. 36 at 1.
[23] R. Doc. 36 at 2.
[24] *Id*.

were to provide complete discovery responses to his satisfaction."[25]  However, at the conclusion of the conference, Defendants apparently did not provide a specific date on which they would provide revised responses, and fact discovery closed the following day.[26]

In their Opposition to this Motion, Defendants claim that at the February 3, 2021 Rule 37 conference, for "each of the enumerated concerns [of Plaintiff], defense counsel agreed to either remove or clarify any disputed objection or to supplement with any additional documents… and to verify that the documents that were referenced were, in fact, identified properly in each response to the extent any response was found unclear or incomplete."[27]  Defendants further state that while no specific date for their revised responses was given at the time of the conference, none was requested by Plaintiff, though defense counsel "agreed to respond as soon as possible and likely by the end of the following week."[28]  However, when a specific date was requested, defense counsel "agreed to respond on or before March 5th."[29]  Thus, per Defendants, this Motion is moot.[30]

Defendants further argue that their discovery responses are sufficient and not objectionable, but state that despite this position, they have "agreed to review, revise and

---

[25] *Id.* at 3.

[26] *Id.*  In his Motion, Plaintiff also claims that while Defendants requested a 10-day extension for providing their discovery responses, they did not actually provide their responses until almost a month after they originally were due. *Id.*  Per Plaintiff, "[a]s a result, Defendants may have waived all objections contained within their discovery responses." *Id.*  Defendants, in response, claim that "such a finding would not be appropriate because at the time their discovery responses were due, the parties were communicating in a good faith attempt to resolve their discovery disputes, and defendants have persisted in their efforts to satisfy plaintiff's requests without court intervention."  R. Doc. 48 at 6.  Because the Court does not know the extent of the Parties' communications during the time between the expiration of the agreed-on extension and the date responses were submitted, it cannot determine whether, in fact, the Parties were communicating about such.  Further, and more importantly, because Plaintiff does not seek a ruling from this Court finding all objections waived by Defendants, as indicated by his use of the word "may" and his request only for supplemental responses as well as costs and attorney's fees (R. Doc. 36 at 4; R. Doc. 57 at 5), the Court will not reach that argument here.

[27] R. Doc. 48 at 2-3.

[28] *Id.* at 3.

[29] *Id.*

[30] *Id.*  The Court notes that Defendants also argue that Plaintiff previously agreed with Defendants that the Motion was moot, even specifically stating so in the original draft of the Joint Status Report prepared by Plaintiff.  *Id.*; R. Doc. 48-4 at 7.  However, per Defendants, "[w]hen defendants would not agree to the language of plaintiff's proposed Joint Status Report, however, plaintiff's counsel retracted their agreement regarding this Motion being 'moot'."  *Id.*

supplement all of the enumerated responses to ensure that they are, in fact, accurate and complete."[31]  Plaintiff concedes this point.  But according to Plaintiff, in his Reply to Defendants' Opposition, "[o]n March 5, 2021, Defendant[s] inadvertently sent a draft supplemental discovery response to Plaintiff with responsive documents, and then on March 6, 2021 Defendants provided supplemental discovery responses and responsive documents."[32]  Thus, Plaintiff states that the "remaining basis for this motion is that Defendant[s] ha[ve] not provided sufficient supplemental responses and all documents responsive to requests for production numbers 1, subparts 5, and 11, and request for production number 21,"[33] thereby considerably narrowing the scope of this Motion.

The Court is at a disadvantage here because, while Plaintiff complied with Local Civil Rule 37[34] in providing the "verbatim response or objection" to each discovery request that was the initial subject of his Motion to Compel, he has not provided the verbatim supplemented responses subsequently provided by Defendants which he continues to complain are insufficient.  The Court does not know what specifically was provided by Defendants as supplemental responses to these remaining disputed discovery requests, other than Plaintiff's descriptions and assertions.  While Plaintiff's failure to adhere to Local Rule 37 alone could warrant denial of Plaintiff's requests, in light of the ongoing and extensive disputes among the Parties in this case, the Court addresses each remaining disputed discovery request below in an effort to facilitate completion of discovery in this case.

### 1.  Request for Production No. 1, Subpart 5

---

[31] *Id.* at 8.
[32] R. Doc. 57 at 2.
[33] *Id.* at 1.
[34] According to Local Civil Rule 37: "Motions addressed to issues concerning discovery propounded under Fed. R. Civ. P. 33, 34, 36 and 37 must quote verbatim each interrogatory, request for production, or request for admission to which the motion is address, followed immediately by the verbatim response or objection which [was] provided thereto."

Request for Production No. 1, subpart 5 seeks "[a]ll post-hearing pleadings/filings by plaintiff for rehearing, reconsideration and/or appeal of his termination and/or the findings and Recommendations of the Hearing Panel."[35]  According to Plaintiff, "Defendants have now cited various unidentified pleadings and briefs in a prior suit for which the undersigned does not represent [Plaintiff]."[36]  Plaintiff further complains that Defendants "cite to 'exceptions, judgments…hearing transcripts, exhibits, reasons for judgment, final judgment, [and] appeal (2020-CA-669) records and briefs (Volumes I and II)'" but have not produced these documents, which Defendants have identified as a category of documents they will and/or intend to use as evidence in this case.[37]  In their initial objection and response to this discovery request, Defendants assert "that plaintiff already has the documents from the University of Louisiana System Board appeal in his possession or control and/or records are available to him from the USDC/MDLA."[38]

"The Federal Rules of Civil Procedure require that a responding party produce responsive documents that are within their 'possession, custody or control,' and federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' of a responding party if that party either has 'actual possession, custody or control' of the documents or if that party 'has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action'." *F & A APLC v. Core Funding Group, L.P.*, No. 07-543, 2009 WL 2214184, at *2 (M.D. La. July 23, 2009) (quoting *Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004)). It is unclear to the Court whether Defendants have these documents in their actual possession or custody.  As such, if Defendants have these documents in their possession, custody, or control,

---

[35] R. Doc. 36-1 at 3.
[36] R. Doc. 57 at 3.
[37] *Id.*
[38] R. Doc. 36-1 at 4.

they are instructed to produce them.  If Defendants are not in possession, custody, or control of such documents, they should affirmatively state same, and, as alleged by Defendants, Plaintiff should be able to obtain those documents on his own based upon the description of those documents and the appellate case number provided by Defendants.  This request, therefore, is **granted in part**.

### 2.  Request for Production No. 1, Subpart 11

It appears from Plaintiff's response to Defendants' supplemented response to this discovery request that Plaintiff still seeks production of copies of the "SLU faculty handbook" and the "University of Louisiana System Rules" with this request.[39]  Once again, it is unclear to the Court whether Defendants actually have copies of these documents in their possession or custody.  As such, if Defendants have these documents in their possession, custody, or control, they are instructed to produce them.  If Defendants are not in possession, custody, or control of such documents, they should affirmatively state same, and, as alleged by Defendants, Plaintiff should be able to obtain those documents on his own through the SLU website.[40]  This request, therefore, also is **granted in part**.

### 3.  Request for Production No. 21

Plaintiff's third remaining request is for production of "all rules, regulations and/or documents indicating that [Plaintiff] was required to be evaluated by an SLU designated psychiatrist or psychologist."[41]  While Plaintiff admits that Defendants have produced documents responsive to this request, Plaintiff argues that none of those documents produced "are SLU rules

---

[39] R. Doc. 57 at 4.

[40] R. Doc. 36-1 at 4.  In their original objections and response to Request for Production No. 1, subpart 11, Defendants "refer plaintiff to the Southeastern Louisiana University Faculty Handbook, the University Catalogue, University of Louisiana System Rules, and departmental evaluation procedures, all of which are available through the SLU website and/or are already in plaintiffs [sic] possession…"  *Id.*

[41] R. Doc. 57 at 4.

or regulations as were…clearly requested."[42]    In reviewing Defendants' initial response and objections to this discovery request, the Court notes that Defendants identify the SLU Violence in the Workplace Plan as well as the SLU Faculty Handbook, ostensibly containing relevant regulations.[43]    Thus, Plaintiff's claim is misleading; while these documents may have not been produced, they have been identified.  The Court previously has addressed the issue of production of the SLU Faculty Handbook.  It also stands to reason that, if the SLU Faculty Handbook is available on the SLU website, the SLU Violence in the Workplace Plan is as well.  However, the Court, in an abundance of caution, will here instruct Defendants that if they have either of these documents, or documents containing other pertinent rules and/or regulations in their possession, custody, or control, they are instructed to produce them.  If Defendants are not in possession, custody, or control of such documents, they should affirmatively state same, and inform Plaintiff of the publicly available source where such documents may be found.  This request also is **granted in part**.

Finally, the Court notes that, in his Motion, Plaintiff requests that Defendants be ordered to pay "Plaintiff's reasonable attorneys' fees and costs for filing the instant motion."[44]    According to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, "[i]f the motion [to compel] is granted…the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure,

---

[42] *Id.* at 5.
[43] R. Doc. 36-1 at 7.
[44] R. Doc. 36 at 4.

response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." While the Court does grant Plaintiff some modicum of relief here, the Court declines to award fees and costs pursuant to Rule 37(a)(5)(A)(iii). Not only did Plaintiff fail to fully comply with Local Rule 37 in providing the supplemental responses of Defendants, but the Court also will not reward either side in this series of discovery disputes, given the unnecessary bickering and refusal to cooperate demonstrated by both parties.

### B. Motion to Continue

#### 1. Plaintiff's Expedited Motion to Continue the Deposition of Plaintiff (R. Doc. 37)

In his Expedited Motion to Continue the Deposition of Plaintiff, Plaintiff seeks to continue his own deposition "for the limited purpose of allowing the undersigned to cross examine the Plaintiff which was not done during his deposition."[45] According to Plaintiff's Motion, Plaintiff's deposition was conducted over the course of two days, January 26 and 27, 2021.[46] On January 27, 2021, Plaintiff's counsel moved to terminate Defendant's examination of Plaintiff pursuant to Rule 30(d)(1) of the Federal Rules of Civil Procedure,[47] asserting that, although "Defendants had not yet concluded their examination of [Plaintiff]," they had reached the seven-hour time limit.[48] The Parties agree that Defendants objected to terminating the deposition, but they disagree as to what happened thereafter.[49] According to Plaintiff, Plaintiff's counsel "attempted to confer so as to continue [Plaintiff's] deposition so that all parties could complete their examination, but Defendants refused."[50] According to Defendants, after their objection, Plaintiff's counsel stated

---

[45] R. Doc. 37 at 1.
[46] Id.
[47] Rule 30(d)(1) provides: "Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."
[48] R. Doc. 37 at 1.
[49] Id. at 2.
[50] Id.

on the record that Plaintiff objects to any court order that would extend the deposition "because I don't see any need for it" and that in an off-record discussion thereafter, while defense counsel tried "to amicably resolve the matter," Defendants "were 'offered' the choice of agreeing to plaintiff's demands in lieu of terminating plaintiff's deposition and/or defending other discovery motions."[51]  Regardless of which side is correct, the Parties agree that no agreement was reached, resulting in Plaintiff filing the instant motion.

As such, before the Court is Plaintiff's request to compel reconvention of Plaintiff's own deposition for the limited purpose of allowing Plaintiff's counsel to examine Plaintiff.  The Court will not grant this.  Setting aside the hotly contested issue among the Parties as to whether the seven-hour limited actually had been reached,[52] the Court turns, again, to Rule 26(b)(2)(C), set forth above.  As argued by Defendants, the testimony Plaintiff's counsel seeks to elicit "can be obtained by his attorneys outside of the deposition setting" including Plaintiff's testimony at trial or through submission of an affidavit.[53]  Plaintiff responds that, in addition to a desire to "address issue[s] raised during Defendants' examination," he wants "to preserve his testimony" because his "sister passed away from Covid-19 a few days prior to February 18, 2021.  Thus, out of an abundance of caution, Plaintiff request[s] that his deposition resume in the event that he were to contract the virus and die."[54]

---

[51] R. Doc. 46 at 1-2.

[52] As argued by Plaintiff's counsel, he terminated Plaintiff's deposition when it reached the seven-hour time limit, even though Defendants had not yet concluded their examination of Plaintiff.  R. Doc. 37 at 1.  Defendants, in response, point out that the total time of testimony of Plaintiff was only 5 hours and 43 minutes, "which included formalities, 'breaks,' and delays caused by plaintiff's shuffling through exhibits and lengthy unresponsive answers that required redirection."  R. Doc. 46 at 3.  While acknowledging that Defendants' examination of Plaintiff "may not have exceeded the seven (7) hours," Plaintiff claims that defense counsel was late for the depositions on both days, as evidenced by the transcript indicating that testimony began 43 minutes after the scheduled start time on the first day and 36 minutes after the scheduled start time on the second day.  R. Doc. 59 at 2.  These delays, however, are explained by Defendants as "solely the result of the court reporter appearing at the wrong location (1/26) and internet connectivity issues with Zoom/equipment malfunctions (1/27), *not* any tardiness on the part of defense counsel."  R. Doc. 46 at 2-3.

[53] R. Doc. 46 at 4.

[54] R. Doc. 59 at 3.

While the Court sympathizes with Plaintiff for his loss, it cannot base its decision on the possible outcome of an illness that Plaintiff has not even contracted and may never contract. Further, and more importantly, the Court admits it is baffled by Plaintiff's request here. Plaintiff's counsel terminated the ongoing deposition of his own client because, according to him alone, the deposition had reached its permitted seven-hour limit. Reconvening Plaintiff's deposition now would still exceed the seven-hour limit, under Plaintiff's reasoning. Further, Plaintiff invokes Rule 30(d)(1) to support his position, which provides that a Court "must allow additional time…to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1). Here, to the Court it appears that the primary impediment was Plaintiff's counsel, who terminated the deposition of his own client, knowing fully at that time that he had not cross-examined the witness. This cannot possibly be the scenario contemplated by this Rule.

Further, the testimony being sought by Plaintiff's counsel is that of his own client, whose testimony he can obtain, whether, *e.g.*, in trial or via sworn affidavit, at any time, and certainly in a manner less burdensome than reconvening a deposition, as directed by Rule 26(b)(2)(C). In addition, Plaintiff's request seeks only to allow Plaintiff's counsel to cross-examine Plaintiff; it does not include a request to allow Defendants to finish their direct examination, which all Parties agree was not completed prior to termination of the deposition, nor does it allow Defendants an opportunity for redirect. This has the potential to prejudice Defendants and will not be allowed. As such, this Motion by Plaintiff is **denied**.

### C. Motions to Extend Deadlines

#### 1. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) specifies that a scheduling order issued in a case "may be modified only for good cause and with the judge's consent." "The good cause standard

requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension'." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). The following four factors may be considered when determining whether there is good cause under Rule 16(b)(4): (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (internal quotations and citations omitted). "The Court has 'broad discretion to preserve the integrity and purpose of the pretrial order'." *Kerek v. Crawford Elec. Supply Co., Inc.*, No. 18-76, 2019 WL 1505239, at *2 (M.D. La. Feb. 26, 2019) (quoting *S&W Enters.*, 315 F.3d at 535)).

### 2. Defendants' Motion to Extend Discovery Deadline for Written Fact Discovery (R. Doc. 34)

On January 29, 2021, Defendants filed the instant Motion to Extend Discovery Deadline for Written Fact Discovery (R. Doc. 34). In their Motion, Defendants seek to extend the February 4, 2021 fact discovery deadline for an unspecified period of time to allow Plaintiff time to respond to untimely discovery requests submitted by Defendants.

According to Local Civil Rule 26(d)(2), "[w]ritten discovery is not timely unless the response to that discovery would be due before the discovery deadline." Further, the Rule clearly states that "[t]he responding party has no obligation to respond and object to written discovery if the response and objection would not be due until after the discovery deadline." Local Civil Rule 26(d)(2). Here, Defendants served discovery requests on Plaintiff on January 19, 2021, only 16 days before the fact discovery deadline. While Defendants provide the alleged reasons and/or excuses for this delay, presumably in an attempt to demonstrate "good cause" to extend the fact

discovery deadline, they are missing the point.    Their discovery requests were not timely, and

pursuant to the Rules of this Court, Plaintiff "has no obligation to respond and object to" them.

The Court will not extend the fact discovery deadline simply to impose upon Plaintiff an obligation

to respond that does not exist.

But, even considering the four factors set forth by the Fifth Circuit, the Court finds that

Defendants have failed to establish good cause for their request.  *See Squyres*, 782 F.3d at 237.

First, Defendants' explanation for failure to timely comply is that during the time around which

Defendants' requests were due, "defense counsel was also involved in accommodating the

scheduling of and participation in of [sic] seven depositions noticed by plaintiff's counsel, as well

as a number of other matters."[55] Defendants continue that "[defense] counsel's legal assistant was

unable to work from the holidays in 2020 until January 19, 2021, due to COVID19 related family

emergencies" and the failure to submit the prepared discovery requests was not discovered until

the assistant's return.[56]  The Court finds that this factor does not weigh in Defendants' favor.

Simply participating in discovery in a case is not a sufficient reason for failure to comply with a

scheduling order deadline.  Similarly, the absence of defense counsel's assistant is not a sufficient

reason either.  Defense counsel specifically states that she drafted all of the written discovery on

behalf of all named Defendants;[57] as such, she is capable of calendaring their due date and sending

them to opposing counsel and should be ensuring same is completed.  As further explained by

Defendants, "the initial delay in serving the requests was not intentional, but the result of a clerical

oversight and other difficulties of working within the emergency circumstances created by the

pandemic."[58]  This falls short of the requirement of the moving party to show that the deadlines

---

[55] R. Doc. 34-2 at 2.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 3-4.

cannot reasonably be met despite the diligence of the party needing the extension, as it is the result of a clerical oversight and occurred almost a year into the global pandemic, giving counsel sufficient time to make accommodations for "circumstances created by the pandemic."

The second factor—the importance of the modification—weighs against Defendants here. In their Motion, Defendants do not once argue the importance of this modification.[59]  With regard to potential prejudice in allowing the modification, Plaintiff does not argue this either in his Opposition to Defendants' Motion.   While Plaintiff argues that Defendants' request is not proportional to the needs of the case and overly burdensome,[60] which mimic the language of general objections to Defendants' discovery requests, Plaintiff has not claimed that he will be prejudiced in any way by having to respond to them.  As such, this factor weighs slightly in favor of Defendants.  Finally, while a continuance to cure such prejudice could be made available, particularly as no trial date has yet been set in this case, the granting of such a continuance would impose a responsibility on Plaintiff to respond to eighty (80) requests for production and sixteen (16) interrogatories, which obligation, because of Defendants' untimely submission, has been extinguished per Local Rule 26(d)(2).  Thus, looking at the totality of factors, the Court finds that Defendants fail to establish good cause for extending the fact discovery deadline.

Because Defendants' discovery requests were untimely and because Defendants have failed to show good cause for extending the fact discovery deadline, their Motion is **denied**.

### 3.  Plaintiff's Expedited Motion for 14 Day Extension of Expert Discovery (R. Doc. 60)

---

[59] The Court notes that in his Opposition to Defendants' Motion, Plaintiff states: "Defendants have represented to [Plaintiff's] counsel that they do not require responses to their Requests for Production of Documents."  R. Doc. 49 at 1.  Assuming the validity of this assertion, which the Court has no reason to question, this would appear to indicate that the modification is not of great importance to Defendants.

[60] R. Doc. 49 at 2.

The second pending motion for an extension was filed by Plaintiff and seeks a 14-day extension of the expert discovery deadline to allow Dr. Robert Blanche, a treating physician of Plaintiff, to "prepare a rebuttal expert report to support a motion in limine to exclude Dr. Artecona's [Defendants' expert] expert report and for purposes of trial."[61] On April 30, 2020, this Court issued a Scheduling Order setting, among others, dates regarding expert reports and discovery.[62] Plaintiff was to disclose the identities and resumes of their experts by January 5, 2021, and submit expert reports to Defendants by February 5, 2021.[63] Defendants were to disclose the identities and resumes of their experts by February 5, 2021, and submit expert reports to Plaintiff by March 5, 2021.[64] Expert discovery closed one month later, on April 5, 2021.[65] On March 5, 2021, Defendants submitted the expert report of psychiatrist Dr. Jose Artecona to Plaintiff, and on March 23, 2021, Plaintiff asked to take the deposition of Dr. Artecona.[66] However, Defendants indicated that it was not possible to schedule that deposition prior to the close of expert discovery.[67] Plaintiff subsequently withdrew his request to depose Dr. Artecona.[68] Shortly thereafter, on April 5, 2021, Plaintiff filed the instant motion to extend the expert discovery deadline.

The reason Plaintiff seeks this extension is to allow Dr. Robert Blanche, a psychiatrist who previously treated Plaintiff, to prepare a rebuttal expert report "to support a motion in limine to exclude Dr. Artecona's expert report and for purposes of trial," as previously stated.[69] Dr. Blanche was included in Plaintiff's Expert Witness List, listed among the "healthcare providers" Plaintiff

---

[61] R. Doc. 60 at 1.
[62] R. Doc. 29.
[63] *Id.* at 1-2.
[64] *Id.*
[65] *Id.* at 2.
[66] R. Doc. 66 at 2; R. Doc. 62 at 7 n. 4.
[67] *Id.*
[68] *Id.*
[69] R. Doc. 60 at 1.

"may and/or will call…to testify at the trial in this matter who have provided [Plaintiff] with medical care."[70]  Dr. Blanche was not included in Plaintiff's list of "expert witnesses who may and/or will testify at the trial of this matter."[71]  Further, no resume for Dr. Blanche was provided at the time, and no expert report was ever produced.

In response to these arguments, Plaintiff asserts that Dr. Blanche's *curriculum vitae* ("CV") was produced.[72]  Per Plaintiff, during Plaintiff's tenure hearing on February 15, 2019, "Dr. Blanche provided a verbal description of his curriculum vitae" and that his CV "was part of the 'Petition' that Plaintiff filed on about March 19, 2019, with the University of Louisiana System Board, requesting a review of the Tenure Review Committee's recommendation to terminate his employment."[73]  Thus, per Plaintiff, "Defendants' statements… that Defendants never received a copy of Dr. Blanche's curriculum vitae are inaccurate."[74]  The Court, however, disagrees with Plaintiff's assertion that producing Dr. Blanche's CV in a wholly separate proceeding not before this Court satisfies the requirement of production in this Court established in this case's Scheduling Order.

The question before the Court, then, is whether Plaintiff has demonstrated good cause for granting the requested extension.  Turning once again to the guiding "good cause" factors established by the Fifth Circuit, the Court first examines Plaintiff's explanation for failing to timely

---

[70] R. Doc. 60-4 at 2.

[71] *Id.* at 1.

[72] The Court notes that, with this argument, Plaintiff has changed his tune.  In his initial Motion, Plaintiff plainly admits: "While Defendants are correct that Plaintiff has not provided Dr. Blanche's resume, this deficiency can be easily cured…"  R. Doc. 60 at 3.  However, in his Reply, Plaintiff claims that Dr. Blanche's CV was produced to Plaintiff in connection with Plaintiff's tenure hearing.  R. Doc. 66 at 1-2.

[73] R. Doc. 66 at 1-2.  The Court notes that Plaintiff also here claims that defense counsel Winston DeCuir, Jr., stipulated to accept Dr. Blanche as an expert witness in the field of psychiatry at Plaintiff's February 15, 2019 tenure hearing, and that he was so accepted by the Administrative Appeal Judge presiding over that case.  *Id.* at 2.  However, the Court finds this information irrelevant to the issue here at hand.  Whether or not Dr. Blanche is sufficiently qualified to be an expert is not before the Court.

[74] *Id.*

comply with the Scheduling Order.  Here, Plaintiff fails to fully explain his failure to timely comply.  To the Court, it simply appears that post-production of Dr. Artecona's report by Defendants, Plaintiff decided for the first time to seek a rebuttal report thereto, which decision occurred well after expiration of the expert disclosure and report deadlines for Plaintiff.  The untimeliness of this decision is further exacerbated by the fact that Plaintiff, who received Dr. Artecona's expert report on March 5, 2021, waited almost three weeks, until March 23, 2021, to request the deposition of Dr. Artecona. Then, upon finding out that that could not be accomplished before the expert discovery deadline of April 5, 2021, and "after further consideration[,] Plaintiff decided that Dr. Artecona's testimony would not be useful" in that it "would not provide Plaintiff with an independent and/or third-party assessment" of certain of his findings.[75]  As Plaintiff was informed of Defendants' intent to produce an expert report by Dr. Artecona in early February but failed to take any action until two months later, when, on the deadline for completing expert discovery, Plaintiff filed the instant Motion, the Court finds this factor weighs against a finding of good cause here.

Turning to the second factor—the importance of the modification—Plaintiff claims Dr. Blanche's report is needed "to address whether Dr. Artecona's report is based on sufficient facts or data, whether it is the product of reliable principles or methods, and whether Dr. Artecona has reliably applied those principles and methods to the facts in this case in rendering his report."[76] Plaintiff further alleges this information is needed "to support a motion in limine to exclude Dr. Artecona's expert report."[77]  While the Court understands Plaintiff's reason for seeking an extension that would allow Plaintiff to obtain this report, the Court finds this reason no more

---

[75] R. Doc. 66 at 2-3.
[76] R. Doc. 60-1 at 1.
[77] *Id.*

important than the position of any party who opposes the expert report provided by their opponent. This is not an argument unique to this case. This factor weighs only slightly, if at all, in favor of a finding of good cause.

The third factor examines any potential prejudice in allowing the modification.  The Court here finds that allowing such a rebuttal report would unfairly prejudice Defendants.  Plaintiff here seeks only enough time to allow his newly-named expert to file a rebuttal report.  Allowing Plaintiff to name a new expert and provide a new report at the eleventh hour would necessarily preclude Defendants from being able to depose Dr. Blanche or otherwise conduct any discovery concerning his report and from being able to rebut the report in any meaningful way.  In arguing that Defendants will not suffer any prejudice by the granting of this Motion, Plaintiff notes that no trial date is set in this case, which the Court finds irrelevant, and that Dr. Blanche's report "would necessarily be produced to Defendants and would arm Defendants with the factual bases for the motion in limine to be filed by Plaintiff as to Dr. Artecona."[78]  Providing Defendants with the bases for a future motion in limine does not undo the prejudice created by filing a last minute expert report from a purported expert that Defendants will not be able to depose or to which report Defendants cannot respond.  As such, the Court finds that this factor, too, weighs against a finding of good cause.

The final factor to consider is whether a continuance is available to cure such prejudice. The Court finds this factor neutral.  While the expert discovery deadline could conceivably be extended for a period of time to allow, for example, Defendants to depose Dr. Blanche, such an extension, first, would not extend the expert disclosure or report submission deadline for Defendants and, second, would necessarily require an extension of other pretrial deadlines already

---

[78] R. Doc. 66 at 3-4.

set.[79]  Thus, absent a veritable overhaul of this case's Scheduling Order, a continuance that would remedy the prejudice caused by this Motion is not available.  As such, this factor also weighs against a finding of good cause.

Thus, a weighing of the Fifth Circuit factors finds Plaintiff falling short of showing good cause for the extension of the expert discovery deadline in this case.  More importantly, Plaintiff has failed to demonstrate the diligence of the party needing the extension, which is the backbone of the good cause standard.

Further, the Court is not convinced the Plaintiff is even seeking an extension of the proper expert deadline.  As Defendants have pointed out, Plaintiff here seeks an extension of the expert discovery deadline—which, the Court notes, is the only expert deadline for Plaintiff that had not yet expired and the only one for which Plaintiff could still file a timely motion for extension—"to make a very late disclosure of an expert witness and to produce an expert report beyond the deadline for such disclosures."[80]  The Court will not extend this inapplicable deadline simply because it is the only deadline still available to Plaintiff.  Plaintiff does not seek to conduct expert discovery; rather, he has made clear his intention to produce a rebuttal expert report by a treating physician of Plaintiff. This physician has not been previously disclosed as a report-producing expert in this case and his CV has not been produced in this litigation—both of which events have their own specified deadlines that expired two or more months before the instant Motion was filed.

Because, *inter alia*,  Plaintiff failed to timely disclose Dr. Blanche as an expert and provide his CV in connection with this litigation, because Plaintiff has failed to demonstrate good cause exists for granting this extension, because what Plaintiff seeks is not actually expert discovery, and

---

[79] The deadline for filing disposition and *Daubert* motions in this case is May 5, 2021.  R. Doc. 29 at 2.
[80] R. Doc. 62 at 1.

because the alleged expert discovery deadline being sought does not allow for actual discovery to be conducted by Defendants, to their potential prejudice, this Motion is **denied**.

## III.    Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Extend Discovery Deadline for Written Fact Discovery (R. Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Expedited Motion to Compel Defendant Erin Watson Horzelski's Oral Answers to Deposition Questions (R. Doc. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Expedited Motion to Compel Defendants' Answers to Discovery Requests (R. Doc. 36) is **GRANTED IN PART** and Defendants are instructed to provide supplemental responses to Requests for Production No. 1, subparts 5 and 11, and No. 21 as set forth above **within 21 days** of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Expedited Motion to Continue the Deposition of Plaintiff (R. Doc. 37) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Expedited Motion for 14 Day Extension of Expert Discovery (R. Doc. 60) is **DENIED**.

Signed in Baton Rouge, Louisiana, on April 28, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**