UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DR. STEVEN J. RUSHING

VERSUS

DR. JOHN YEARGAIN, ET AL.

CIVIL ACTION

NO. 19-653-JWD-SDJ

**RULING ON DEFENDANTS' DAUBERT MOTION IN LIMINE
TO STRIKE PLAINTIFF'S EXPERT WITNESSES AND REPORTS**

Before the Court is *Defendants' Daubert Motion in Limine to Strike Plaintiff's Expert Witnesses and Reports* ("Motion") brought by defendants Dr. John Yeargain, Tara Dupre, Dr. Erin Watson Horzelski and Dr. John Crain ("Defendants"). (Doc. 85.) It is opposed by plaintiff Steven J. Rushing ("Rushing" or "Plaintiff"). (Doc. 97.) The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff was a tenured professor of music at Southeastern Louisiana University ("SLU"). Defendants are various officials at SLU. According to Plaintiff, "Defendants … had [Rushing] terminated from his full professor position on February 28, 2019." (Doc. 83 at 3; *see also* Doc. 1 at 2, ¶ 9.)[1] Plaintiff appealed that decision to the Board of Supervisors for the University of Louisiana System which upheld the decision to terminate him. (Doc. 1 at 2, ¶¶ 9-10.)

Plaintiff acknowledges that he "suffers from depression and bipolar II" and is "an 'idealist' and a gadfly … unable to ignore what he feels to be unfairness or injustice…." (Doc. 83 at 2.) Plaintiff "made several complaints that university officials had committed fraud" as defined in

---

[1] Because Plaintiff's opposition to the Motion focuses on the merits of his opposition, the background facts are drawn from his Complaint (Doc. 1), and his memorandum in support of this *Daubert* motion to exclude the expert testimony of Defendants' expert, Dr. Jose Artecona. (Doc. 83.)

1

SLU's Faculty Handbook. (*Id*.) According to Plaintiff, instead of taking action regarding his allegations of fraud, Defendants "claim[ed] he was mentally ill and that he presented a possible 'psychological threat.' " (*Id*. at 3.) Rushing was not allowed to speak at an October 3, 2018, Faculty Senate meeting, was heckled, and was removed by Campus Police. (*Id*.) Defendants attempted to have Plaintiff "undergo[] a forced psychological evaluation by a psychologist chosen by SLU, which he was reluctant to do because of his right to privacy." (*Id*.) He was terminated on February 28, 2019.

In his lawsuit, Plaintiff claims that his right to free speech under both state and federal constitutions was violated (Doc. 1 at 13-14, ¶¶ 57-64), and that he was retaliated against for the exercise of his free speech rights (*id*. at 14-15, ¶¶ 65-68). In addition, he sues for breach of contract (*id*. at 15-16, ¶¶ 69-75), and state law defamation (*id*. at 16, ¶¶ 76-78).

Generally, Defendants dispute Plaintiff's allegations (*see, e.g.,* Doc. 85-1 at 2-6), and contend that Plaintiff was terminated for good cause and for reasons totally unrelated to Rushing's exercise of free speech or retaliation. (*Id*. at 3-4, listing the five reasons he was terminated.) Defendants argue that the evidence shows they followed normal procedures regarding Plaintiff's termination and that the termination was justified. (*See*, *e.g., id*. at 6-7.)

Part of Defendants' conduct about which Plaintiff complains occurred in connection with an October 3, 2018 Senate Faculty meeting at which Plaintiff attempted to have certain matters considered. (Doc. 1 at 9-11, ¶¶ 47-49.) According to Plaintiff, these matters were improperly "removed from the agenda … and/or [he] was denied the opportunity to express himself to the Faculty Senate … [and] he was ejected from the meeting on motion of defendant John Yeargain." (*Id*. at ¶¶ 48-49.) In connection with this issue, Plaintiff lists as experts Kenneth McMillin and

Kenneth Cope, both professors at Louisiana State University, and Certified Parliamentarian Alison Wallis.

Another issue central to Plaintiff's suit and this Motion is whether SLU was justified in requiring Plaintiff to undergo a psychiatric fitness for duty examination ("FFDE"). Plaintiff offers psychiatrist Robert Blanche on this issue.

In this Motion, Defendants move to disallow altogether the testimony of McMillin, Cope, and Blanche. They seek to limit the testimony of Wallis.

## II.     STANDARD

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. Defendants seek to exclude or limit Plaintiff's experts based on *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.' " *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate

3

of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (Jackson, J.) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138–39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert

4

testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.' " *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., LLC*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' "

No. 02-0565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

> "As one Court of Appeals has stated, trial judges are gatekeepers, not armed guards." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6268.2 (2d ed. 1987) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir. 1998)); *see also*, *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363 (W.D.N.Y. 1999) ("[T]rial judges acting as gatekeepers under *Daubert* must not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' and thereby usurp 'the ageless role of the jury' in evaluating witness credibility and weight of the evidence.") (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995)).

*Smiley v. New Hampshire Ins. Co.*, No. 17-1094, 2021 WL 292449, at *8 (M.D. La. Jan. 28, 2021) (deGravelles, J.).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

### III.  ROBERT V. BLANCHE, M.D.

#### A.  Summary of Qualifications

Blanche is Board Certified by the American Board of Psychiatry and Neurology in the area of General Adult Psychiatry. (Doc. 85-34 at 7.) One of the areas in which he practices is forensic psychiatry and, according to his resume, he has "been accepted as an expert in forensic psychiatry in District Courts (Criminal and Civil) in multiple parishes in Louisiana, including Federal Court." (*Id.*) "Since 1987, I have provided competency and sanity evaluations primarily for the 19th Judicial District Criminal Courts." (*Id.*)

#### B.  Summary of Opinions

In his report of February 11, 2019 to Plaintiff's then lawyer Paul Bell, after having reviewed various SLU records, medical records of Plaintiff and interviewing three mental health professionals who treated and/or evaluated Plaintiff, Blanche concluded: (1) that while Plaintiff does have some psychiatric conditions, he "[did] not find any evidence of an acute psychiatric disorder" (Doc. 85-34 at 5); (2) he "found no indications from the 'evidence' identified in the Task Force's information … that Dr. Rushing is a 'psychological threat' " (*id.*); and (3) he "found no evidence that Dr. Rushing is unable to perform his duties at [SLU]" (*id.* at 6).

In a second report by Blanche to Plaintiff's current lawyer J. Arthur Smith, III, Blanche was asked to analyze the expert report of Defendants' expert Jose Artecona, M.D. and specifically to opine on "the reliability of Dr. Artecona's methodology in reaching his conclusions regarding 'the reasonableness of [SLU] in referring Dr. Rushing for a fitness-for-duty evaluation in light of the recommendations from the Violence in the Workplace Task Force that was convened to evaluate a number of complaints related to Dr. Rushing' " as well as his evaluation of SLU's "workplace policies and procedures." (Doc. 85-36 at 1.)

In sum, Blanche found Artecona's report woefully deficient in that it "fails to prove the referral question that he was asked to evaluate due to omissions, avoidance, sole reliance on information provided to him by the retaining party, and otherwise lack of diligence in pursuing other information that would have assisted him in rendering an ethical opinion." (*Id*. at 3-4.) Furthermore, "he does not offer any meaningful commentary on alternative explanations to the grievances against Dr. Rushing." (*Id*.) Blanche concludes: "in my opinion, his report does not appear to be neutral, thorough, or objective." (*Id*.)

### C. Summary of Arguments of the Parties

Both parties make timeliness arguments, Defendants complaining that Blanche's report was untimely (*see, e.g.,* Doc. 85-1 at 11, 22), and Plaintiff maintaining that Defendants' Motion is untimely (Doc. 97 at 1, n.1). However, the Court finds that because of continuances previously given regarding deadlines and the trial date (*see, e.g.,* Docs. 73, 126), giving both sides ample opportunity for expert discovery, neither side has been prejudiced. Therefore, the Court rejects the complaints of both parties regarding timeliness and addresses only the substantive *Daubert* objections.

### 1. Defendants' Memorandum

Defendants concede that, as a psychiatrist and Rushing's treating physician, Blanche "can testify as such as regarding Rushing's medical diagnoses, medications, and observations/opinions based on his treatment. (Doc. 85-1 at 22.) However, Blanche "is not a Board-Certified Forensic Psychiatrist … [and therefore] is not qualified to critique Dr. Artecona's methodology or opinions." (*Id*. at 22-23.)

Because Blanche criticizes Artecona's methodology and opinions, Blanche is, according to Defendants, "usurping the jury's role in weighing the evidence and assessing the credibility of the witnesses." (*Id*. at 23.) Defendants charge Blanche "did not perform any independent analysis." (*Id*. at 23.)

Defendants criticize the foundation for Blanche's opinions, stressing the things he didn't do including, *inter alia*, never performing a fit-for-duty evaluation on Dr. Rushing. (*Id*. at 24.) Defendants argue Blanche goes beyond his expertise by speculating that Dr. Yeargain incited the Faculty Senate to achieve a unanimous vote on a motion to have Dr. Rushing removed from the meeting. (*Id.* at 25.)

### 2. Plaintiff's Opposition

Plaintiff responds to Defendants' attack on Blanche's credentials by noting that he is a Board-Certified psychiatrist and has been accepted as an expert in forensic psychiatry by Louisiana state and federal courts. (Doc. 97 at 19-20, citing Doc. 84-16 at 1.) Plaintiff argues there is no requirement that Blanche be board certified in forensic psychiatry and that experts may give opinions based on background and experience. (*Id*. at 20, citations omitted.) As to the foundation for Blanche's opinions, Plaintiff points out that Blanche examined Plaintiff and interviewed other psychiatrists who had treated Rushing. (*Id*.)

8

**D. Discussion**

The Court finds that Blanche is sufficiently qualified to testify in the areas in which he is being offered. Defendants offer no support for their argument that Blanche must be board certified in forensic psychiatry in order to opine on that subject and, indeed, the authority is to the contrary, *See, e.g., Rhoads Indus., Inc. v. Shoreline Found., Inc*., No. 15-921, 2021 WL 2778562, at *3 (E.D. Pa. July 2, 2021), *reconsideration denied*, No. 15-921, 2021 WL 3708672 (E.D. Pa. Aug. 19, 2021) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.") (quoting *Holbrook v. Lykes Bros. S.S. Co*., 80 F.3d 777, 782 (3d Cir. 1996)); *see also Carlson*, 822 F.3d at 200 (holding "a medical degree is not a prerequisite for expert testimony related to medicine…. [W]e have held that scientists with PhDs were qualified to testify about fields of medicine ancillary to their field of research.").

It troubles the Court that counsel for Defendants makes statements in briefing that are, at the very least, exaggerated and, in some cases untrue or misleading. For instance, in Doc. 85-1 at 24, n.24, counsel for Defendants states: "Blanche never qualified as a forensic psychiatrist in court," citing Doc. 40 at 10 for support. This is clearly not true when looking at Blanche's career as a whole (*see, e.g*., Doc. 85-40 at 9; Doc. 85-34 at 7), and, when one turns to the cited document and page number, Blanche merely states that, although he has done return-to-work evaluations in his practice, he has never testified in court regarding same (Doc. 85-40 at 10). This is hardly the same as "Blanche never qualified as a forensic psychiatrist in court."

A second example is found in Defendants' broad statement that "Dr. Blanche admitted his analysis and opinions were purely speculative." (Doc. 85-1 at 24, n.24, citing Doc. 85-40 at 59-60.) While Blanche admits at the cited pages that specific statements he made on a limited subject

9

(his opinion that the SLU administration may have asserted undue influence in the proceedings against Rushing) were speculative, this is not an admission that "his analysis and opinions were speculative."

Yet another example is found in connection with Defendants' attack on the sufficiency of Blanche's foundation where, at Doc. 85-1 at 23, counsel states emphatically that "Blanche did not perform any independent analysis." While Defendants fairly point to parts of the record Blanche did not review and while Defendants certainly have a right to disagree with Blanche's analysis, Blanche's report belies counsel's statement that "he did not perform any independent analysis." In his report of February 11, 2019 to Plaintiff's then lawyer Paul Bell, he states he reviewed various SLU records, medical records of Plaintiff and interviewed three mental health professionals who treated and/or evaluated Plaintiff and then concluded: (1) that while Plaintiff does have some psychiatric conditions, he "[did] not find any evidence of an acute psychiatric disorder" (Doc. 85-34 at 5); (2) he "found no indications from the 'evidence' identified in the Task Force's information … that Dr. Rushing is a 'psychological threat' " (*id.*); and (3) he "found no evidence that Dr. Rushing is unable to perform his duties at [SLU]" (*id.* at 6).

Furthermore, Blanche reviewed Artecona's report and did an extensive critique of it pointing in detail to its alleged shortcomings. Again, while Defendants not surprisingly disagree with his conclusions, one can hardly say Blanche failed to perform "any independent analysis." As this Court stated under similar circumstances in another case:

> It troubles the Court that counsel for Defendants cavalierly makes categorical assertions to this Court which are demonstrably incorrect. *** The Court understands an attorney's duty to zealously advocate on behalf of his or her client but there is a line between this duty and a lawyer's duty of candor to the court.

*Horton v. Fisher*, No. 19-272, 2021 WL 3811478, at *6 (M.D. La. Aug. 26, 2021) (deGravelles, J.).

10

The Court has carefully considered Blanche's report and the other materials provided by the parties in connection with the present Motion and finds that there is an adequate foundation for his opinion. "Rule 702(b) requires that expert testimony be 'based upon sufficient facts or data.' The Advisory Committee's Note to this provision states that this calls for a 'quantitative rather than qualitative analysis.' The question is whether the expert considered enough information to make the proffered opinion reliable." 29 Victor J. Gold, *Federal Practice & Procedure* § 6268 (2d ed. 2020).

> The word "sufficient" signifies that the expert may properly base her opinion on something less than all the pertinent facts or data. Thus, sufficiency is not a matter of whether the judge believes in the facts or data on which the expert relies. Rather, sufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom.

*Id.*

Finally, the Court rejects Defendants' contention that by criticizing Defendants' expert, Blanche is somehow usurping the jury's role in judging and weighing Artecona's credibility. As with any other expert opinion, the jury is free to accept or reject, in whole or in part, the opinions of either expert. There is nothing improper or untoward about one expert criticizing the opinions or methodologies of another expert. *Horton*, 2021 WL 3811478, at *4 (rejecting challenge to expert who was offering criticism of opposing expert's method of calculating speed).

In conclusion, the Court denies Defendants' challenge to Blanche's expert testimony with these exceptions: Blanche will not be permitted to speculate regarding any "undue influence" allegedly exerted by the SLU administration in the Rushing proceedings (Doc. 85-40 at 59-60), as he admits this is speculation and further is beyond his area of expertise. Further he will not be permitted to opine as he did in his report regarding the "mob mentality" of the Faculty Senate or

11

the "inappropriate, unprofessional and slanderous" behavior of Dr. Yeargain (Doc. 85-36 at 9), as these opinions are outside the boundaries of Blanche's expertise.

## IV.  KENNETH W. MCMILLIN, PH.D. AND KENNETH L. COPE, PH.D.[2]

### A. Summary of Qualifications

McMillin is an emeritus professor in the LSU Agricultural Center School of Animal Sciences. (Doc. 85-32 at 5.) He retired from LSU "after 40 years as a university professor, being a full professor for 26 years." (*Id*. at 6.) His involvement in university faculty governance includes six years as the faculty representative to the LSU Board of Supervisors and two years as the Chair of the LSU Board of Supervisors Council of Faculty Advisors. (*Id*.) He was LSU Faculty Senate President, Vice President and Executive Member at Large. (*Id*.) He also served as the Chair of the Faculty Senate Grievance Committee. (*Id*.)

Cope is a professor of English at LSU (Doc. 85-33 at 6), who served as the Faculty Senate President at LSU for ten years (*id*. at 1). He also served for ten years as the Chair of the LSU System of Faculty Advisors, fifteen years as Vice-President of the Association of Louisiana Faculty Senates, and three years as Council Member of the American Association of University Professors. (*Id*.)

### B. Summary of Opinions

McMillin summarizes his opinion and its foundation in the first two sentences of each of the five numbered paragraphs of his report, i.e. the following five items are all "issues of concern to the community" (Doc. 85-32 at 1-3): (1) the emails Rushing sent to SLU employees about possible revisions to the SLU 501(s) policy on supplemental compensation; (2) the topic of academic freedom proposed by Rushing to the SLU Faculty Senate; (3) the topic of faculty

---

[2] McMillin and Cope are treated together because their backgrounds and opinions are similar. Indeed, Defendants argue that their opinions are "redundant." (Doc. 85-1 at 12.)

governance proposed by Rushing to the Faculty Senate; (4) changes in tenure guidelines he proposed to the Faculty Senate; and (5) the topic of professional ethics he proposed to the Faculty Senate. In each case, "[t]he basis for [his] opinion is "a commonly accepted definition of 'community' as a group of people having a particular interest in common or sharing common attitudes, interests and goals." (*Id*. at 1.) Similarly, Cope opines that "the topics on which Rushing attempted to speak in [the] Faculty Senate and other forums and media sanctioned by [SLU] 'can be fairly considered as of concern to the community.' " (Doc. 85-33 at 1.)

In each report, McMillin and Cope recite the materials they reviewed in order to reach those opinions. (Docs. 85-32 at 4-5 and 85-33 at 4-5, respectively.) The reports also provide an explanation and support for their conclusions. (Docs. 85-32 at 1-4 and 85-33 at 1-3, respectively.)

### C. Summary of Arguments of the Parties

Defendants take the "everything but the kitchen sink" approach in their Motion, charging that McMillin and Cope are not qualified and their opinions are biased, not credible or reliable, in that both men are "leaders in the American Association of University Professors ('AAUP') and they have worked with Rushing for many years…to advance *his* complaints against SLU/ULS as volunteer advocates of the AAUP" which Defendants accuse of "*advocacy, organizing and, in some cases collective bargaining.*" (Doc. 85-1 at 12, emphasis in original.) Defendants argue further that their opinions are not sufficiently supported (*id*. at 15-16), were not the subject of testing or analysis, are "inconsistent with the witnesses' own records", and are irrelevant, redundant, and unduly prejudicial (*id*. at 12-19).

Plaintiff responds that much of Defendants' Motion is spent attacking straw men and is irrelevant to the five narrow questions the two experts were asked to answer, i.e., whether Rushing's criticisms of SLU's 501(s) policy and his proposals for the Faculty Senate "were all issues of concern to the community." (Doc. 97 at 2; *see also id*. at 3.) Given their respective

13

experiences in the LSU Faculty Senate and in faculty issues, they are highly qualified on these narrow issues. (*Id.* at 3.) Plaintiff denies AAUP is a biased organization or that membership therein suggests same and, indeed, "McMillin is not, nor has he ever been a member of the AAUP." (*Id.* at 4.)

While Cope and McMillin's opinions cover the same ground, "their conclusions and reasoning differ." (*Id.* at 5.) Further, the experts "relied upon different evidence." (*Id.* at 5-6.) Plaintiff denies that Cope's opinions in another matter are inconsistent with those given here. (*Id.* at 7.) Plaintiff maintains that the experts' opinions are well supported but, in any event, these are matters left for the jury's consideration. (*Id.* at 8-9, citations omitted.) Regarding Defendants charge that the opinions were not subject to testing or peer review, Plaintiff responds that such is not required by *Daubert* in every case, especially where the expert relies on personal observation, professional experience, education, and training. (*Id.* at 11-13, citations omitted.)

### D. Discussion

The Court has carefully reviewed the arguments of the parties and supporting materials and the Court concludes that Cope and McMillin are sufficiently qualified to testify regarding matters usually brought before university faculty senates and how these matters are usually handled and resolved. Both have extensive personal experience in this area. McMillin was LSU Faculty Senate President, Vice President and Executive Member at Large. (Doc. 85-32 at 6.) He also served as the Chair of the Faculty Senate Grievance Committee. (*Id.*) Cope was Faculty Senate President at LSU for ten years. (Doc. 85-33 at 1.) He also served for ten years as the Chair of the LSU System of Faculty Advisors, fifteen years as Vice-President of the Association of Louisiana Faculty Senates. (*Id.*) This personal experience can serve as a basis for expert testimony without the need to show testing and peer reviewed studies. "[T]he Supreme Court in *Kumho Tire*, 526 U.S. at 148–149, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation

and experience." *Anderson v. Allstate Ins. Co.*, No. 17-597, 2021 WL 292440, at *9 (M.D. La. Jan. 28, 2021) (deGravelles, J.).

The Court finds nothing in the background of these two experts, including their association with the AAUP[3] or prior work for or connection with Rushing renders them biased so as to disqualify them from testifying. Matters of bias are usually most appropriately handled on cross examination at trial and are for the jury to weigh in deciding what weight, if any, to give the expert's testimony. *See generally LeBlanc v. DISA Global Solutions, Inc.,* No. 17-76, 2019 WL 6329334, at *2 (M.D. La. Nov. 26, 2019) (Dick, C.J.).

Defendants raise a legitimate concern regarding the possible redundancy of the testimony of these two experts. Although the reasoning and source material supporting the conclusions differ somewhat, the opinions are essentially identical. The Court has the discretion to disallow testimony which is duplicative or redundant. *See Am. Gen. Life Ins. Co. v. Russell*, No. 16-851, 2019 WL 4411819, at *3 (M.D. La. Sep. 16, 2019) (deGravelles, J.) (citing Fed. R. Evid. 403 which allows a court to exclude testimony if its probative value is substantially outweighed by a danger of "needlessly presenting cumulative evidence."). However, the Court will defer the decision whether to allow both witnesses to testify until trial when the question of how each witness' testimony is presented can be heard in context.

The Court easily rejects Defendants' objections as to the relevancy of Cope and McMillan's opinions. Whether Defendants violated Plaintiff's First Amendment rights and/or retaliated against him for exercising those rights turns (at least in part) on the nature of the subject matter of the issues about which Rushing was expressing his opinions. Under *Garcetti v. Ceballos*,

---

[3] The Court fails to see how Cope and McMillan's membership or active participation in an organization which is involved in "*advocacy, organizing and, in some cases collective bargaining*" (Doc. 85-1 at 12, emphasis in original), renders these professors biased on the issues on which they are being called to testify. Defendants do not elaborate on this charge.

15

547 U.S. 410, 418 (2006), a threshold inquiry for a First Amendment-retaliation claim is whether the employee was speaking as a citizen on a matter of public concern. If not, he cannot state a claim for First Amendment retaliation. *Wetherbe v. Smith*, 593 F. App'x 323, 327 (5th Cir. 2014). When a public employee speaks in his capacity as an employee and on personal matters, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment. *Buchanan v. Alexander,* 919 F.3d 847, 853 (5th Cir. 2019) (citing *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000), *abrogated on other grounds by Gibson v. Kilpatrick*, 838 F.3d 476 (5th Cir. 2016) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983))).

Of concern to the Court, however, and not raised by Defendants, is whether these opinions regarding whether Rushing's issues on which he spoke or wrote are matters of community or public concern are properly the subject of expert testimony. The Court finds that they are not. "Whether [the plaintiff] engaged in protected speech is a purely legal question...." *Elizondo v. Parks*, 431 F. App'x 299, 303 (5th Cir. 2011) (quoting *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008)). "[A]sking whether the professor's speech is protected as a matter of public concern … is a question of law." *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) (citing *Connick*, 461 U.S. at 148 n.7; *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994)). In addition, deciding if "a statement is made as an employee or as a citizen is a question of law." *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015).

Because the ultimate opinions by McMillin and Cope are conclusions of law, the witness will not be permitted to give them. The Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snape-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). However, it

16

may be that embedded in the reports of these two witnesses is information that is relevant and beyond the knowledge of the ordinary juror which might properly be the subject of their expert testimony (*e.g*., the general workings of university faculty senates). The Court will defer ruling on these matters until trial. If Plaintiff intends to call one or both witnesses for this or some other legitimate purpose as expressed in their reports, Plaintiff's counsel will advise the Court and opposing counsel outside the presence of the jury and the matter can be taken up then.

## V. ALISON WALLIS

### A. Summary of Qualifications

Wallis is an attorney and also a Professional Registered Parliamentarian and Certified Parliamentarian-Teacher. (Doc. 97-5 at 1.) Defendants do not challenge Wallis' qualifications.

### B. Summary of Opinions

Wallis "obtained governing documents and [was] briefed on the factual background of certain [SLU] Faculty Senate meetings and related activities." (Doc. 97-5 at 1.) In addition, Wallis "obtained draft minutes from certain meetings of the Faculty Senate" (*id*.), and, according to Plaintiff, Wallis provided to Defendants "nearly 100 pages of documents which she used and/or relied upon in rendering her opinions" (Doc. 97 at 16). Wallis concludes her 14-page report by stating "It is my strong professional opinion that the actions of the Faculty Senate at the October 3, 2018 meetings was deeply flawed and undemocratic." (Doc. 97-5 at 13.) This conclusion is explained and supported in the remainder of the report by pointing to what Wallis believes was the Senate's failure to follow its own by-laws and established parliamentary procedures. (*Id*. at 1-13.)

### C. Summary of Arguments of the Parties

Of the 26-page Motion, Defendants devote two pages to Wallis. (Doc. 85-1 at 20-21.) Defendants do not attempt to exclude Wallis' testimony altogether but rather seek to limit her testimony "to her area of expertise of parliamentary procedure and based on reliable facts in

17

evidence." (*Id.* at 20.) Defendants argue that Plaintiffs "did not assert open meetings or public records law claims in his Complaint, and Wallis' opinions on those issues are entirely irrelevant." (*Id.* at 20.)

Defendants also complain that the briefing given to Wallis of the facts surrounding the meeting and a draft of the minutes is insufficient factual foundation for her opinions. (*Id.* at 20-21.) Defendants argue that an expert in parliamentary procedure is not required and that Wallis' legal conclusions (giving one example of a conclusion they allege is a legal one) invade the province of the Court. (*Id.* at 21.)

Plaintiff responds first that he is not making a claim under Louisiana's Open Meetings Law or Public Records Law and therefore agrees to redact those portions of Wallis' report dealing with those issues. (Doc. 97 at 16, n.26.) These redactions are reflected in the submitted report. (Doc. 97-5.) Plaintiff argues that Defendants have failed to show how the facts or documents provided to Wallis and relied on by her are in any way deficient or incorrect. (Doc. 97 at 16.) In any event, argues Plaintiff, the sufficiency of the factual foundation is a matter for the jury. (*Id.*, citations omitted.)

Plaintiff contends that Wallis' expert testimony is relevant and helpful to the jury since it demonstrates that his "removal from the October 3 meeting was not reasonable because he was only seeking to exercise his free speech rights in accordance with proper parliamentary procedure and was doing so." (*Id.* at 17.)

### D. Discussion

Given Plaintiff's concession that he is not pursuing claims under Louisiana's Open Meeting and Public Records law and his redaction of Wallis' report on these issues (Doc. 97 at 16, n.26), this part of Defendants' challenge is denied as moot.

18

The Court agrees with Plaintiff that Defendants have failed to specify how the information provided Wallis is deficient or otherwise lacking. On this ground alone, this part of Defendants' challenge could be denied. Furthermore, experts may properly render an opinion based on hypothetical facts they are asked to assume are true and this is routinely done. *See Tingle v. Hebert*, No. 15-626, 2018 WL 2287028, at *9 (M.D. La. Apr. 23, 2018) (deGravelles, J.); *see also Alman Bros. Farms & Feed Mill, Inc. v. Diamond Labs., Inc.*, 437 F. 2d 1295, 1298-99 (5th Cir. 1971). The opposing party may of course challenge the validity of the facts assumed and thereby undermine the expert's opinions.

As to Defendants' objections to Wallis' legal conclusions, this Court has previously ruled in connection with Plaintiff's challenge to Defendants' expert, experts will not be allowed to give legal opinions. (Doc. 128 at 21.) However, here Defendants point the Court to only one opinion they claim constitutes a legal opinion, i.e. Wallis' opinion that under the Faculty Senate's rules, "[t]he Senate is mandated to ensure that the Senate considers all proposals submitted by a Senator." (Doc. 85-1 at 21.) Defendants' challenge in this regard is denied. This opinion and the other non-redacted portion of Wallis' report are Wallis' opinion that the Faculty Senate failed to follow its own by-laws and established parliamentary procedures. These are not legal conclusions.

Finally, the Court finds that Wallis' testimony is relevant in that it informs the issue of whether Plaintiff was properly exercising his free speech rights at the October 3 meeting and whether, therefore, his removal from the meeting was a violation of that right. In short, for the reasons given, the Court denies Defendants Motion to limit Wallis' testimony.

## VI.   CONCLUSION

For the reasons detailed above, *Defendants' Daubert Motion in Limine to Strike Plaintiff's Expert Witnesses and Reports* (Doc. 85) filed by Defendants Dr. John Yeargain, Tara Dupre, Dr.

Erin Watson Horzelski and Dr. John Crain is **GRANTED IN PART** and **DENIED IN PART**. Regarding Robert V. Blanche M.D., the Motion is **GRANTED** in that Blanche will not be permitted to speculate regarding any "undue influence" allegedly exerted by the SLU administration in the Rushing proceedings (Doc. 85-40 at 59-60). Further he will not be permitted to opine as he did in his report regarding the "mob mentality" of the Faculty Senate or the "inappropriate, unprofessional and slanderous" behavior of Dr. Yeargain (Doc. 85-36 at 9). In all other respects Defendants' Motion is **DENIED**.

Regarding McMillin and Cope, the Court on its own motion rules that these experts will not be permitted to opine whether the five issues discussed in their reports are matters of community concern as these are legal conclusions. The Court defers until trial whether the experts will be allowed to testify regarding other matters set out in their reports and whether their testimony is duplicative or redundant. In all other respects, Defendants' Motion is **DENIED**.

Regarding Wallis, Defendants' Motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>July 11, 2022</u>.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**