UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

STEPHEN J. RUSHING

CIVIL ACTION

VERSUS

NO. 19-653-JWD-SDJ

JOHN YEARGAIN, ET AL.

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment and Rule 12(c) Motion to Dismiss on Behalf of Defendant, Dr. John Yeargain*, (Doc. 90) ("*Yeargain MSJ MTD*"), filed by Defendant John Yeargain, and the *Defendants' Rule 12 (c) Motion to Dismiss and Motion for Summary Judgment* (Doc. 91) ("*Defs.' MTD MSJ*"), filed by Defendants John Crain, Tara Dupre, Erin Watson Horzelski, and John Yeargain (collectively, "Defendants"). Defendants, including Yeargain, argue first that Plaintiff's claims are barred by sovereign immunity and should therefore be dismissed for lack of jurisdiction, and second that there is no issue of fact that would entitle Plaintiff to a trial. (Doc. 90 at 1; Doc. 91 at 1.)  The Court will grant the *Yeargain MSJ MTD* and the *Defs.' MTD MSJ*, but Plaintiff will be granted leave to amend on his breach of contract and defamation claims.

I.    **BACKGROUND**

A.    **Factual Background**

This Court has recounted the alleged facts of this case before. (*See* Doc. 182.) At the time of the facts alleged in the Complaint, Plaintiff was a tenured professor at Southeastern Louisiana University (SLU). (Doc. 1, ¶ 8.) On September 26, 2019, he filed suit against the following Defendants: Dr. John L. Crain, President and Chief Executive of SLU; Dr. John Yeargain, Accounting and Financing Professor at SLU; Dr. Erin Horzelski, Biological Sciences Professor at SLU; and Tara Dupre, the Director of Human Resources at SLU. (*Id.* at ¶¶ 2–5.) All Defendants

are members of the faculty and/or administration of SLU. (*Id.*) Plaintiff alleges that prior to April 16, 2018, SLU policies allowed fulltime faculty and staff to receive supplemental compensation for additional work activities outside of their responsibilities at the university. (*Id.* at ¶¶ 17, 19.) On April 16, 2018, SLU repealed this policy. (*Id.* at ¶ 19.) Plaintiff claims that in the months following this change, he made various representations to SLU and University of Louisiana System (ULS) administrators that events related to the repeal violated the SLU fraud policy. (*Id.* at ¶¶ 19–42.)

Plaintiff alleges that at SLU Faculty Senate meetings on September 26, 2018, and October 3, 2018, he was prevented from speaking on certain topics and was defamed. (*Id.* at ¶¶ 43–49.) He further alleges that his proposed discussion topics were removed from the October 3, 2018, meeting agenda, and that he was ejected from the meeting. (*Id.* at ¶¶ 48–49.)

Plaintiff states that he received a notice on January 3, 2019, that the University of Louisiana System Board would conduct a hearing to consider terminating his employment. (*Id.* at ¶ 50.) Plaintiff lists five charges for termination stated by SLU:

a. Insubordination for allegedly refusing to complete a workplace fitness evaluation, refusing to provide the names of two students who attended the October 3, 2018 Faculty Senate Meeting, and refusing to complete an outside employment form;

b. Exploiting students in violation of professional standards of ethics as he allegedly asked students enrolled in one or more of his classes to assist him at the October Faculty Senate Meeting, and asked the students at this meeting to stay behind on his behalf, allegedly inappropriately exposing them to a faculty dispute;

c. Uncollegial behavior because of alleged uncollegial and/or threatening behavior, such as an email wherein Dr. Rushing stated to Mr. Azuoru "I am afraid for you to meet with me;"

d. Dereliction of duties for allegedly being behind schedule for Music 438; and

e. Violations of law, board rules, and university policy for allegedly refusing to complete an outside employment form.

(*Id.* at ¶ 52.) A hearing was conducted on February 15, 2019, at which Plaintiff alleges multiple witnesses presented false testimony. (*Id.* at ¶ 53.) Plaintiff was removed from his full professor position following this hearing, on February 28, 2019. (*Id.* at ¶ 9.) He appealed this decision, which the Board upheld on June 27, 2019. (*Id.* at ¶ 10.)

## B.     Procedural Background

Plaintiff filed this suit on September 26, 2019. (Doc. 1.) In this suit, Plaintiff claims that "denying him the right to present all of his proposals and/or issues in the October 3, 2018 Faculty Senate meeting violated his free speech rights under La. Const. Art. I, § 7 and the First Amendment." (*Id.* at ¶ 58.) He claims that Defendants unlawfully restricted his speech at the September 26, 2018, and October 3, 2018, Faculty Senate meetings, which he argues is a further violation of his First Amendment rights. (*Id.* at ¶¶ 61–62.)

Next, Plaintiff claims that "Defendants retaliated against him for exercising his free speech rights by ejecting him from the October 3, 2018, Faculty Senate meeting, and causing his employment with SLU to be terminated in violation of La. Const. Art. I, § 7 and the First Amendment." (*Id.* at ¶ 66.)

Third, Plaintiff claims that Defendants breached his employment contract by terminating his "employment for reasons not provided for in the University of Louisiana System Board Rules[,]" which Plaintiff argues "constitutes a breach of contract[]" in violation of Louisiana state law. (*Id.* at ¶¶ 71–73.)

Finally, Plaintiff claims that Defendant Yeargain's statements at the September 26, 2018, and October 3, 2018, Faculty Senate meetings constituted defamation in violation of Louisiana state law. (*Id.* at ¶¶ 76–78.)

The parties litigated disputes about discovery and expert testimony throughout much of 2021. (*See* Docs. 35–37, 39, 45–55, 57–60, 62–64, 66–68, 76, 77, 80–85, 94–97.) Defendants filed the pending *Yeargain MSJ MTD* and *Defs.' MTD MSJ* in October of 2021. (Docs. 90, 91.) However, the case was administratively stayed and closed on August 8, 2022, due to Plaintiff's health. (Doc. 136.) The case was reopened on October 13, 2022. (Doc. 140.) The pending *Yeargain MSJ MTD* and *Defs.' MTD MSJ* were reopened on July 25, 2024. (Doc. 183.)

In addition to this lawsuit, Plaintiff filed a state court petition in the Twenty-First Judicial District Court for the Parish of Tangipahoa on November 26, 2018. (*See* Doc. 182 at 3.) This Court has previously addressed the state suit: the state district court entered judgment on July 1, 2019, dismissing Plaintiff's state tort claims of violations of Louisiana's Open Meetings Law without prejudice. (*Id.* at 4.) However, prior to the entry of judgment, Plaintiff had filed an amended and restated petition, which included additional allegations of Open Meetings Law violations. (*Id.*) The district court held a hearing on September 23, 2019, to determine whether the SLU Faculty Senate met the definition of a "public body" under Louisiana's Open Meetings Law and entered judgment in favor of Plaintiff, finding that the SLU Faculty Senate did indeed meet the definition. (*Id.*) It held another hearing on November 4, 2019, to determine whether the SLU Faculty Senate violated Louisiana's Open Meetings Law, after which it issued written reasons for the judgment and declined to order any relief for Plaintiff on November 26, 2019, and then dismissed Plaintiff's claims with prejudice on January 20, 2020. (*Id.* at 4–5.)

Plaintiff appealed the district court's written reasons and the January 20, 2020, judgment. (*Id.* at 5; Doc. 177 at 6.) The Louisiana First Circuit Court of Appeal "determined that . . . Rushing failed to show that the written reasons constituted a valid final judgment and that the January 20, 2020, judgment was not final and appealable where it failed to identify defendants." (Doc. 177 at

4

6.) The First Circuit dismissed Plaintiff's appeal and remanded the case back to the district court. (*Id.*) On remand, the district court properly named all defendants and entered judgment against Plaintiff on August 18, 2021, dismissing his claims with prejudice. (*Id.*) Plaintiff again appealed to the First Circuit. (*Id.* at 7.) The First Circuit affirmed the district court's August 18, 2021, judgment on September 16, 2022. (*Id.* at 15–16.) Plaintiff filed a writ to the Louisiana Supreme Court, but his writ application was denied. (*See* Doc. 156-6.)

On September 11, 2023, Defendants filed a motion in this Court titled *Defendants' Rule 12(c) Motion to Dismiss, or in the Alternative, Motion for Summary Judgment Based on Res Judicata*, accompanied by a supporting memorandum. (Doc. 156; Doc. 15-1.) Given that *res judicata* is an affirmative defense that may not generally be raised in a 12(b)(6) motion, the Court considered this a motion for summary judgment. (Doc. 182 at 5–6.) In their motion, Defendants argued that pursuant to the doctrine of *res judicata*, Plaintiff's federal claims were barred by the final ruling in his state case. (Doc. 156-1 at 1.) Ordinarily, Louisiana state law provides an exception to *res judicata* that "applies '[w]hen the *judgment* reserved the right of the plaintiff to bring another action.'" (*Id.* at 12 (quoting La. R.S. § 13:4232(3).) Although "[n]either the July 1, 2019 judgment nor the January 20, 2020 judgment reserves Plaintiff's right to bring another action[,]" the Court found "an exceptional circumstance that bars res judicata in this case." (Doc. 182 at 12.) Plaintiff attempted to enforce Louisiana's Open Meetings Law in the same suit where he sought tort damages, which "utilize different forms of procedure[,]" leading "the defendants [to] file[] an exception of improper cumulation and/or joinder." (*Id.* at 13.) The state court granted the state defendants' exception, but it also "instructed Plaintiff to file a separate suit as to his claim for tort damages." (*Id.*) As such, this Court found that since "(1) the state court directed Plaintiff to bring his ordinary proceeding claim in a separate suit than that of his summary proceeding claim; and (2) all Plaintiff's claims in the present suit would have required an ordinary proceeding had they been

brought in Plaintiff's state court suit, the Court finds that these 'complex procedural situations' constitute exceptional circumstances that bar *res judicata* in this matter pursuant to La. R.S. § 13:4232(A)(1)." (*Id.* at 14 (quoting *McGregor v. Hospice Care of Louisiana in Baton Rouge, LLC*, 2009-1357 (La. App. 1 Cir. 2/12/10), 36 So.3d 272, 279).)

## II.    Parties' Arguments

First, with respect to their motion to dismiss, Defendants argue the Court should dismiss Plaintiff's claims because "there is no jurisdiction because the claims are barred by sovereign immunity, and there is no issue of fact for trial as to [] any of the claims asserted in [Plaintiff's] Complaint." (Doc. 91 at 1.) They argue that a) Plaintiff's employment was terminated by the SLU Board of Supervisors, b) Plaintiff makes no allegations as to any rules violated by the Board, and c) the Board is not a named defendant. (Doc. 93 at 2.) They further argue that Plaintiff does not tie the allegations he makes against the individual defendants to the Board. (*Id.* at 2–3.)

Defendants argue that although Plaintiff claims to sue Defendant Crain in his personal and official capacities, Defendant Dupre in her personal capacity, and Defendant Horzelski in her personal capacity, the allegations involve only their official duties. (*Id.* at 3–4.) Likewise, although Plaintiff claims to sue Defendant Yeargain in his individual capacity, Defendant Yeargain argues that the allegations involve only his official duties. (Doc. 90-1 at 3–4.) Defendants argue that Plaintiff has not alleged any acts connecting the named defendants to any alleged violations by the ULS Board of its own rules leading to Plaintiff's termination. (Doc. 93 at 6.) They argue that Plaintiff has not alleged any contractual terms or obligations imposed upon any named Defendants to justify his suit for breach of contract, and he has failed to show that Defendant Crane is able to give the relief Plaintiff seeks from him of reinstating Plaintiff's employment. (*Id.*) Defendants further argue that all named defendants are entitled to qualified immunity, and that Plaintiff has not alleged a deprivation of a constitutional right sufficient to overcome this bar. (*Id.* at 7.) They

assert that Plaintiff received full Due Process with respect to his termination of tenure and employment. (*Id.* at 8.)

Next, Defendants argue that because the ULS Board is an arm of the state, it is entitled to sovereign immunity for its officials and employees unless it waives immunity, which it has not done. (*Id.* at 9.) Defendants argue that all SLU defendants were state employees at the time of the alleged events and are therefore entitled to sovereign immunity. (*Id.*) It reiterates that there is no waiver of qualified immunity in this case, regardless of the capacity assigned to Defendants by Plaintiff, because Defendants assert that all Defendants were acting in their official capacity. (*Id.* at 9–10.) Defendants reiterate their assertion that there was no violation of a clearly established constitutional right to overcome qualified immunity. (*Id.* at 10.)

With respect to their motion for summary judgment, Defendants argue that there is no genuine issue as to any material fact, entitling them to judgment as a matter of law. (*Id.*) They contend that with respect to Plaintiff's retaliatory-discharge claim, Plaintiff has not alleged that Defendants were his employers. Instead, Defendants state that Plaintiff "admits that he was employed and terminated by the ULS Board," that Defendant Crain "only made the final recommendation[,]" "that the ULS Board approved the termination," and that the ULS Board then "upheld *its* decision to terminate Rushing after his appeal." (*Id.* at 11–12.) Defendants also argue that Plaintiff's speech does not fall under the First Amendment's protections "if it was made in his employment capacity rather than as a private citizen[]" and that Plaintiff here was speaking "only in his employment capacity relative to his personal issues with employment related subjects, and within the context of performing his job-related duties." (*Id.* at 12.) As a result, they argue that Plaintiff cannot show that his speech qualifies as protected speech, one of the necessary components for a retaliatory-discharge claim. (*Id.*) Defendants assert that Plaintiff's termination

and suspension without pay, the alleged adverse actions, were "a result of his insubordination and refusal to comply with a directive from SLU that he obtain a fitness-for-duty evaluation[,]" (*id.* at 12–13), as well as "violating ethical standards, uncollegial behavior, dereliction of duties, and violation of law or Board policies[,]" (*id.* at 15), rather than retaliation for his speech. Defendants argue that Plaintiff cannot show a causal connection between his alleged speech, the September 2018 Faculty Senate Executive Council meeting or October 2018 Faculty Senate meeting, and his termination; they also argue that the university's "interest in promoting workplace efficiency" outweighed Plaintiff's "interest in speaking on his personal employment related issues[.]" (*Id.* at 15.)

Defendants point to the two-day-long hearing held by the Tenure Committee, at which they considered "extensive testimony, cross-examination, . . . the recorded October FS meeting, and . . . documentary evidence regarding all of the charges[]" as well as the "testimony by Rushing's consulting psychiatrist" and at least one other witness called by the Plaintiff. (*Id.* at 16–17.) Following this hearing, a majority of the committee voted to recommend Plaintiff's termination on all grounds. (*Id.* at 17.) Defendants argue that Plaintiff's "willful refusal to disclose two outside employment jobs for which he received substantial wages was insubordinate and in violation of the law and ULS/SLU Disclosure of Outside Employment policy," which "was alone sufficient grounds for ULS to confirm the recommendations for termination." (*Id.* at 18.)

Defendants also point to Plaintiff's state court case, claiming that the district court found that the actions taken by ULS and the Defendants at the September 2018 Faculty Senate Executive Council meeting and the October 3, 2018, Faculty Senate meeting, were the result of Plaintiff's own actions and affirmed by state law. (*Id.* at 18–19.) Defendants argue that the proceedings before the Workplace Task Force, the Tenure Committee, the ULS Board of Supervisors' Grievance

8

Committee, and the Twenty-First Judicial District Court have all resulted in determinations that Plaintiff's behavior, rather than his exercise of free speech, was the reason for his suspension and ultimate termination. (*Id.* at 19.) As a result, they claim, Plaintiff is unable to prove that his termination was a form of retaliatory discharge. (*Id.*)

Defendants argue that Plaintiff is unable to show (1) that he was speaking as a private citizen rather than a public employee; (2) that he was speaking on matters of public concern rather than personal employment issues; (3) that his speech rather than other independent employment concerns led to the adverse employment actions; (4) that any interest he had in speaking on these matters outweighed ULS's interest "in the efficient provision of public service, in requesting a FFDE [fitness for duty evaluation] for safety concerns, or by requiring disclosure of outside employment to comply with law, not his speech." (*Id.* at 19.)

Defendants contend that their request that Plaintiff undergo a fitness for duty evaluation in line with university policies and procedures, that it "was reasonable and based upon a credible threat to the safety and well-being of Rushing, his colleagues, students, and staff[,]" and that Plaintiff's "own treating psychiatrist testifying on his behalf agreed that the University was 'reasonable'" in their response. (*Id.* at 19–20.) Defendants further assert that the fitness for duty evaluation request was in no way connected to Plaintiff's speech: "Each and every witness in each of the previous forums has stated that they either had no idea what 'issue' was being presented and/or that they were only concerned with conduct or particular behavior[.]" (*Id.* at 20–21.) They argue that even if Plaintiff could show that his speech played a substantial role in his termination, the evidence shows that the same decision would have been reached absent his speech in order "to ensure the safety and well-being of SLU's employees and students, and to enforce compliance by all its employees with statutory laws and ethical professional standards[.]" (*Id.* at 21.) Defendants

additionally argue that the First Amendment's protections do "not extend to speech that is materially disruptive or involves substantial disorder or invasion of the rights of others." (*Id.* (citing *Chiu v. Plano Independent School District*, 339 F.2d 273, 281 (5th Cir. 2003).)

With respect to Plaintiff's arguments that he was deprived of his First Amendment rights as a result of not being able to present all of his issues at the September 26, 2018, Faculty Senate Executive Council meeting and the October 3, 2018, Faculty Senate meeting, Defendants first argue that these claims must be dismissed as to Defendants Crain and Dupre because they were not present, were not senators, and had no involvement with these meetings or the preparation for these meetings. (*Id.* at 22.) They likewise argue that Plaintiff cannot show a causal link as to Defendants Horzelski and Yeargain. (*Id.*). Defendants assert that although Defendants Horzelski and Yeargain were present at the meetings as members of the Faculty Senate, Plaintiff has not alleged any facts showing that these Defendants denied his rights to speak; instead, Defendants claim, Plaintiff was ejected from the Faculty Senate meeting on a nearly-unanimous vote due to disruptive conduct. (*Id.*). Furthermore, Defendants claim, Faculty Senate Executive Council Minutes drafted by Plaintiff show that he did in fact have the opportunity to speak extensively before the Faculty Senate Executive Council meeting. (*Id.*) Defendants argue that since Plaintiff has not shown a genuine dispute of fact as to these issues, the Court should grant summary judgment. (*Id.* at 23.)

Defendants then contend that even if Plaintiff could prove that Defendants violated any clearly established rights, Defendants are still entitled to qualified immunity if their actions were objectively reasonable. (*Id.* at 23.) According to Defendants, Plaintiff cannot carry the initial qualified immunity burden of showing an alleged First Amendment violation; instead, they argue, his termination was for valid cause following a hearing. (*Id.* at 24.) Defendants maintain that

Plaintiff has failed to show any specific conduct by the Defendant government officials that violated Plaintiff's constitutional rights or that were objectively unreasonable in light of clearly established law at the time, and that qualified immunity therefore applies. (*Id.* at 24–25.)

Next, Defendants argue that Plaintiff has not carried his § 1983 pleading burden against Defendant Crain because a) he has only asserted claims against Defendant Crain in his official capacity, and b) he has failed to show that Defendant Crain in his official capacity took any actions under state law that deprived Plaintiff of free speech. (*Id.* at 26.) As to all Defendants, not just Defendant Crain, Defendants reiterate their previous arguments that Plaintiff's statements were not protected speech because they were made pursuant to his official duties rather than as a private citizen on a matter of public concern. (*Id.*) They argue that the First Amendment does not restrict government employers' ability to exert managerial discipline based on employee behavior pursuant to official responsibilities and that Plaintiff's expressions fall under such an umbrella. (*Id.* at 26–27.)

Defendants further contend that *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), does not apply because Plaintiff does not allege that any official policy leading to an alleged violation of his constitutional rights. (*Id.* at 27.) They argue that since vicarious liability does not apply, Plaintiff must allege that each Defendant has violated the Constitution, and that Plaintiff has not done so with respect to any of the named Defendants. (*Id.*) Instead, they argue, Plaintiff only alleges that each Defendant acted in accordance with University policy and the law, in ways that did not violate Plaintiff's First Amendment rights but instead responded to what Defendants argue was Plaintiff's disruptive behavior. (*Id.* at 27–30.) Defendants argue that Plaintiff cannot show a violation of a constitutional right by any Defendant.

In addition, Defendants argue that Plaintiff's suit was filed outside of Louisiana's one-year prescription statute that applies to suits in federal court under § 1983. (*Id.* at 31.) They assert that the wrongful acts or omissions Plaintiff occurred on August 24, 2017; April 16, 2018; May 8, 2018; June 2, 2018; and July 3, 2018, are barred because the suit was not commenced until September 26, 2019. (*Id.*).

Finally, with respect to Plaintiff's state law claims, Defendants again contend that the Court lacks jurisdiction pursuant to the Eleventh Amendment's sovereign immunity provision. (*Id.* at 31–32.) In addition, Defendants argue that the breach of contract claim must be dismissed under the summary judgment standard because there is no contract between Plaintiff and any of the named Defendants. (*Id.* at 32.) Only the ULS Board had the authority to fire Plaintiff, rather than any of the named Defendants acting on their own, Defendants assert, and each of the named Defendants— as well as the Board—acted pursuant to ULS Board Bylaws, Rules, and Policies. (*Id.* at 32–33.) Defendants further argue that Plaintiff's claims for attorney's fees are not permitted unless expressly provided for by a written contract, and that his claims for punitive damages in contract or tort law are expressly precluded by Louisiana law. (*Id.* at 33–34.) In closing, they again assert the defense of qualified immunity. (*Id.* at 34.)

Defendant Yeargain, in his separately filed *Yeargain MSJ MTD*, focuses on Plaintiff's defamation claim against him. (Doc. 90-1.) Defendant Yeargain argues that the Court should dismiss Plaintiff's claims because he is entitled to sovereign immunity. (*Id.* at 3–4.) He also argues that these claims do not warrant the exercise of supplemental jurisdiction. (*Id.* at 4.) Defendant Yeargain further contends that summary judgment should be granted because Plaintiff cannot establish the required elements of a defamation claim, specifically the falsity of any statements by

Defendant Yeargain, any knowledge of falsity on behalf of Defendant Yeargain, nor any fault or malice on the part of Defendant Yeargain. (*Id.* at 5.)

Defendant Yeargain disputes that he made the exact statements that Plaintiff alleges were defamatory, but admits that he may have said some of the alleged statements. (*Id.* at 14–15.) With respect to Defendant Yeargain's statements that Plaintiff needed medical help and his comments on Plaintiff's medical history, Defendant Yeargain points to the testimony of Plaintiff's treating psychiatrist at his tenure hearing in February 2019, at which the psychiatrist testified as to Plaintiff's history and ongoing diagnosis of Bipolar Type 2. (*Id.* at 5–6.) According to Defendant Yeargain, the testimony of Plaintiff's own expert shows that Plaintiff cannot establish a defamation claim. (*Id.* at 6.)

Likewise, Defendant Yeargain points to prior state court findings that Plaintiff's behavior was disruptive to argue that Plaintiff cannot establish a defamation claim based on the statement that Plaintiff was "a disruptor." (*Id.* at 6–7.) Defendant Yeargain also notes the statements and opinions of other witnesses, all of which he argues show that his statements that Plaintiff needed medical help or counseling were true or founded on a reasonable belief as to their truth. (*Id.* at 8.) Defendant Yeargain argues that the Workplace Task Force Committee confirmed his statements in their recommendation of a psychiatric evaluation. (*Id.* at 9.) In sum, Defendant Yeargain argues that Plaintiff is unable to show the falsity of the statements, let alone their defamatory meaning. (*Id.* at 9–10.)

Yeargain further argues that he was speaking at a public meeting, "concerning the questionable conduct of a public figure . . . disrupting a public meeting of the governing body" and that his statements are therefore constitutionally protected. (*Id.* at 10.) At the same time, Defendant Yeargain argues that Plaintiff cannot prove publication because "statements between

employees, made within the course and scope of their employment, are not considered publicized for purposes of a defamation claim." (*Id.* at 17.) Defendant Yeargain also argues that Plaintiff is unable to show any damages caused by the alleged defamation. (*Id.* at 18.) He argues that Plaintiff has not shown that the alleged defamatory statements were made at all, made by Defendant Yeargain, were false, were made without a reasonable belief in their truth, were published, or resulted in any damages to Plaintiff. (*Id.* at 20.) As such, Defendant Yeargain urges the Court to grant him summary judgment with respect to Plaintiff's claims for defamation.

In response, Plaintiff reasserts many of the allegations in his Complaint: that he was under contract with SLU, (Doc. 98 at 1–2); that SLU had a policy in place allowing for outside compensation from 2014 to April 2018, at which point the head of the Department of Music, Mr. Newkirk, informed Plaintiff and other faculty and staff that such external compensation would no longer be allowed due to budgetary issues, (*id.* at 2); that Plaintiff believed this to be fraud and alleged as much to Defendant Crain and SLU's internal Auditor, Mr. Azurou, (*id.* at 3); that Plaintiff was not permitted to speak about his reports at Faculty Senate Executive Council and Faculty Senate meetings on September 26, 2018, and October 3, 2018, (*id.* at 4); that Defendant Yeargain defamed Plaintiff at the September 26, 2018, meeting, (*id.*); that Plaintiff's proposed agenda items were removed from the draft agenda for the October 3, 2018, Faculty Senate meeting, (*id.* at 4–5); that some individuals reported concerns about Plaintiff to the SLU Police, (*id.* at 6); that Plaintiff's points of order at the October 3, 2018, Faculty Senate meeting were ignored, and that he was ejected from the meeting despite attempting to speak on matters of public concern, (*id.*); that Plaintiff was banned from SLU and required to undergo a fitness for duty evaluation, (*id.*); and that he faced accusations of uncollegial behavior, dereliction of duties, exploiting students in violation of professional ethics, insubordination, and violations of law, Board rules,

and university policy, (*id.*). Plaintiff disputes each of these charges, arguing that "the Violence in the Workplace Committee determined that he was not a credible threat[,]" that he was not behind in Music 438 and had not been given an opportunity to remediate any deficiency, that he did not exploit students, that he was not required to submit additional outside employment forms, and that it was not insubordination to refuse to undergo the fitness for duty examination as required by the university. (*Id.* at 6–8.)

Plaintiff argues that sovereign immunity does not apply here because each Defendant has been sued individually rather than in their official capacity, with the exception of Defendant Crain, who has been sued in both his individual and official capacity. (*Id.* at 14–15.) Likewise, Plaintiff argues that Defendants are "persons" under § 1983 because he has sued them in their individual capacities. (*Id.* at 15.) Plaintiff further contends that his contract claims are valid under the Louisiana Constitution, as are his free speech deprivation and retaliation claims. (*Id.* at 16.) In addition, Plaintiff maintains that qualified immunity does not apply here because "Defendants retaliated against him for exercising his free speech rights by preventing him from speaking, by ejecting him from the October 3, 2018 Faculty Senate meeting, and causing his employment with SLU to be terminated in violation of La. Const. Art. I, § 7, the First Amendment, and 42 U.S.C. § 1983." (*Id.* at 17.) Plaintiff insists that he spoke on matters of public concern. (*Id.* at 19–20.)

Plaintiff argues that the "right to be free from deprivation of First Amendment speech" is clearly established. (*Id.* at 20.) He characterizes his speech as the disclosure of misbehavior by public officials and argues that he was deprived of the right to speak freely about this matter. (*Id.* at 20–21.) Likewise, Plaintiff asserts that the "right to be free from retaliation for exercising his right to free speech" is clearly established and again characterizes his speech as on matters of public importance. (*Id.* at 21.)

Plaintiff further argues that there are genuine issues of material fact on the reasonableness of Defendants' actions with respect to the cause for his termination. (*Id.* at 22–23.)

In addition, Plaintiff contends that Defendants have waived qualified immunity as to the state law claims by "argu[ing] only the federal law of qualified immunity." (*Id.* at 25.)

Plaintiff argues that there are genuine issues of fact with respect to his retaliation claims, claiming that there is no dispute that he suffered an adverse employment action, (*id.* at 25 n.126); arguing once again that he spoke on a matter of public concern, (*id.* at 25–29); asserting that his interest in speaking on his concerns outweighed the university's interest in maintaining safety in the workplace and ensuring compliance with the law, (*id.* at 29–30); and arguing that his suspension and termination was motivated by his speech rather than the causes alleged by Defendants, (*id.* at 30–31). Plaintiff again claims that the reasons given by Defendants for his suspension and termination are pretextual rather than legitimate. (*Id.* at 31.)

Plaintiff argues that Defendant Dupre was responsible for Plaintiff's suspension, ban from SLU's campus, and fitness for duty evaluation requirement. (*Id.* at 32.) He likewise reiterates his arguments that Defendants Crain and Horzelski denied him the right to speak. (*Id.*)

Plaintiff disputes Defendants' assertion that some of his claims fall outside of the one year statute of limitations on § 1983 claims, arguing that he only alleges injuries falling within the one year timeframe; all other dates are included as background. (*Id.* at 33.)

Plaintiff argues that his state law claims are viable because Defendants caused SLU to breach the contract that existed between Plaintiff and SLU; he asserts that Defendant "Crain terminated Plaintiff and ULS only upheld the termination decision." (*Id.* at 34–35.)

In response to the *Yeargain MSJ MTD*, Plaintiff argues that he was not in fact an employee of the University of Louisiana System. (Doc. 99 at 2.) Instead, he argues, he was employed by

Southeastern Louisiana University and terminated by Defendant Crain, a decision which was upheld by the University of Louisiana System Board of Supervisors. (*Id.* at 2–3.) Plaintiff argues that his defamation claim against Defendant Yeargain is connected to his § 1983 claims against Defendants Horzelski and Yeargain for deprivation of his free speech rights, which he contends the Court should not dismiss. (*Id.* at 6–8.)

Plaintiff argues that Defendant Yeargain may not assert the defense of sovereign immunity because he has been sued in his individual capacity. (*Id.* at 9–10.) Plaintiff disputes that Defendant Yeargain was employed by ULS, arguing that he was instead employed by SLU. (*Id.* at 11.) Plaintiff argues that Defendant Yeargain is not immune under the Eleventh Amendment because he has been sued in his individual capacity and because he was not employed by ULS. (*Id.* at 11–12.)

Plaintiff argues that Defendant Yeargain's motion for summary judgment on the defamation claim incorrectly uses the standard for a Rule 12(b)(6) motion. (*Id.* at 12.) Plaintiff argues that he has raised genuine issues of material fact as to each of the elements of his defamation claim. (*Id.*) He argues that Defendant Yeargain defamed him "by innuendo." (*Id.* at 14.) Plaintiff maintains that Defendant Yeargain lacked basis for his statements, (*id.* at 13–17), that actual malice is not required because Plaintiff is not a public official (*id.* at 17–19), that comments made at the Faculty Senate and Faculty Senate Executive Council meetings were publications (*id.* at 19–20), that Defendant Yeargain acted with reckless disregard as to the truth of his statements (*id.* at 20–21), and that Plaintiff has suffered non-pecuniary harms as a result of the alleged defamation, (*id.* at 21–22).

## III.   LEGAL STANDARDS

### A.   12(b)(6) Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston*

*Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted).  "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability "to rely on 'documents incorporated into the complaint by reference'" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))).

### B.    Motion for Summary Judgment

Generally, motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

However, "the movant 'need not *negate* the elements of the nonmovant's case.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (*citing Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (cleaned up).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)). "Rule 56 does not impose upon the district court a duty

to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citing, *inter alia*, *Ragas*, 136 F.3d at 458). *See also Nissho—Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered); *cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Ultimately, "[where] the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor. Or, the non-moving party can defeat the motion by demonstrating that the evidence tendered by the moving party is itself laced with contradictions of [material] fact.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (cleaned up).

## IV.    ANALYSIS

### A.    Statute of Limitations

"Courts considering claims under § 1983 must borrow the relevant state's statute of limitations for personal injury actions. Louisiana's relevant limitations period is one year." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (internal quotations and citations

omitted).[1] The parties agree that the appropriate statute of limitations for Plaintiff's § 1983 claims is one year. (Doc. 93 at 31; Doc. 98 at 33.) This one-year statute of limitations likewise applies to Plaintiff's defamation claims. *See Merida v. Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E.*, No. 23-1992, 2024 U.S. Dist. LEXIS 169927 at *23–24, 2024 WL 4252748 at *9–10 (E.D. La. Sep. 20, 2024). Plaintiff filed suit in this Court on September 26, 2019. (Doc. 1.) Plaintiff argues that all events that occurred before September 26, 2018, are not alleged injuries; instead, he claims, they are background information "relevant to his subsequently alleged discriminatory acts." (Doc. 98 at 33.) The Court dismisses all claims predating September 26, 2018, as barred by the statute of limitations.

### B.    Sovereign Immunity

Next, the Court will address Defendants' arguments that as employees of Southeastern Louisiana University, they are state officials acting in their official capacity and are therefore immunized from suit under § 1983. As a preliminary matter, Southeastern Louisiana University is an institution "under the supervision and management of the Board of Supervisors for the University of Louisiana System[.]" La. R.S. § 17:3217(A). Plaintiff's argument that neither he nor any of the Defendants were ever employees of the University of Louisiana System, but were instead only employees of Southeastern, fails to comprehend the university system structure.

Defendants simultaneously argue (a) that "the Court lacks jurisdiction pursuant to the Eleventh Amendment of the U.S. Constitution, which bars suit in Federal courts by citizens of the state against their own state or a state agency[,]" (Doc. 93 at 5), preventing any suits against Defendants in their official capacities, and (b) that Plaintiff has failed to show any deprivation of

---

[1] Louisiana's statute of limitations for personal injury actions is now two years, effective on July 1, 2024. La. Civ. Code Ann. Art. 3493.1 (2024). However, this is not retroactive. *Stanley v. Morgan*, 120 F.4th 467, 470 n.1 (5th Cir. 2024) (citing Tort Actions, 2024 La. Acts 423).

a right "by any defendant acting under color of law" in their individual capacities, (*id.* at 7). The Supreme Court has stated that "courts may not simply rely on the characterization of the parties in the complaint" in determining "the real party in interest" in a case. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Given Defendants' arguments as to their capacities in this suit, the Court will assess both the capacity in which each Defendant is sued and, based on that determination, whether they are entitled to sovereign immunity.

Plaintiff repeatedly asserts that he sues all Defendants individually, and Defendant Crain in his official capacity for declaratory and injunctive relief. (Doc. 98 at 9–10, 14.) Plaintiff seeks declaratory judgment under § 1983, monetary damages under § 1983, attorney's fees and costs, reinstatement or renumeration, and back pay. (Doc. 1 at 16–17.) Specifically, he seeks monetary damages against Defendant Crain in his individual capacity under § 1983 and declaratory and injunctive relief in his official capacity under § 1983 (Doc. 98 at 10–11); seeks both monetary and declaratory relief against Defendant Dupre in her individual capacity under § 1983 (*id.* at 11); is unclear what relief is sought against Defendant Horzelski in her individual capacity under § 1983 (*id.*); and seeks monetary damages against Defendant Yeargain in his individual capacity only for defamation, (*id.* at 10; Doc. 99 at 1–2).

The Supreme Court has distinguished between suits brought against defendants in their personal and official capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[A]n official-capacity suit is just another way of pleading an action against an entity of which an officer is an agent" and is therefore "treated as [a] suit[] against the State." *Latiolais v. Cravins*, 484 F. App'x 983, 989 (5th Cir. 2012) (citing *Hafer*, 502 U.S. at 25). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, 'on the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the

official, acting under color of state law, caused the deprivation of a federal right.'" *Hafer*, 502 U.S. at 25.

While "officials who act for purely personal reasons do not 'necessarily fail to act "under color of law[,]"'" *Tyson v. Cnty. of Sabine*, 42 F.4th 508, 523 (5th Cir. 2022) (quoting *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991)), "[i]t is only '[i]f an officer pursues personal objectives *without* using his official power as a means to achieve his private aim that he has not acted under color of state law[,]'" *id.* (quoting *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (cleaned up, emphasis in *Tyson*)).

Allegations brought against state officials acting in their official capacity are barred by the Eleventh Amendment's sovereign immunity provision. "The Supreme Court has 'held that a State is not a "person" against whom a § 1983 claim for money damages might be asserted.'" *Med. RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002)). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Id.* (quoting *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). It is well-established that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A person's capacity need not be pled except to the extent required to show the jurisdiction of the court." *Robinson v. Hunt Cty.*, 921 F.3d 440, 446 (5th Cir. 2019) (quoting *Parker v. Graves*, 470 F.2d 335, 336 (5th Cir. 1973) (per curiam)).

Plaintiff alleges that Defendant Dupre restricted his speech by "suspend[ing] Plaintiff on [or] about October 31, 2018, bann[ing] him from SLU's campus, its facilities, off campus activities and direct[ing] Plaintiff to a 'workplace psychiatrist' for a fitness for duty evaluation." (Doc. 1 at

¶ 37.) He also alleges that she "caused SLU to breach its contract with Plaintiff." (Doc. 98 at 35.) Plaintiff presents evidence to show that Defendant Dupre, as Southeastern Louisiana University's Director of Human Resources, informed Plaintiff that, pursuant to recommendation from the University Task Force [], he was required to "receive a psychiatric evaluation." (Doc. 98-10 at 5.) Plaintiff then presents evidence that Defendant Dupre, again acting in her official role, informed him that he was receiving a suspension from the Southeastern Campus, which banned him from the campus facilities and activities and mandated no contact with anyone associated with the University except Defendant Dupre or his department head, as a result of his failure "to schedule and complete a psychiatric evaluation following the recommendation of the workplace violence committee." (Doc. 98-12 at 7.) Plaintiff has therefore sufficiently alleged that Defendant Dupre was acting under color of state law to plead a personal capacity suit. The Court therefore accepts Plaintiff's allegation that this suit is brought against Defendant Dupre in her personal capacity only rather than in her official capacity as Director of Human Resources and declines to grant sovereign immunity.

Likewise, Plaintiff alleges that Defendant Horzelski, in her role as President of the SLU Faculty Senate, did not follow proper SLU Faculty Senate procedures in denying him the right to speak on the topics of his choice at the Faculty Senate Executive Meeting held on September 26, 2018, and at the Faculty Senate Meeting held on October 3, 2018. (Doc. 1 at ¶¶ 16, 44; Doc. 98 at 4–6.) He also alleges that she "caused SLU to breach its contract with Plaintiff." (Doc. 98 at 35.) Plaintiff alleges that Defendant Horzelski requested that Plaintiff not send emails to the Faculty Senate group that had not been previously approved by the Executive council, which he claims was a prior restraint on his speech. (Doc. 98 at 3–4.) Again, Plaintiff has sufficiently alleged that Defendant Horzelski was acting under color of state law to plead a personal capacity suit. The

Court will again accept Plaintiff's claim that he sues Defendant Horzelski only her in personal capacity and deny sovereign immunity.

Defendant Yeargain is sued both under § 1983 and for state law defamation. With respect to the § 1983 claim, Plaintiff alleges that Defendant Yeargain restricted his freedom of speech in violation of the First Amendment and retaliated against him in violation of the First Amendment. (Doc. 1 at ¶¶ 42–49; Doc. 98 at 17–19, 22.) Specifically, Plaintiff claims that Defendant Yeargain, in his role as SLU Faculty Senate parliamentarian, prevented Plaintiff from speaking at the Faculty Senate Executive Council meeting on September 26, 2018, (Doc. 1 at ¶¶ 42–44); prevented him from speaking at and ejected him from the Faculty Senate Executive meeting on October 3, 2018 (*id.* at ¶¶ 45–49); and "caused SLU to breach its contract with Plaintiff." (Doc. 98 at 35.) Plaintiff has sufficiently alleged that Defendant Yeargain acted under color of state law to plead a personal capacity suit. The Court will again accept Plaintiff's claim that he sues Defendant Yeargain only in his personal capacity and deny sovereign immunity.

Finally, Plaintiff alleges that Defendant Crain terminated his employment with Southeastern Louisiana University. (Doc. 98 at 9, 18; Doc. 1 at ¶ 14.) Plaintiff argues that this constitutes retaliation in violation of the First Amendment. (Doc. 98 at 22.) He also alleges that Defendant Crain worked with members of the Faculty Senate Executive Council to restrict Plaintiff's speech. (Doc. 1 at ¶ 47.) Plaintiff provides the letter from Defendant Crain terminating Plaintiff's employment at Southeastern Louisiana University. (Doc. 98-14 at 4–5.) The letter is sent from Defendant Crain in his capacity as university president, (*see id.*), as provided for by the SLU Termination/Severe Sanction of Tenured Faculty for Cause policy (Doc. 91-5). The letter states that the decision was based on the recommendations of the Faculty Hearing Panel and the Southeastern Louisiana University provost. (Doc. 98-14 at 4.) It also states that Plaintiff

maintained the right to petition the University of Louisiana System Board for a review of the termination decision within thirty days, and that the termination would not become final until a determination was made by the Board or until the thirty days elapsed. (*Id.*) These actions plainly involve Defendant Crain's official powers as SLU president, and he was therefore a state official acting under color of state law in this alleged instance, allowing Plaintiff to plead a personal capacity suit. Unlike the other Defendants, Defendant Crain is sued both in his individual capacity and in his official capacity. (Doc. 1 at ¶ 3.)

Plaintiff claims that he seeks declaratory and injunctive relief against Defendant Crain in his official capacity, as well as monetary damages in his individual capacity for his § 1983 claims. (Doc. 98 at 15–16.) Again, the Court accepts Plaintiff's argument that he sues Defendant Crain for monetary damages in his personal capacity and denies sovereign immunity on these claims. To the extent that Plaintiff sues Defendant Crain in his official capacity, Defendant Crain is protected by the Eleventh Amendment's sovereign immunity provision. However, this provision is not without exceptions.

Plaintiff argues that "[w]hile the state enjoys Eleventh Amendment immunity, its officials—when sued for prospective relief in their official capacity—do not." (Doc. 98 at 13 (citing *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)).) This is a misstatement of the *Ex Parte Young* exception to sovereign immunity. The *Ex Parte Young* "exception permits a plaintiff to seek an injunction 'in federal court [to] prevent[] state executive officials from enforcing state laws that are contrary to federal law.'" *Tawakkol v. Vasquez*, 87 F.4th 715, 718 (5th Cir. 2023) (quoting *Whole Women's Health v. Jackson*, 595 U.S. 30, 39 (2021)). The Fifth Circuit has "made clear that '[f]or *Young* to apply, three criteria must be satisfied: (1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation

of federal law; and (3) the relief sought must be properly characterized as prospective.'" *Id.* (citing *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020)).

Plaintiff does not here allege that there is any state law that violates a federal law or provision of the United States Constitution. Plaintiff does not, for example, challenge the provisions of the Louisiana State Constitution or Revised Statutes that provide for the structure of Southeastern Louisiana University. The declaratory relief he seeks is an order "[d]eclaring the rights of the parties and finding that the aforementioned conduct of the Defendants was and is violative of 42 U.S.C. § 1983, the First Amendment of the United States Constitution, and La. Const. Art. I § 2 and in breach of Plaintiff's contract with Defendant[2] SLU[.]" (Doc. 1 at ¶ 79.) With respect to Defendant Crain, Plaintiff asks the Court to order him "to reinstate the Plaintiff to the position he held at the time of termination with no loss of seniority or benefits, unless reinstatement is not feasible, in which case," Plaintiff seeks an order "requiring the Defendant to pay Plaintiff front pay for a period of time until he is made whole." (*Id.*) A declaration that Defendants violated Plaintiff's rights "is fundamentally retrospective because it does not relate to an ongoing violation of [his] federal rights" and "instead, it pertains to Plaintiff['s] [] termination." *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020). As such, this claim does not overcome Defendant Crain's Eleventh Amendment sovereign immunity. *Id.* (citing *Green v. Mansour*, 474 U.S. 64, 74 (1985) (Brennan, J., dissenting)). On the other hand, the Fifth Circuit has held that "the *Ex Parte Young* doctrine [is] an appropriate vehicle for pursuing reinstatement to a previous job position[.]" *Id.* (citing *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996)). Consequently, Plaintiff's claims against Defendant Crain for reinstatement survive the Eleventh Amendment sovereign immunity jurisdictional bar.

---

[2] SLU is not a party in this action.

C.    **Standing**

Plaintiff must demonstrate that he has standing with respect to each of his claims. To do so, he "must show that [he or] she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [his or her] invocation of federal-court jurisdiction.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "The plaintiff 'bears the burden of establishing standing as of the time [he or she] brought th[e] lawsuit and maintaining it thereafter.'" *Id.* at 58 (first alterations by this Court; second by *Murthy*) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). A plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 195 (5th Cir. 2012) (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks and alterations omitted)). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561.

An "injury in fact" must be actual or imminent, concrete, and particularized. *Texas v. United States*, No. 23-40653, 2025 U.S. App. LEXIS 1132 at *17 (5th Cir. Jan. 17, 2025) (internal

citations omitted). "The injury can be physical or monetary, an injury to one's property or to one's constitutional rights." *Id.* (citing *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024)). Plaintiff alleges that he was injured by having his speech unconstitutionally restrained at the September 2018 Faculty Senate Executive Council meeting and at the October 2018 Faculty Senate meeting. (Doc. 1 at ¶¶ 58–64.) He further alleges that he was injured by being terminated from his job in retaliation for exercising his freedom of speech. (*Id.* at ¶¶ 66–68.)

With respect to traceability, Plaintiff must show "that there is 'a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Reule v. Jackson*, 114 F.4th 360, 367 (2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). While "[t]he defendant's conduct does not need to be 'the very last step in the chain of causation,'" *id.* (quoting *Bennett*, 520 U.S. at 169), and the plaintiff does not need to show proximate cause, *id.* (citing *Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019)), the injury cannot rest solely on the actions of a third party. *Id.* "[S]tanding cannot exist where the injury 'depends on the unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict[,]'" *id.* (quoting *Lujan*, 504 U.S. at 562), but "the causation element can be satisfied where 'the defendant's actions produce a "determinative or coercive effect upon the action of someone else," resulting in injury[,]'" *id.* (quoting *Inclusive Cmtys.*, 946 F.3d at 655). "In such circumstances, the plaintiff must show 'that third parties will likely react in predictable ways.'" *Daves v. Dallas Cnty.*, 22 F.4th 522, 543 (5th Cir. 2022) (citing *California v. Texas*, 593 U.S. 659, 675 (2021)).

The Supreme Court has said that "[t]he second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *Alliance*, 602 U.S. at 380 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U. S. 269, 288 (2008)). In consequence, "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury. So the two key questions in most standing disputes are injury in fact and causation." *Id.* at 381.

"Because 'standing is not dispensed in gross,' [] 'plaintiffs must demonstrate standing for each claim they press' against each defendant, 'and for each form of relief they seek[.]'" *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U. S. 413, 431 (2021)).

At the motion to dismiss stage, the Court accepts Plaintiff's well-pled allegations as true, and his allegation of the injury is sufficient to support standing. *See Ruhr*, 487 F. App'x at 195; *see also Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 391 (5th Cir. 2024). However, the parties have conducted discovery, and the motions before the Court are both to dismiss and for summary judgment. Plaintiff, then, must support his allegations with specific facts.

Plaintiff's causes of action, as presented in his Complaint, are as follows:

First, that Defendants deprived him of his free speech rights under the First Amendment and under the Louisiana State Constitution by denying him the right to speak on all of the issues of his choice at the Faculty Senate Executive Council meeting on September 26, 2018, and at the Faculty Senate meeting on October 3, 2018, (Doc. 1 at ¶¶ 58–62);

Second, that Defendants retaliated against him for exercising his free speech rights by ejecting him from the October 3, 2018, Faculty Senate meeting and causing his employment at

Southeastern Louisiana University to be terminated, in violation of the First Amendment and Louisiana State Constitution, (*Id.* at ¶¶ 66–67);

Third, that Defendants caused the University of Louisiana System Board of Supervisors to terminate Plaintiff's contract for reasons not provided for in the Board Rules, which Plaintiff alleges constituted a breach of contract under Louisiana state law, (*Id.* at ¶¶ 70–74);

And fourth, that Defendant Yeargain defamed Plaintiff at the September 26, 2018, Faculty Senate Executive Council meeting and the October 3, 2018, Faculty Senate meeting, (*Id.* at ¶¶ 76–78).

While Plaintiff makes other allegations in his Complaint and in his other briefings, these are the only causes of action presented in the Complaint. (*Id.* at ¶¶ 57–78.) The Court will first address whether Plaintiff has standing for his two federal causes of action.

### i. Plaintiff's Injuries

Plaintiff's first alleged injury is the restriction of his freedom of speech at the Faculty Senate Executive Council meeting on September 26, 2018, and at the Faculty Senate Meeting on October 3, 2018. (*Id.* at ¶¶ 58–62.) Given that Plaintiff is a public employee claiming that his right to speak freely was restricted, the Court looks to the public employee speech doctrine. "To determine whether the public employee's speech is entitled to protection, courts must engage in a two-step inquiry." *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015) (citing *Lane v. Franks*, 573 U.S. 228, 237 (2014)); *see also Gibson v. Kilpatrick*, 773 F.3d 661, 666–67 (5th Cir. 2014) (citing *Lane*, 573 U.S. 228); *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020) (citing *Gibson*, 773 F.3d at 667). First, the Court asks whether Plaintiff "spoke as a citizen on a matter of public concern." *Gibson*, 773 F.3d at 666. If he did, the Court will then look

to the "balance[e] [of] the interest in allowing the speech against the interest in penalizing it." *Id.*, 773 F.3d at 666–67.

When looking at speech by a public employee, such as a professor at a public university, *see Trudeau v. Univ. of N. Tex.*, 861 F. App'x 604, 609 (5th Cir. 2021), the Court looks to "whether the employee spoke as a citizen on a matter of public concern or pursuant to his or her official duties." *Corn*, 954 F.3d at 276 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). "[A] public employee's speech is made pursuant to his or her official duties when it is 'made in the course of performing his employment.'" *Id.* (quoting *Anderson v. Valdez*, 845 F.3d 580, 595 (5th Cir. 2016)). "Speech raises a matter of public concern 'when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."'" *Bevill v. Wheeler*, 103 F.4th 363, 375 (5th Cir. 2024) (quoting *Lane*, 573 U.S. at 241 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

As "a citizen who works for the government[,]" a public employee does not give up all off their free speech rights. *Garcetti*, 547 U.S. at 419. "Many citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like 'any member of the general public[]' to hold that all speech within the office is automatically exposed to restriction." *Garcetti*, 547 U.S. at 420–421 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)).

On the other hand, the Supreme Court has stated that "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Connick v. Myers*, 461 U.S. 138, 149 (1983). The Supreme Court has held

that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes[.]" *Garcetti*, 547 U.S. at 421. Put another way, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 420 (quoting *Connick*, 461 U.S. at 154). The Supreme Court has clarified that "the fact the speech touched on matters related to public employment [is] not enough to render it government speech." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529 (2022) (citing *Lane*, 573 U.S. at 240).

Not surprisingly, the parties here characterize the topic of Plaintiff's speech differently: Plaintiff claims that he was speaking out about fraud and misconduct within the university, (Doc. 98 at 28), while Defendants argue that Plaintiff was raising concerns about his terms of employment. (Doc. 93 at 15.) "It is well established that speech exposing or otherwise addressing malfeasance, corruption or breach of the public trust, . . . touches upon matters of public concern." *Graziosi*, 775 F.3d at 738 (citing *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191–92 (5th Cir. 1988)). *See Lane*, 573 U.S. at 241; *Garcetti*, 547 U.S. at 425. *Accord Bevill*, 103 F.4th at 376.

Plaintiff's exhibits show that on Saturday, September 1, 2018, he emailed the Faculty Senate with his "initial draft/thoughts" on a proposal to discuss "Professional Ethics" at the next Faculty Senate meeting. (Doc. 98-6 at 16.) He later replied to himself on September 17, 2018, with an attachment about "Ethical Standards regarding the hiring of tenured faculty[.]" (*Id.*) Plaintiff also includes emails showing his concerns that a proposal "regarding Executive Council responsibilities" was removed from the agenda for the October 3, 2018, Executive Council meeting. (*Id.* at 18.) His other proposals, which were not removed, were to discuss "Academic

freedom and faculty governance" and "Tenure/Promotion and Annual Evaluation guidelines[.]" (*Id.*)

Plaintiff's self-transcribed minutes from the September 26, 2018, meeting show him speaking extensively about the parliamentary procedures followed at the meeting—specifically, whether the meeting was correctly following Robert's Rules of Order and University bylaws with respect to keeping minutes and approving agendas. (Doc. 98-7.) At no point in these minutes do topics of malfeasance, corruption, or breach of the public trust come up. (*Id.*) At no point does Plaintiff attempt to raise them. (*Id.*)

Likewise, at the October 3, 2018, Faculty Senate meeting, Plaintiff's own self-transcribed minutes show him raising concerns about the agenda and the parliamentary procedures followed at the meeting. (Doc. 98-13.) Although another member mentions Plaintiff's allegations of fraud, Plaintiff at no point attempts to speak on this topic. (*Id.* at 2.) Instead, his focus remains on parliamentary procedure, the content of the agenda, the process for creating the agenda, and whether all of his proposals, listed above, were included on the agenda. (*Id.* at 3–7.) Once again, none of the proposals Plaintiff alleges were excluded from discussion were on the topic of corruption, malfeasance, or breach of the public trust. (Doc. 98-6 at 18.)

While Plaintiff's disputes with the University may have originated with his concerns that the change in policy regarding supplemental pay constituted fraud, that was not the topic of discussion at either of meetings at which Plaintiff alleges his freedom of speech was restrained. Plaintiff has failed to show that he spoke as a citizen on a matter of public concern at either the September 26, 2018, or the October 3, 2018, meetings. As such, he has failed to show that his speech was entitled to protection at either of these meetings. Plaintiff has therefore failed to show an injury related to the alleged restriction of his speech at these meetings.

Plaintiff's second alleged injury is his termination, which he alleges was retaliation for exercising his right to free speech. Plaintiff has shown that he was terminated from his position (98-14 at 4–5), sufficiently alleging an actual, concrete, particularized injury.

### ii. Traceability

Although Plaintiff has alleged an injury with respect to his termination, he must also show that this injury is traceable to each Defendant. *See Murthy*, 603 U.S. at 44.

### 1. Defendant Dupre

Plaintiff fails to establish standing with respect to Defendant Dupre. Once again, Plaintiff has not established a cognizable injury with respect to the September 2018 and October 2018 meetings; even if he had done so, however, Plaintiff has not alleged that Defendant Dupre was present at either of those meetings. Plaintiff alleges only two actions taken by Defendant Dupre that are not prescribed under the statute of limitations: that she "suspended Plaintiff on about October 31, 2018, banned him from SLU's campus, its facilities, off campus activities and directed Plaintiff to a 'workplace psychiatrist' for a fitness for duty evaluation," (Doc. 1 at ¶ 37,) and that she made allegedly false statements at Plaintiff's tenure hearing on February 15, 2019, (*id.* at ¶ 53.)

Plaintiff does not show that his termination is traceable to Defendant Dupre. Plaintiff was given due process for his termination in the form of a tenure hearing on February 15, 2019, at which an Administrative Law Judge presided and thirteen panel members heard evidence. (Doc. 90-5.) Plaintiff was represented by counsel at this hearing, where the University had the burden of proof and the panel acted as jury. (*Id.* at 3, 11, 18.) The panel considered the following five charges: insubordination, exploiting students in violation of professional standards of ethics, uncollegial behavior, dereliction of duties, and violations of law, board rules, and university policy. (Doc. 90-

36

11 at 1–2.) The panel unanimously found that Plaintiff had committed multiple acts of insubordination, exploited students in violation of professional standards of ethics, and committed uncollegial and threatening behavior; a majority of the members found that Plaintiff was derelict in his duties and had violated law, board rules, and university policy. (*Id.*) A majority of the members voted in favor of termination. (*Id.* at 2.)

As required by the SLU Termination/Severe Sanction of Tenured Faculty for Cause policy, (Doc. 91-5), the panel provided its report to Defendant Crain, cc'ing the provost, who is not a defendant in this action. The provost, after reviewing the panel's report, recommended termination to Defendant Crain.  (Doc. 91-6.) The Termination Policy provides that "[t]he President will make a final recommendation regarding termination or severe sanction of the faculty member to the Board within fifteen working days of receiving the Provost's recommendation." (Doc. 91-25 at 3.)

The University bylaws provide that "[e]ach institution shall have a written policy for due process concerning academic dismissal for tenured faculty. This policy shall provide for hearings before a committee that includes faculty members. Its findings and recommendations shall be forwarded to the chief executive officer of the university who shall make a final determination." (Doc. 91-3 at 10.) The bylaws also require exhaustion of "all administrative procedures at the institutional level before an appeal can be made to the Board." (*Id.* at 8.) A "member of the academic staff who has exhausted due process procedures at the institutional level may petition the Board within 30 days when the institution is in session for a review and no official action shall be taken by the institution until a final determination is made by the Board." (*Id.* at 10.)

Here, Plaintiff received a letter from Defendant Crain informing him of Defendant Crain's decision, based on the recommendations of the faculty panel and the provost, to terminate his employment. (Doc. 98-14.) This letter informed Plaintiff of his right to petition the Board for

review within 30 days, as well as the fact that the termination was not final until the Board reviewed it, or after 30 days if Plaintiff chose not to appeal it. (*Id.* at 4.) Plaintiff did choose to appeal his termination, which the Grievance Committee for the Board reviewed on June 27, 2019. (Doc. 91-3 at 13.) After giving Plaintiff and a UL System attorney an opportunity to speak, the Grievance Committee deliberated and voted unanimously to recommend that Plaintiff's appeal be denied. (Doc. 91-3 at 14–15.) At the full meeting of the Board of Supervisors that same day, the Grievance Committee presented its recommendation; Plaintiff was given the opportunity to speak. (*Id.* at 17.) In response to a question from the Board, a UL System attorney affirmed that all procedures had been followed with respect to Plaintiff's grievance. (*Id.*) The Board then voted to deny Plaintiff's appeal of his termination, at which point Plaintiff's termination became final. (*Id.*)

Defendant Dupre was not a member of the panel that recommended Plaintiff's termination, (Doc. 91-5); she was not the provost who likewise recommended Plaintiff's termination, (Doc. 91-6); she was not the University President who approved those recommendations to terminate Plaintiff's employment, (Doc. 98-14); she was not a member of the University of Louisiana System Board of Supervisors Grievance Committee that voted to recommend denying Plaintiff's appeal, (Doc. 91-3 at 14); and she was not a member of the University of Louisiana System Board of Supervisors that voted to deny Plaintiff's appeal and make his termination final, (Doc. 91-3 at 17.) As such, Plaintiff cannot show that his termination is in any way traceable to Defendant Dupre.

Plaintiff has failed to establish standing with respect to Defendant Dupre with respect to his free speech or retaliation claims.

### 2. Defendant Horzelski

While Plaintiff alleges that Defendant Horzelski was present at the September 2018 and October 2018 meetings, he has not established that the alleged restriction of his speech at these

meetings was a cognizable injury. Even if it were, Plaintiff cannot show that any of his alleged injuries are traceable to Defendant Horzelski. With respect to the meeting on September 26, 2018, Plaintiff has not alleged any specific acts on the part of Defendant Horzelski that prevented him from speaking. (*See* Doc. 98-12 at 2.) Plaintiff has not shown that any alleged restriction on his speech at the September meeting was traceable to Defendant Horzelski.

Likewise, Plaintiff has not shown that any alleged deprivation of his speech at the meeting on October 3, 2018, was traceable to Defendant Horzelski. Plaintiff's own minutes from the meeting, which he presents, show that Defendant Horzelski repeatedly deviated from the agenda to give Plaintiff the opportunity to speak. (Doc. 98-13.) Ultimately, Plaintiff alleges that Defendant Yeargain moved for Plaintiff's removal from the meeting, a motion which was seconded by another faculty senator not named in this suit. (*Id.* at 7.) Defendant Horzelski then called for a vote on Defendant Yeargain's motion. (*Id.* at 8.) As per Plaintiff's minutes, there were no nays and only one abstention; all other votes were in favor of Plaintiff's removal from the meeting. (*Id.*) Plaintiff does not allege that each of senators who voted in favor of his removal could be predicted to vote in such a way in response to Defendant Horzelski calling for a vote. *See Daves*, 22 F.4th at 543. He does not allege that Defendant Horzelski calling for a vote produced a determinative or coercive effect on any of those senators. *Reule*, 114 F.4th at 367. Plaintiff cannot, in fact, show that his removal from the meeting is traceable to Defendant Horzelski.

For the same reasons that the Court analyzed with respect to Defendant Dupre, Plaintiff cannot show traceability to Defendant Horzelski for his retaliation claim.

Plaintiff has failed to establish standing against Defendant Horzelski with respect to his free speech or retaliation claims.

### 3.   Defendant Yeargain

Once again, the Court notes that Plaintiff has not established an injury with respect to his alleged deprivation of speech at the September 2018 and October 2018 meetings; however, even if he had done so, Plaintiff has not established traceability to Defendant Yeargain. As with Defendant Horzelski, the parties agree that Defendant Yeargain was present at both the September and October 2018 meetings. (Doc. 1 at ¶¶ 43, 45; Doc. 93 at 22.) Plaintiff presents evidence demonstrating that he was allowed to speak extensively at each of these meeting. Plaintiff's own exhibits show a) that he spoke extensively and "without interruption" on his areas of concern at the September 26, 2018, Faculty Senate meeting, (Doc. 98-7 at 5–11); b) that agenda items were typically agreed upon in advance, (Doc. 98-11 at 2); c) that Plaintiff did not communicate his planned topics of discussions for the October 3, 2018, meeting in advance, (*id.*); and d) that he was given time on the agenda for October 3, 2018, to present at multiple points, (*id.* at 2–3). Similarly, Plaintiff's own minutes show him talking extensively at the October 3, 2018, meeting, before being ejected from the meeting for failing to respect the meeting agenda or time limits set on individual contributions. (Doc. 98-13.)

Plaintiff has not, in fact, established any deprivation of his speech at either the September 2018 meeting or October 2018 meeting, let alone a constitutional deprivation, that can be traced to Defendant Yeargain. For the same reasons that the Court analyzed above with respect to Defendant Horzelski, Plaintiff cannot show traceability to Defendant Yeargain for his claim regarding his removal from the October 3, 2018, meeting.

For the same reasons that the Court analyzed with respect to Defendants Dupre and Horzelski, Plaintiff cannot show traceability to Defendant Yeargain for his retaliation claim.

### 4. Defendant Crain

With respect to Defendant Crain, Plaintiff alleges that his injury is his termination, which he argues is retaliation for exercising his right to free speech. The Court has analyzed these allegations in the sovereign immunity context above. The Fifth Circuit has "noted that the Article III standing analysis and *Ex parte Young* analysis significantly overlap, such that a finding of standing tends toward a finding that a plaintiff may sue the official under the *Ex parte Young* exception." *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (cleaned up). Here, the Court has found that the *Ex Parte Young* exception applies to Defendant Crain.

Defendants argue that Defendant Crain "only made the final recommendation" to terminate Plaintiff, "that the ULS Board approved the termination," and that the ULS Board then "upheld *its* decision to terminate Rushing after his appeal." (Doc. 93 at 11–12.) Plaintiff points to the letter he received informing him of Defendant Crain's decision, based on the recommendations of the faculty panel and the provost, to terminate Plaintiff's employment at Southeastern Louisiana University. (Doc. 98-14 at 4–5.) The letter also informed Plaintiff of his right to petition the University of Louisiana Board of Supervisors for review of his termination within thirty days, as well as the fact that the termination was not final until the Board reviewed it or until the time for appeal elapsed without Plaintiff exercising his right to appeal. (*Id.* at 4.)

Plaintiff did choose to appeal his termination, which the Grievance Committee for the Board reviewed on June 27, 2019. (Doc. 91-3 at 12.) After giving Plaintiff and a UL System attorney an opportunity to speak, the Grievance Committee deliberated and voted unanimously to recommend that Plaintiff's appeal be denied. (*Id.* at 14–15.) At the full meeting of the Board of Supervisors that same day, the Grievance Committee presented its recommendation; Plaintiff was given the opportunity was speak. (*Id.* at 17.) In response to a question from the Board, a UL System attorney affirmed that all procedures had been followed with respect to Plaintiff's grievance. (*Id.*)

The Board then voted to deny Plaintiff's appeal of his termination, at which point Plaintiff's termination became final. (*Id.*)

Here, Plaintiff argues that regardless of the recommendations of the panel and provost, and regardless of the later decision of the Board on appeal, it was Defendant Crain who made the decision to terminate his employment. (Doc. 98 at 9.) In the letter notifying Plaintiff of his termination, Defendant Crain describes the termination as "my decision." (Doc. 98-14 at 4.) Defendants argue that Defendant Crain merely recommended that Plaintiff's employment be terminated, and it was the Board that made the final decision. (Doc. 93 at 11–12.) Defendants argue that the appeals process took the ultimate termination decision out of Defendant Crain's hands. (*Id.* at 33.) However, the Board simply upheld the termination on appeal, (Doc. 91-3 at 12–17); had Plaintiff chosen not to appeal the decision, the termination would still have occurred. Furthermore, University System Bylaws provide that "[t]he Board grants authority to the presidents of the colleges and universities within the University of Louisiana System, or their designees, to hire or dismiss any classified employee in compliance with state law and appropriate Civil Service Commission regulations. All such action shall be deemed approved by the System Head and Board and no further action by either shall be required." (*Id.* at 7.)

Plaintiff has adequately alleged traceability to Defendant Crain with respect to his termination claim. Likewise, looking to the University Bylaws and Plaintiff's past appointment letters, Plaintiff has adequately alleged that Defendant Crain could reinstate him to his position, establishing redressability. (Doc. 91-28; Doc. 98-8 at 32, 33.) Plaintiff has established standing for his claim that Defendant Crain terminated his employment as retaliation for Plaintiff exercising his right to free speech.

However, Plaintiff has not established standing for his federal causes of action as to any other Defendants. His federal claims against Defendants Dupre, Horzelski, and Yeargain are dismissed for lack of standing.

### D.     Plaintiff's § 1983 Claim

The Court now examines Plaintiff's § 1983 claim. Plaintiff claims that he was unlawfully terminated in retaliation for exercising his right to free speech, in violation of 42 U.S.C. § 1983. (Doc. 1 at ¶¶ 65–68, 79.) "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). A § 1983 claim requires that a plaintiff "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Even where a plaintiff sufficiently alleges a § 1983 claim, the defendants may be protected by qualified immunity. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). Qualified immunity serves to "protect[] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It provides "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In determining whether qualified immunity is appropriate, courts apply a two-prong test asking whether the plaintiff has demonstrated "a violation of a constitutional right" and whether "the right at issue was 'clearly established' at the

time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. This two-prong test need not be applied in any particular order. *Id.* at 236.

In a § 1983 claim implicating qualified immunity, "the complaint 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [] alleged and that defeat a qualified immunity defense with equal specificity.'" *Allen*, 65 F.4th at 743 (quoting *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)). The factual standard is still "the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id.* (quoting *Arnold*, 979 F.3d at 267). For each claim, then, a plaintiff must plead specific facts to (1) allege a violation of a constitutional right by a person acting under the color of state law and (2) demonstrate that the right was clearly established at the time of the defendant's misconduct. At the summary judgment stage, rather than merely pleading with factual specificity, "the plaintiff must *show* that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time." *Bevill*, 103 F.4th at 379 (emphasis added) (internal quotes and citations omitted). Finally, within the Fifth Circuit, courts must "examine each officer's actions independently to determine whether [they are] entitled to qualified immunity." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)).

While Defendants argue that Plaintiff has not stated a claim for which relief may be granted pursuant to Rule 12(b)(6), both Plaintiff and Defendants have introduced extensive facts into the record. Defendants' Rule 12(b)(6) motion and motion for summary judgment are presented together, as is the opposition. Because both parties rely upon factual materials outside of the pleadings, the Court evaluates whether Plaintiff has met his summary judgment burden with respect to his surviving § 1983 claim.

Here, Plaintiff alleges retaliation by Defendant Crain, who was acting as President of Southeastern Louisiana University at the time of Plaintiff's termination. (Doc. 1 at ¶ 3, 14, 66–68; Doc. 98 at 27.) In the Fifth Circuit, there are four elements to an employment-based First Amendment retaliation claim: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (citing *Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999)).

Neither party contests that termination is an adverse employment decision. However, as the Court has already analyzed, Plaintiff has not adequately alleged that he spoke or attempted to speak on matters of public concern at either the September 2018 or October 2018 meetings. *Supra*, Part IV(C)(i). Plaintiff does not allege or present any facts to show the Court that he discussed matters of public concern at these meetings. Instead, he discussed parliamentary procedure, the process for creating the agendas for faculty senate meetings, and his proposals on professional ethics in hiring faculty, the Executive Council's responsibilities, academic freedom, faculty governance, and tenure were included on the agenda. (Doc. 98-6 at 16, 18; Doc. 98-7; Doc. 98-13.) None of these were allegations of misfeasance, corruption, or breach of the public trust, nor did Plaintiff ever attempt to raise those topics at these meetings. *See Graziosi*, 775 F.3d at 738.

Granted, Plaintiff claims that he made allegations prior to the September 2018 meeting that his supervisors had committed fraud by changing his department's policy permitting for compensation for outside employment. (Doc. 1 at ¶¶ 18–21, 24–34, 42.) As the Court has previously addressed, *see supra*, Part IV(A), these allegations fall outside of the statute of limitations, but Plaintiff argues that they provide background for his retaliation claim. (Doc. 98 at

33.) Plaintiff alleges that when Interim Head of the Department of Music and Performing Arts Dale Newkirk stated that it was "not financially sustainable" for full-time faculty to continue to receive supplemental compensation for outside employment, he committed fraud by misrepresenting facts. (Doc. 1 at ¶¶ 18–21.) Plaintiff extends this allegation to various other SLU officials, including Defendant Crain. (*Id.* at ¶¶ 21, 30.) Plaintiff further claims that "the administration's attempts to conceal who was responsible for the changes was in violation of the SLU Fraud policy." (*Id.* at ¶ 24.) Plaintiff does not explain how this would have been in violation of the fraud policy, other than arguing that there were "misrepresentations of fact." (*Id.* at ¶ 30.) Plaintiff claims that "Dr. Crain's August 24, 2017 appointment letter to all tenured faculty was intended to induce them to part with something of value which they owned[,]" *i.e.*, outside employment. (*Id.* at ¶ 31.) Plaintiff presents communications that he sent to various SLU administration and faculty members, including all members of the Music and Performance Faculty, alleging fraud. (Docs. 98-3, 98-5 at 1, 98-6 at 1–14.) He also presents a column he published in a local newspaper claiming he was censored by the university. (Doc. 98-5 at 2.) In this column, Plaintiff makes no allegations of fraud, corruption, or any misconduct other than a failure to follow parliamentary procedures. (*Id.*) Plaintiff argues that he was suspended from the university and ordered to undergo a fitness for duty evaluation "[i]n response to" these communications and to emails he made to administrators and to the Faculty Senate regarding the alleged fraud. (Doc. 1 at ¶ 37.)

Accepting Plaintiff's argument that the speech predating the statute of limitations provides background later events, Plaintiff has failed to show either the third or fourth factor for a retaliatory-discharge claim: he has not shown that his interest in speaking outweighed Defendants' interest in promoting efficiency or that the protected speech motivated the Defendants' conduct.

With respect to the third prong of the retaliatory-discharge claim, "[t]he *Pickering* balancing test undertaken by courts to address this element of a First Amendment retaliatory-discharge claim seeks to 'promote the individual and societal interests that are served when employees speak as citizens on matters of public concern *and* to respect the needs of government employers attempting to perform their important public functions.'" *Bevill*, 103 F.4th at 378 (quoting *Garcetti*, 547 U.S. at 420 (emphasis added in *Garcetti*) (discussing *Pickering*, 391 U.S. at 568-69)). Provided that the first two prongs are met, an employee "must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419. "The Supreme Court has previously recognized as pertinent considerations 'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Bevill*, 103 F.4th at 378 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

Here, Plaintiff alleges that nearly every member of the SLU administration with whom he interacted—the Interim Head of the Department of Music and Dramatic Arts, the Dean of College of Arts and Humanities, the Provost, the Internal Auditor, and the President—committed fraud by requiring compliance with the new policy prohibiting compensation for outside employment, (Doc. 1 at ¶¶ 18–34), and this led to his refusal to comply with the new policy and his refusal to submit to a fitness for duty evaluation. (Doc. 93 at 15–16; Doc. 98-14 at 1–2.) The Tenure Hearing panel concluded that these refusals constituted insubordination and violations of law, board rules, and university policy. (Doc. 98-14 at 1–2.) Plaintiff disputes that these conclusions were justified, but he does not dispute that he refused to comply with the new policy by submitting updated

outside employment forms or undergo a fitness for duty evaluation with a university psychiatrist. (*See* Doc. 98 at 8.)

Plaintiff sent repeated emails to the entire music department, (Doc. 98-3), and to the Faculty Senate, (Doc. 1 at ¶¶ 35, 36, 40, 41), and behaved in ways that deviated from professional norms in the Faculty Senate meetings, (*see* Doc. 98-10 at 1–4). This interfered with co-worker harmony, had a detrimental effect on relationships between Plaintiff and others in the SLU Faculty, and interfered with the regular operation of university faculty and administration, as evidenced by complaints to the SLU Police Department and the Violence in the Workplace Task Force regarding Plaintiff's behavior. (Doc. 98-10 at 1–5.) Plaintiff does not dispute this.

Plaintiff had multiple options to address the alleged fraud he believed was occurring at SLU. (*See* Doc. 1 at ¶¶ 23, 29, 32.) In addition to internal SLU processes, Plaintiff published a letter in a local paper. (*Id.* at ¶ 46.) At no point does Plaintiff allege, much less show, that any member of the SLU faculty or administration objected to this publication. (*See* Doc. 98 at 5 (stating merely that Defendant Horzelski saw the article and informed the provost of its existence).) Plaintiff argues only that Defendants objected to his forms of communication that interfered with regular university administration. Plaintiff does not dispute the underlying facts here—that he refused to comply with University policies and requests, that he sent repeated emails to faculty email lists, or that his behavior disturbed Faculty Senate meetings. Pursuant to Fifth Circuit precedent and upon the undisputed facts, the Court holds that Plaintiff has not shown that his interests in speaking in the manner he preferred outweighed the public university employer's interests in promoting efficiency. *See Graziosi*, 775 F.3d at 741; *Lumpkin v. Aransas Cty*, 712 F. App'x 350, 359–360 (5th Cir. 2017).

Finally, Plaintiff has not shown that his protected speech—allegations of fraud on the part of public officials—in any way motivated Defendant Crain's actions in terminating his employment. Indeed, Plaintiff alleges that he was terminated "because of complaints filed by members of the Faculty Senate Executive Council." (Doc. 1 at ¶ 50.) Plaintiff presents the conclusions of the Tenure Hearing panel, which found after a hearing at which Plaintiff was represented by counsel and had the opportunity to present evidence, bring witnesses, and testify, that "all five charges alleged by the university administration were supported[.]" (Doc. 98-14 at 1–2.) Although Plaintiff attempts to dispute the Tenure Hearing's findings on each of these charges, at no point in his Complaint does Plaintiff make any factual allegations that his termination was caused by his allegedly protected speech. (Doc. 1 at ¶¶ 50–56.) Plaintiff makes only conclusory allegations that because he does not believe his termination was warranted on the grounds charged, it must have been "pretextual and a mask for retaliation for exercising and attempting to exercise his free speech rights under La. Const. Art. I, § 7 and the First Amendment." (*Id.* at ¶ 55.) This is insufficient to allege causation for his termination.

Likewise, Plaintiff repeatedly asserts that his employment was terminated "because he sent 'numerous emails.'" (Doc. 98 at 7, 19, 31.) However, the Hearing Panel's recommendation to Defendant Crain cites to "numerous emails" not in reference to Plaintiff's statements or speech, but in reference to "[t]he numerous emails and in-person testimony explaining Dr. Rushing's behavior at two separate Faculty Senate Executive Council Meetings and the October Faculty Senate Meeting[, which] gave the panel serious concern." (Doc. 98-14 at 1.) The Panel unanimously agreed that these emails and witness accounts "revealed a pattern of hostile behavior to faculty and staff." (*Id.*) Plaintiff at no point ties his termination to his allegations of fraud. He attempts to argue that "[a]fter complaining about the conduct of Defendants Horzelski and

Yeargain, Dr. Rushing was ejected from this October 3rd FS meeting. Dr. Rushing was retaliated against for accusing Defendants Crain and other colleagues of fraud as he was suspended and then terminated for not acting 'collegially' by making 'verbal and written attacks against colleagues and the university,' which were in reality Plaintiff's allegations of fraud." (Doc. 98 at 22.)

As the Court has already found, Plaintiff at no point discussed or attempted to discuss his allegations of fraud at the October 3, 2018, meeting—he discussed matters of parliamentary procedure and university hiring. Plaintiff's leap from the October 2018 meeting to his allegations of fraud is not rooted in any facts before the Court. Likewise, Plaintiff's argument that "Defendants' purported legitimate, non-discriminatory reason for Dr. Rushing's suspension and termination . . . were actually pretexts for free speech retaliation[]" relies on his attempts to cast doubt on Defendants' cause for termination rather than showing any causation between his allegations of fraud and his ultimate termination. (Doc. 98 at 31.)

Defendants have argued that Plaintiff fails to state a claim for relief, that he fails to show a violation of a clearly established constitutional right necessary to overcome Defendant Crain's qualified immunity defense, and that summary judgment should be granted because Plaintiff has failed to show the elements of a retaliatory-discharge claim. (Doc. 93 at 5–11.) The Court agrees that Plaintiff has failed to show that he spoke on matters of public concern within the statute of limitations; he has failed to show that his interest in speaking on matters of public concern prior to the statute of limitations outweighed the government employer's interest in promoting efficiency; and he has failed to show anything beyond legal conclusions that his speech was the cause for his termination. Plaintiff has therefore not shown a violation of his First Amendment right with respect to his retaliatory discharge claim. Plaintiff has not carried his summary judgment burden, and

because he does not show a violation of a clearly established constitutional right, Defendant Crain
is entitled to qualified immunity.

### E.    Plaintiff's State Law Claims

All of Plaintiff's federal law claims have now been dismissed. Plaintiff's remaining claims,
for defamation and breach of contract, are state tort claims between residents of the same state.
The Court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all
claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Indeed, the Fifth Circuit has
recognized that "[t]he general rule is that a court should decline to exercise jurisdiction over
remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Brookshire
Bros. Holding v. Dayco Prods.*, 554 F.3d 595, 602 (5th Cir. 2009); *see Miller v. Dunn*, No. 24-
10668, 2025 U.S. App. LEXIS 210 at *5, 2025 WL 32818 at *2 (5th Cir. Jan. 6, 2025). While the
investment of extensive judicial resources may provide for an exception from the general rule, the
inquiry is fact-specific. *Brookshire Bros.*, 554 F.3d at 602. "[W]hen a district court declines to
exercise jurisdiction over remaining state law claims following the dismissal of all federal-law
claims and remands a suit after investing a significant amount of judicial resources in the litigation
. . . , that court has abused its discretion under 28 U.S.C. § 1367." *Id.* at 602 (collecting cases).

This case was filed in 2019; extensive discovery has been conducted and multiple
discovery disputes have been resolved by this Court; the docket contains over 150 filings; the
Court has now rendered jurisdictional and substantive rulings after an extensive review of the
record; and the trial is less than a month away. The Court declines to remand to state court after
investing such extensive judicial resources. *See id.* at 602–03.

### i.  Breach of Contract

Plaintiff alleges that the University of Louisiana System breached his employment contract. (Doc. 1 at ¶¶ 69–75.) He later argues instead that "the contract existed between him and SLU" and that "Defendants *caused SLU* to breach this contract by causing his termination and resulting damages." (Doc. 98 at 34.) Neither the University of Louisiana System nor SLU is a party to this action; both would be entitled to sovereign immunity if they were.

Under Louisiana law,

> "The action for intentional interference with contractual rights is a very narrow one, with five elements a plaintiff must prove to recover: (1) the existence of a contract or legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or cause of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer."

*Benoist v. Jackson Nat'l Life Ins. Co.*, 364 So. 3d 1162, 1167 (La. Ct. App. 2023). Setting aside the parties' disputes with respect to the contract, the Court has already analyzed causation on the part of each of the Defendants with respect to Plaintiff's termination. Plaintiff presents no additional causation arguments or facts in support of his breach of contract claim. As analyzed above, Plaintiff has failed to show that Defendants Dupre, Horzelski, or Yeargain were in any way involved in his termination.

Plaintiff alleges that he brings suit against Defendant Crain in both his individual and official capacities. (Doc. 1 at ¶ 3.) Plaintiff is unclear in his Complaint which of his claims are against Defendant Crain in his personal capacity versus his official capacity; however, he is clear that when Defendant Crain terminated his employment, he was acting "as the President of SLU." (*Id.* at ¶ 14.) Likewise, in his prayer for relief, Plaintiff requests that the Court order Defendant "Crain in his official capacity, to reinstate the Plaintiff to the position he held at the time of

termination." (*Id.* at ¶ 79.) In his opposition to *Defs.' MTD MSJ*, Plaintiff states that he "has asserted only a claim against Dr. Crain in his *official capacity* as President of SLU for *declaratory and injunctive relief*." (Doc. 98 at 15–16 (emphasis in original).) He specifies that he "has sued Defendants Crain, Dupre and Horzelski in their *individual capacities* (not in their official capacities) for money damages under 42 U.S.C. § 1983." (*Id.* at 15.) Given that Plaintiff states only that he sues Defendant Crain in his individual capacity under § 1983, the Court finds that Plaintiff's non-§ 1983 claims against Defendant Crain are in his official capacity.

As the Court analyzed above, the Eleventh Amendment generally bars suits against the state, its agencies, and state officials. While the *Ex Parte Young* exception applied with respect to the alleged violation of federal law, it does not apply to violations of state law. *Williams v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)). Plaintiff's breach of contract suit against Defendant Crain is barred by the Eleventh Amendment's sovereign immunity provision.

### ii. Defamation

Plaintiff brings a defamation claim against Defendant Yeargain. A claim for defamation under Louisiana law requires the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99), 737 So. 2d 706, 715; *Porter v. Dauthier*, No. 14-41, 2014 U.S. Dist. LEXIS 164819, 2014 WL 6674468, at *5 (M.D. La. Nov. 25, 2014) (citing *Trentecosta v. Beck*; 96-2388 (La. 10/21/97), 703 So. 2d 552, 559).

Under Louisiana law, there are three key questions "in the determination of whether a given communication is defamatory." *Johnson v. Purpera*, 320 So. 3d 374, 388 (La. 5/13/2021). "The

first is whether the communication was reasonably capable of conveying the particular meaning or innuendo ascribed to it by the plaintiff. The second is whether that meaning is defamatory in character. And, finally, the third question is whether the meaning in question was in fact conveyed to and understood by the recipient of the communication. The first two questions are reserved for resolution by the court. The third is for the jury or the trier of fact to decide." *Id.* (citing *Sassone v. Elder*, 626 So. 2d 345, 352 (La. 10/18/1993); Restatement (Second) of Torts § 614 (1977)).

On the other hand, defamation by innuendo "occurs when one publishes *truthful* statements of fact and those truthful facts carry a false defamatory implication about another ... In other words, defamatory meaning can be insinuated from an otherwise true communication." *In re Baxter*, No. 01-26, 2001 U.S. Dist. LEXIS 26001, 2001 WL 34806203, at *16 (W.D. La. Dec. 20, 2001) (quoting *Fitzgerald*, 737 So. 2d at 717 (internal quotation marks and citations omitted)).

The publication element "does not require that the defamatory comment be published to the general public, but is satisfied by communication to a person other than the one defamed." *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 U.S. Dist. LEXIS 3488, 2001 WL 274518, at *5 (E.D. La. Mar. 20, 2001) (*quoting Com. Union Ins. Co. v. Melikyan*, 424 So. 2d 1114 (La. App. 1st Cir. 1982)). Under Louisiana law, communication between officers and agents of the same corporation, and in relation to their duties for the corporation cannot be construed as communication to a third party for purposes of establishing the "publication" element of a defamation action. *Id.* Notably, failure to prove any element invalidates a defamation claim. *Weber*, 2001 U.S. Dist. LEXIS 3488, 2001 WL 274518, at *5 (citing *Estiverne v. Louisiana State Bar Assoc.*, 863 F.2d 371, 374 (5th Cir. 1989)).

Defendant Yeargain argues that the Court should grant summary judgment because Plaintiff has failed to establish the elements necessary to show defamation. (Doc. 90-1 at 4.) Defendant

Yeargain's defamatory statements, as alleged by Plaintiff, were "that Plaintiff needed 'medical help,' that he should be expelled from the Faculty Senate for being disruptive, and that everything was Plaintiff's 'imagination.'" (Doc. 1 at ¶ 76.) Plaintiff further alleges that Defendant Yeargain defamed him "by recommending that Plaintiff obtain counseling, because he was 'out of touch with reality.'" (*Id.* at ¶ 77.)

First, with respect to falsity, Defendant Yeargain argues that Plaintiff "makes only conclusory assertions that Yeargain made these statements 'with knowledge of their falsity . . .and without having reasonable grounds for believing in their truth.'" (Doc. 90-1 at 5 (citing Doc. 1 at ¶ 78.) Defendant Yeargain argues that he merely "expressed opinions regarding Rushing's behavior" and that "he had reasonable grounds for believing his opinions were grounded in truth based on prior dealings with Rushing and his personal interactions with him[.]" (*Id.*) In response, Plaintiff argues that the statements in question were defamation by innuendo, which "'occurs when one publishes *truthful* statements of fact, and those *truthful* facts carry a false, defamatory implication.'" (Doc. 99 at 13 (quoting *Johnson v. Purpera*, 2020-01175 (La. 05/13/21); 320 So. 3d 374, 389).) Plaintiff does not specifically allege either that Defendant Yeargain's statements were false, and therefore potentially defamatory, or that they were truthful, and therefore potentially defamation by innuendo.

As Plaintiff asserts, defamation by innuendo "occurs when one publishes *truthful* statements of fact, and those *truthful* facts carry a false, defamatory implication about another." *Fitzgerald v. Tucker*, 737 So. 2d 706, 717 (La. 6/29/1999) (citing *Schaefer v. Lynch*, 406 So. 2d 185, 188 (La. 1981); *Sassone*, 626 So. 2d at 353–54). At minimum, however, this requires some allegation from Plaintiff that the statements from Defendant Yeargain were both factual and did carry a false and defamatory implication. Plaintiff argues merely that "[a] reasonable jury could

find that these published statements . . . implied that Rushing was unfit and/or not competent to perform his duties as Vice-President of the FS[]" and "that such comments lowered Rushing 'in the estimation of the community,' or deter[ed] others from associating or dealing with [him], or otherwise expose[d] [him] to contempt or ridicule.'" (Doc. 99 at 14 (citing *Fitzgerald*, 737 So. 2d at 716).)

Defamation, including defamation by innuendo, does not apply to expressions of opinion. *Fitzgerald*, 737 So. 2d at 716–719. "If a statement expresses an opinion, unless the opinion implies a false and libelous fact, a defamation action will not succeed." *Johnson*, 320 So. 3d at 394. However, "if a statement of opinion is accompanied by an express statement of fact, that express statement of fact may be actionable if it is defamatory, false, and concerns another." *Fitzgerald*, 737 So.2d at 717. "Moreover, if a statement of opinion implies that certain facts exist, then such a statement, even though couched in terms of an opinion, could certainly give rise to a defamation action if the implied factual assertions are defamatory and false." *Id.* (citing *Freeman v. Cooper*, 414 So. 2d 355 (La. 1982.)). That said, "'the factual inference created by the statement of opinion must be ascertainable by a reasonable person with some degree of certainty. Otherwise, juries would be asked to engage in guessing-games about possible uncomplimentary inferences that can be drawn from statements of opinion, and the First Amendment protections afforded in this area would become worthless.'" *Id.* (quoting *Bussie v. Lowenthal*, 535 So. 2d 378, 378 (La. 12/12/1988)) (cleaned up). "In sum, an expression of opinion is actionable only if it implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, made with actual malice, and concern another." *Id.* "As a practical matter, [] 'the crucial difference between statement of fact and opinion depends on whether ordinary persons hearing or reading the matter complained of would be likely

to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact.'" *Johnson*, 320 So. 3d at 394 (quoting *Mashburn v. Collin*, 355 So. 2d 879, 885 (12/13/1977)).

Here, Plaintiff alleges that Defendant Yeargain stated at the September 26, 2018 meeting:

> "Steven, either you get medical help . . . or I am going to recommend you be expelled from this body. You are a disrupter. You need medical help. You think you're God's gift to everyone. Everyone who questions you is dumb and insane. You are the one who needs medical help just like you did 20 years ago. You obviously got that help because you straightened up for about 10 years. Now you are right back into your concept that you are the only person in the world and everything else is just your imagination and you can control us. I am not going to be bored by your bullshit anymore. So either go to the place, go with the program, or get out now."

(Doc. 1 at ¶ 43.) In addition, Plaintiff alleges that at the October 3, 2018, meeting, Defendant Yeargain "recommend[ed] that Plaintiff obtain counseling, because he was 'out of touch with reality.'" (Doc. 1 at ¶ 45.) Plaintiff points specifically to the statements "that Plaintiff needed 'medical help,' that he should be expelled from the Faculty Senate for being disruptive, and that everything was Plaintiff's imagination[,]" as well as the "recommend[ation] that Plaintiff obtain counseling, because he was 'out of touch with reality'" as defamatory. (*Id.* at ¶¶ 76–78.)

Defendant Yeargain's alleged recommendation that Plaintiff obtain counseling and medical help was an expression of opinion—that he believed Plaintiff needed and should get counseling or medical help. While it implies the existence of facts (*i.e.*, that Plaintiff had a medical condition requiring counseling or medical help, referring to past medical help), Plaintiff has not disputed the truthfulness of these facts or alleged them to be false.

Likewise, Defendant Yeargain's alleged statement that he was going to recommend Plaintiff be expelled from the Faculty Senate for being disruptive was a statement of opinion on Defendant Yeargain's part, which again implied the existence of a fact—here, Plaintiff's disruptiveness. Again, Plaintiff has not disputed that he was disruptive.

Defendant Yeargain's alleged statement that "everything else is just your imagination" is again, a statement of opinion rather than fact, without any reference to what "everything else" might be. (Doc. 1 at ¶ 43.) While Defendant Yeargain's alleged statements that Plaintiff formerly required medical help approximately 20 years previously and that he "straightened up for about 10 years" were not opinions, Plaintiff has not alleged that they were defamatory—not as false defamatory statements of fact, nor as statements of opinion implying false defamatory statements of fact, nor as truthful statements carrying defamatory implications. *See Johnson*, 320 So. 3d at 389 (citing *Fitzgerald*, 737 So. 2d at 716–17). Plaintiff has not alleged that any other statements in the quoted paragraph are defamatory or false.

In sum, Plaintiff attempts to argue that several statements that "may or may not be true" are defamation by innuendo merely by virtue of being about a private individual's private affairs, simply because of the conclusions others might draw based upon those statements. (Doc. 99 at 14.) This ignores Louisiana precedent on defamation. Plaintiff could have alleged that these statements are false, and therefore defamatory but he has not alleged falsity. He could have alleged that these statements, although expressions of opinion, imply facts that are false; he has not alleged that they imply any false facts. Finally, he could have alleged that these statements are truthful statements of fact that lead to defamatory implications. Plaintiff has also not alleged that the statements he points to as defamatory by innuendo are truthful statements of fact. Instead, the Court finds that each statement Plaintiff points to as defamatory by innuendo is an expression of opinion; he does not make any allegations as to the falsity of the facts they might imply. In addition, Plaintiff does not make any allegations about the statement that he previously obtained medical help, which was not an expression of opinion.

58

Because each of the statements Plaintiff alleges is defamatory is instead an expression of opinion, the Court dismisses the defamation claims against Defendant Yeargain.

## V.     LEAVE TO AMEND

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). Likewise, "'[o]rdinarily, when a complaint is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice.'" *Green Valley*, 969 F.3d at 468 (quoting *Williams v. Morris*, 614 F. App'x 773, 774 (5th Cir. 2015) (per curiam)).

Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). *See* Fed. R. Civ. P. 15(a). While "[l]eave to amend is in no way automatic . . . , the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994 (citation and internal quotation marks omitted)). "[L]eave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016). "The court may deny leave to amend, however, if the defects are incurable or the plaintiffs have already alleged their best case." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

Here, Plaintiff has failed to show standing with respect to his § 1983 claims against Defendants Dupre, Horzelski, and Yeargain. *See supra*, Part IV(C). This dismissal will therefore

be without prejudice. Despite years of discovery and opportunities to amend his pleadings, however, Plaintiff did not show an injury or traceability to these Defendants with respect to his alleged deprivation of free speech, and he did not show traceability to these Defendants with respect to his alleged retaliation. Instead, concedes facts that make it impossible to show standing as to these Defendants. The defects here are therefore incurable, and leave to amend would be futile.

Defendant Crain's Motion for Summary Judgment with respect to Plaintiff's § 1983 claim for retaliation will be granted, since Plaintiff has failed to establish the violation of a constitutional right. Because this is a summary judgment determination, these claims will be dismissed with prejudice, and Plaintiff will not be given leave to amend.

Plaintiff has failed to allege jurisdiction with respect to his breach of contract claims against Defendant Crain, which are barred by the Eleventh Amendment's sovereign immunity provision. He has failed to show standing as to Defendants Dupre, Horzelski, and Yeargain. These claims will therefore be dismissed without prejudice, and Plaintiff will be given leave to amend.

Plaintiff has failed to state a claim with respect to his defamation claims against Defendant Yeargain; these claims will be dismissed without prejudice, and Plaintiff will be given leave to amend.

Plaintiff is reminded of his obligation to have a good faith basis in law and fact before amending his petition. *See* Fed. R. Civ. P. 11.

## VI.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment and Rule 12(c) Motion to Dismiss on Behalf of Defendant, Dr. John Yeargain* (Doc. 90) and the *Defendants' Rule 12 (c)*

*Motion to Dismiss and Motion for Summary Judgment* (Doc. 91) are **GRANTED.** Defendant Dupre, Defendant Horzelski, and Defendant Yeargain's Motion to Dismiss is **GRANTED** with respect to Plaintiff's § 1983 claims for deprivation of free speech and retaliation; Plaintiff has failed to establish standing as to these Defendants. Plaintiff's § 1983 claims are **DISMISSED WITHOUT PREJUDICE.** Defendant Crain's Motion for Summary Judgment with respect to Plaintiff's § 1983 claim for retaliation is **GRANTED**; Plaintiff has failed to show a violation of a constitutional right.

**IT IS FURTHER ORDERED** that Defendant Dupre, Defendant Horzelski, and Defendant Yeargain's Motion to Dismiss is granted with respect to Plaintiff's breach of contract claim; Plaintiff has shown no causation with respect to these Defendants. Plaintiff's breach of contract claims against Defendants Dupre, Horzelski, and Yeargain are **DISMISSED WITHOUT PREJUDICE.** Defendant Crain's Motion to Dismiss is granted with respect to Plaintiff's breach of contract claim; the Eleventh Amendment bars this suit against him. Plaintiff's breach of contract claim against Defendant Crain is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant Yeargain's Motion to Dismiss is granted with respect to Plaintiff's defamation claim; Plaintiff has failed to allege facts sufficient to state a claim for relief. Plaintiff's defamation claims are **DISMISSED WITHOUT PREJUDICE.**

Plaintiff is given leave to amend his Complaint as to his breach of contract claims against Defendants Dupre, Horzelski, and Yeargain and as to his defamation claims against Defendant Yeargain. Plaintiff is reminded of his obligation to have a good faith basis in law and fact before amending his petition. *See* Fed. R. Civ. P. 11.  Any amendments are due 28 days from this order. Failure to amend will result in dismissal of claims with prejudice. Defendants are instructed to contact the Court if the 28-day period passes and Plaintiff has failed to file any amended complaint.

Given that the Court has allowed Plaintiff the opportunity to amend, **IT IS FURTHER ORDERED** that the February 24, 2025, trial date is CONTINUED.

Signed in Baton Rouge, Louisiana, on <u>February 7, 2025</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**