**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

STEPHEN J. RUSHING

CIVIL ACTION

VERSUS

NO. 19-653-JWD-SDJ

JOHN YEARGAIN, ET AL.

**RULING AND ORDER**

This matter comes before the Court on the *Defendants' Rule 12(b)(6) Motion to Dismiss on Behalf of Dr. John Crain, Tara Dupre, and Dr. John Yeargain*, (Doc. 199) (the "*MTD*"), filed by Defendants Dr. John L. Crain ("Crain"), Tara Dupre ("Dupre"), and Dr. John Yeargain ("Yeargain") (collectively, "Defendants"). Plaintiff Steven J. Rushing ("Plaintiff" or "Rushing") opposes the *MTD*. (Doc. 203.) Defendants filed a reply (Doc. 204), and Plaintiff filed a sur-reply. (Doc. 207.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *MTD* is granted in part and denied in part.

**I.    BACKGROUND**

At the time of the facts alleged in the *Complaint*, Plaintiff was a tenured professor at Southeastern Louisiana University ("SLU") and Vice President of the Faculty Senate. (Doc. 1 at ¶¶ 8, 11.) On April 16, 2018, SLU repealed its supplemental compensation policy for faculty and staff. (*Id.* at ¶ 19.) Plaintiff allegedly emailed Dupre, SLU's Director of Human Resources, to express his concern that the repeal "amounted to a breach of contract." (*Id.* at ¶ 32.) He later forwarded his emails with Dupre to all members of the Faculty Senate. (*Id.* at ¶¶ 35–36.) On October 31, 2018, Dupre allegedly suspended Plaintiff for forwarding their email exchanges. (*Id.* at ¶ 37.) Dupre banned Plaintiff from SLU's campus, facilities, and off-campus activities. (*Id.*) She also directed Plaintiff to undergo a fitness for duty evaluation with a workplace psychiatrist. (*Id.*)

1

Plaintiff alleges that at SLU Faculty Senate meetings on September 26, 2018 ("the September meeting"), and October 3, 2018 ("the October meeting"), he was prevented from speaking on certain topics and was defamed. (*Id.* at ¶¶ 43–45; Doc. 196 at ¶¶ 108–09.) He further alleges that his proposed discussion topics were removed from the October meeting's agenda, and that he was ejected from that meeting. (Doc. 1 at ¶¶ 48–49.) At least two students were in attendance during the October meeting. (*Id.* at ¶ 52(a)–(b).)

Plaintiff states that he received a notice on January 3, 2019, that there would be a hearing to consider terminating his employment. (*Id.* at ¶ 50.) The five charges for Plaintiff's termination were:

a. [I]nsubordination for allegedly refusing to complete a workplace fitness evaluation, refusing to provide the names of two students who attended the October 3, 2018 Faculty Senate Meeting, and refusing to complete an outside employment form;
b. Exploiting students in violation of professional standards of ethics as he allegedly asked students enrolled in one or more of his classes to assist him at the October Faculty Senate Meeting, and asked the students at this meeting to stay behind on his behalf, allegedly inappropriately exposing them to a faculty dispute;
c. Uncollegial behavior because of alleged uncollegial and/or threatening behavior, such as an email wherein Dr. Rushing stated to Mr. Azuoru "I am afraid for you to meet with me;"
d. Dereliction of duties for allegedly being behind schedule for Music 438; and
e. Violations of law, board rules, and university policy for allegedly refusing to complete an outside employment form.

(*Id.* at ¶ 52.) A hearing was conducted on February 15, 2019, at which Plaintiff alleges multiple witnesses, including Dupre, presented false testimony. (*Id.* at ¶ 53.) Specifically, Dupre allegedly falsely stated that Plaintiff "failed to contact her to set up an examination with a psychiatrist," and that he "failed to complete his outside employment certification." (*Id.* at ¶¶ 53(c)–(d).) Following this hearing, Plaintiff was removed from his full professor position on February 28, 2019. (*Id.* at ¶

9.) Plaintiff alleges this decision was substantially motivated by the allegedly defamatory statements at the September and October meetings and the workplace fitness evaluation he was ordered to undergo. (Doc. 196 at ¶¶ 113, 107.) He appealed his termination, which the Board upheld on June 27, 2019. (Doc. 1 at ¶ 10.)

On September 26, 2019, he filed suit against the following Defendants: Crain, President of SLU; Yeargain, Parliamentarian of the SLU Faculty Senate; Dr. Erin Horzelski, President of the SLU Faculty Senate; and Dupre, the Director of Human Resources at SLU. (*Id.* at ¶¶ 2–5.) Plaintiff asserted claims pursuant to 42 U.S.C. § 1983 and Louisiana law. (*Id.* at ¶¶ 57–78.) This Court dismissed Plaintiff's § 1983, breach of contract, and defamation claims but gave him leave to amend his defamation claims against Yeargain and his breach of contract claims against Dupre, Horzelski, and Yeargain. (Docs. 193, 195.) Plaintiff thus filed an *Amended Complaint*, which added additional allegations to the original *Complaint*. (Doc. 196.) Specifically, Plaintiff amended his breach of contract claims against Crain and Dupre (*Id.* at ¶¶ 91–107) and his defamation claim against Yeargain. (*Id.* at ¶¶ 108–13.)

## II.    PARTIES' ARGUMENTS

### A.    *MTD* (Doc. 199) and Memorandum in Support of *MTD* (Doc. 199-1)

Defendants move for dismissal with prejudice of the breach of contract and defamation claims raised in Plaintiff's *Amended Complaint*. (Doc. 199.)

#### i.  Breach of Contract Claims Against Crain and Dupre

The breach of contract claim against Crain "should be stricken because the Court previously held that Crain was immune under the Eleventh Amendment as to all claims asserted against him," and the Court did not give Plaintiff leave to amend the dismissed breach of contract

claim against Crain. (Doc. 199-1 at 4.) Defendants assert that Crain should be awarded sanctions against Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. (*Id.* at 5.)

Additionally, the facts alleged in the *Amended Complaint* fail to state a claim against Crain and Dupre in their individual capacities and do not overcome Louisiana's discretionary function immunity for public officials. (Doc. 199 at 2.) Crain and Dupre's decisions and actions are protected by this immunity because they acted within the scope of their authority. (Doc. 199-1 at 5 (citing La. R.S. 9:2798.1).) And the ultra vires doctrine is inapplicable because an "action can only be ultra vires when it is entirely outside the scope of the official's statutory or delegated authority." (*Id.* at 6 (citing *Plaquemines Par. Comm'n Couns. v. Perez*, 379 So. 2d 1373 (La. 1980)).) Crain was performing his duties as President of SLU when he ordered Plaintiff's workplace fitness evaluation and recommended Plaintiff's termination. (*Id.* at 5–6.) Dupre was performing her duty as Director of Human Resources when she facilitated Plaintiff's workplace fitness evaluation. (*Id.* at 6.) Plaintiff's claim that Crain and Dupre's acts were ultra vires is unsupported and should be dismissed due to Louisiana's discretionary function immunity statute. (*Id.* (citing La. R.S. 9:2798.1).)

To overcome the discretionary function immunity, Plaintiff must allege specific facts demonstrating that Crain and Dupre "acted with fraud, malice, or intentional misconduct." (*Id.* at 8.) Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard for fraud claims. (*Id.* (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).) "The broad and non-specific allegations that Crain and Dupre acted willfully and unlawfully are conclusory," and do not satisfy Rule 9(b)'s requirements. (*Id.* at 9.) Thus, the breach of contract claims against Crain and Dupre must be dismissed with prejudice. (*Id.*)

4

### ii. Defamation Claims Against Yeargain

### a. No False and Defamatory Statements

Defendants also argue the *Amended Complaint* fails to state a claim for defamation against Yeargain. (*Id.*) The *Amended Complaint* alleges Yeargain made thirteen defamatory statements. (*Id.* at 11.) Four of these statements, which Plaintiff claims are false, are opinions, and Plaintiff does not allege that they imply false defamatory facts. (*Id.* at 14–15.) And this Court previously found that another five of the statements are non-defamatory opinions (*Id.* at 11–14.)

Plaintiff also alleges two statements—"You either go to the place, or go with the program, or get out now" and "I assumed that it was your normal (stuff) and moved it to the trash"—are opinions that carry false and defamatory implications. (*Id.* at 16 (quoting Doc. 196 at ¶ 108).) As to the first of these statements, Plaintiff does not allege what the false and defamatory implication is, and "[t]here is no reasonably ascertainable defamatory fact implied by the statement." (*Id.*) Plaintiff alleged the second statement falsely implied that his work product is garbage. (*Id.* (quoting Doc. 196 at ¶ 108).) Defendants posit that the statement "does not imply with reasonable certainty" that Plaintiff's work product is garbage, but instead, that Yeargain thought Plaintiff's emails were not worth reading. (*Id.*) Such an implication is not defamatory. (*Id.*)

Plaintiff asserts the statement that he "obviously got help" because he "straightened up" for ten years is defamatory by implication, but he does not allege what that implication is. (*Id.* at 17.) Additionally, Plaintiff stated that he did receive mental health treatment about twenty years prior to this statement. (*Id.*) Thus, the statement is an opinion without a false or defamatory implication. (*Id.*) The *Amended Complaint* also alleges the question regarding whether Plaintiff could get tenure at any other place "carries a false implication" because he "was never denied tenure." (*Id.* (quoting Doc. 196 at ¶ 108).) The question is not an "assertion of false fact." (*Id.*)

### b.  No Unprivileged Publication to a Third Party

All thirteen of the alleged defamatory statements were between employees of SLU and were made in the course and scope of their employment. (*Id.* at 18.) Statements between employees, even in the university setting, made in the course and scope of employment are not "statements communicated or publicized to third persons." (*Id.* at 17–18 (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So. 2d 1114, 1114–15 (La. App. 1 Cir. 1982); *Jones v. Southern Univ.*, No. 18-1034, 2020 WL 1430480, at *11 (M.D. La. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL 1433529 (M.D. La. Mar. 23, 2020)).) The defamation claim, therefore, must fail because Plaintiff has not and cannot establish the publication element. (*Id.* (citing *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 681).)

### c.  No Actual Malice or Other Fault

The *Amended Complaint* alleges no facts demonstrating actual fault or malice or supporting the conclusory allegation that some of Yeargain's statements were false. (*Id.*) Defendants argue the *Amended Complaint* does not assert "any basis whatsoever" for the claims Yeargain knew his statements were allegedly false. (*Id.*) Yeargain expressed opinions regarding Plaintiff's behavior, and he had reasonable grounds, including his interactions with Plaintiff, to believe his opinions were grounded in truth. (*Id.* at 18–19.) Plaintiff has not alleged and cannot prove that the statements were false or made with fault or actual malice or without reasonable grounds to believe they were true. (*Id.* at 19.) Thus, the defamation claim must fail. (*Id.*)

### d.  No Damage to Plaintiff

When the *Amended Complaint* is read in conjunction with the original *Complaint* (Doc. 1), "it is clear that Rushing has not shown how any damages asserted in his general pleading of 'Prayer for Relief' were *caused by* the defamatory statements." (Doc. 199-1 at 19 (emphasis in original).)

The prayer does not mention the defamation cause of action but specifically seeks relief for breach of contract and violations of 42 U.S.C. § 1983, the First Amendment to the United States Constitution, and Article I § 2 of the Constitution of the State of Louisiana. (*Id.* (citing Doc. 1).) Even if a compensatory damages award included the defamation claim, Plaintiff still must show that any such damages were caused by Yeargain's publication of defamatory statements. (*Id.* at 19–20.) Plaintiff's pleadings, however, do not establish causation. (*Id.* at 20.) His allegations regarding causation are directly controverted by several of his other allegations. (*Id.*) Amendment would not cure Plaintiff's legally deficient pleadings and claims because "under no set of allegations can Rushing establish all four requisite elements of a defamation claim." (*Id.* at 22.) Thus, dismissal with prejudice is warranted. (*Id.*)

### iii. Rule 11 Violation

The Court previously "cautioned Plaintiff to have a good faith basis in law and fact before amending his petition." (*Id.*) Defendants claim Plaintiff does not have such a basis for the *Amended Complaint*. (Doc. 199 at 3.) Defendants argue that Rule 11 of the Federal Rules of Civil Procedure has therefore been violated, and Plaintiff should be sanctioned. (*Id.*; Doc. 199-1 at 22.)

### B.    Opposition (Doc. 203)

The *Amended Complaint* "contains sufficient factual allegations, which accepted as true, are sufficient to state a claim to relief that is plausible on its face." (Doc. 203 at 13.) Thus, the *MTD* should be denied. (*Id.*)

### i.  Discretionary Function Immunity

The discretionary function immunity defense "must be proven by the Defendants." (*Id.* at 1.) This Court has previously held that the application of this affirmative defense is "a question of fact to be determined through a trial." (*Id.* at 2 (quoting *Bouchereau v. Gautreaux*, No. 14-805,

7

2015 WL 5321285, at *15 (M.D. La. Sept. 11, 2015)).) Thus, a motion to dismiss is not the proper procedural mechanism to determine whether the discretionary function immunity applies. (*Id.* at 2, 12.)

Plaintiff also argues such immunity does not apply in this case because the *Amended Complaint* alleges each Defendant performed intentional and unlawful acts. (*Id.* at 13.) Louisiana Revised Statutes § 9:2798.1(C)(2) precludes immunity for acts that constitute, among other things, intentional or willful misconduct. (*Id.* at 12.)

### ii. Claims Against Crain

Plaintiff believes the Court impliedly granted him leave to amend his state law claims against Crain when it dismissed those claims from the original *Complaint* because the Court analyzed the potential viability of a breach of contract claim against Crain. (*Id.* at 3 (referencing Doc. 195).) If the Court requires Plaintiff to file a separate motion for leave to amend those claims, Plaintiff asks the Court to inform him accordingly. (*Id.* at 4.)

The *Amended Complaint* contains sufficient factual matter to state a claim for relief that is plausible on its face. (*Id.* at 3.) SLU's contractual obligations to Plaintiff are set forth in paragraphs 80 through 90 in the *Amended Complaint*. (*Id.* at 4.) The *Amended Complaint* also alleges Crain knew about Plaintiff's employment/tenure contract and intentionally caused a breach of that contract by terminating Plaintiff's employment. (*Id.* (quoting Doc. 196 at ¶ 103).) Crain terminated Plaintiff's employment on ultra vires grounds that were not authorized under the contract. (*Id.* (quoting Doc. 196 at ¶ 103).) The termination of his employment "caused damages to the Plaintiff by SLU's breach of contract." (*Id.* (quoting Doc. 196 at ¶ 103).) Plaintiff alleges Crain's acts were willful and without right or justifiable cause, and Crain acted out of resentment due to Plaintiff's prior fraud accusations against Crain. (*Id.* at 4–5 (citing Doc. 196 at ¶ 104).) The *Amended*

*Complaint* asserts that Plaintiff was not insubordinate when he refused to comply with Crain's order to undergo a workplace fitness evaluation because such an order was unlawful as it violated the Americans with Disabilities Act. (*Id.* at 5 (citing Doc. 196 at ¶ 95).)

### iii.   Claims Against Dupre

Plaintiff insists he has alleged a cognizable and plausible breach of contract claim against Dupre. (*Id.* at 6.) Dupre was SLU's Director of Human Resources, knew about Plaintiff's contract with SLU, and intentionally caused SLU to breach the contract by ordering him to submit to an unlawful workplace fitness evaluation. (*Id.* (quoting Doc. 196 at ¶ 105).) Dupre had a duty to secure compliance with SLU's human resources policies. (*Id.*) Instead, she suspended Plaintiff, banned him from teaching, prohibited him from entering campus, and degraded his standing and prestige in the SLU community. (*Id.* (quoting Doc. 196 at ¶ 106).)

### iv.   Claims Against Yeargain

Plaintiff argues Yeargain's statements included in the *Amended Complaint* were willful and intentional and defamed Plaintiff. (*Id.* at 7–8 (quoting Doc. 196 at ¶¶ 108, 109, 112, 113).) All the allegedly defamatory statements occurred during Faculty Senate meetings, which are open meetings and one of which was attended by people who were not members of the Faculty Senate panel. (*Id.* at 8.) Yeargain "intentionally, willfully, outrageously, recklessly and maliciously" made the statements "to third parties for the specific purpose of causing harm to Plaintiff, both financially and to his reputation." (*Id.*) Due to the accusations that Plaintiff was experiencing psychosis and behaving irrationally, Plaintiff "suffered loss of employment, severe emotional distress and damage to his reputation." (*Id.* at 8–9.)

An allegedly defamatory statement should not be protected by the intra-corporate communication principle and should be considered a communication to a third party if the

statement pertains to matters unrelated to the employee's duties. (*Id.* at 10.) Yeargain was not acting in good faith or based on a reasonable belief that the statements were true when he portrayed Plaintiff "as a crazy person," which caused Plaintiff to undergo a coerced psychiatric examination and led to his termination. (*Id.* at 12.) Plaintiff argues the intra-corporate communication principle should be characterized as an affirmative defense for which good faith must be proven. (*Id.*) Even if this argument is rejected, Plaintiff asserts the principle still does not apply because Yeargain was not acting "within the course and scope of his duties as a professor" when he made the allegedly defamatory statements about Plaintiff. (*Id.*)

### C.    Reply (Doc. 204)

Defendants reply that the Court's prior ruling (Doc. 195) "could not be more clear" when it ruled that the state law claims against Crain are barred by the Eleventh Amendment. (Doc. 204 at 1.) Plaintiff's *Opposition* fails to address the Court's instructions giving him leave to amend only the claims against Dupre, Horzelski, and Yeargain. (*Id.* at 2 (referencing Doc. 195 at 61).) The Court never granted Plaintiff leave to amend the *Complaint* as to Crain. (*Id.*) "Here, Plaintiff has clearly ignored the Court's Ruling and Order, amending his Complaint to add claims against Crain, asserting the Court *must have implicitly* granted him leave to re-assert allegations against Crain." (*Id.* (emphasis in original).) The *Amended Complaint*'s claims against Crain must be dismissed because the Court has found that the Eleventh Amendment bars those claims, and Plaintiff did not file a motion seeking relief from that finding before he amended his pleading. (*Id.*) Additionally, sanctions are warranted because "Plaintiff has failed to heed the Court's admonishment under Federal Rule of Civil Procedure 11." (*Id.*)

Defendants contend that Plaintiff's argument regarding the availability of discretionary function immunity at the motion to dismiss stage misses the point. (*Id.*) The *Amended Complaint*'s

conclusory allegations that Crain and Dupre acted ultra vires, without factual support, are not sufficient to allege that Crain or Dupre acted outside the scope of their authority and therefore that they are not entitled to immunity. (*Id.* at 2–3.) The *Opposition* does not point to actions that can only be ultra vires. (*Id.* at 3.) Thus, Crain and Dupre's decisions and actions are protected by § 2798.1's discretionary function immunity. (*Id.*) Plaintiff also failed to allege sufficient facts to adequately allege violations of the Americans with Disabilities Act that would support his breach of contract claims against Crain and Dupre. (*Id.*)

Defendants also argue the fact that Yeargain was "off duty" when he made the allegedly defamatory statements about Plaintiff "is of no import because Plaintiff has affirmatively alleged that the Faculty Senate meetings *were* related to employment matters." (*Id.* at 4 (emphasis in original) (citing Doc. 1 at ¶¶ 14, 44, 47).) The *Amended Complaint* alleges no facts "tending to establish that Yeargain made the purported statements in bad faith or had no reasonable basis for making the statements." (*Id.*) Therefore, Plaintiff's assertion that Yeargain was not in good faith and had no reasonable basis for the statements are unsupported conclusions. (*Id.*) Additionally, the *Amended Complaint* does not allege any damages resulted from Yeargain's publication of actionable defamatory statements. (*Id.*)

"Further amendment would not cure Plaintiff's legally deficient pleadings and claims." (*Id.* at 5.) Thus, dismissal with prejudice is warranted. (*Id.*) Additionally, Plaintiff did not have a good faith basis in law and fact for his amendment, so the *Amended Complaint* violates Rule 11 and sanctions are appropriate. (*Id.*)

### D.    Sur-reply (Doc. 207)

Plaintiff argues the breach of contract claim against Crain "is well-founded under Louisiana law." (Doc. 207 at 1 (citing *Lodhi v. University of New Orleans through Univ. of La. Bd. of*

*Supervisors*, 2023-0590 (La. App. 4 Cir. 8/5/24), 421 So. 3d 39).) Additionally, the contract claims against Crain are based on state law. (*Id.* at 2.) Plaintiff asserts that none of the Defendants "enjoy any sovereign immunity as to state law claims asserted under this Court's supplemental jurisdiction." (*Id.* (citing La. Const. art. XII, § 10).)

Plaintiff also insists that Defendants' request for sanctions is groundless. (*Id.*) The amended claims "were made in the utmost of good faith after careful research, thoughtful discussion, and close reading of this Court's Ruling and Order." (*Id.*) Plaintiff again provides the Court with his interpretation of the *Ruling and Order* that allegedly led counsel to believe the Court granted leave to amend the breach of contract claim against Crain. (*Id.* at 2–3.) "However, in the event that the Court wishes the Plaintiff to file a separate motion for leave to file this part of the Plaintiff's Amended Complaint, the Plaintiff will be more than happy to do so." (*Id.* at 3.)

Plaintiff argues the *Amended Complaint's* allegations regarding breach of contract and willful, unlawful, and ultra vires conduct are plausibly pled. (*Id.*) These allegations "are more than sufficient to invoke the exception" to the discretionary function immunity statute. (*Id.* (citing La. R.S. 9:2798.1).) Defendants did not have discretion to terminate a tenured professor in violation of his employment agreement and the rules and regulations incorporated therein. (*Id.* at 3–4.)

Regarding the defamation claims, Plaintiff alleges "there are genuine issues of material fact as to whether" Yeargain's statements were within the course and scope of his employment or are subject to a privilege. (*Id.* at 4.) At the September and October meetings, Yeargain spoke outside his advisory and consultative role as Parliamentarian of the Faculty Senate because he "did not limit his speech to the chair of the meeting, did not maintain a position of impartiality, and did not refrain from attacking" Plaintiff. (*Id.*)

III.   LAW AND ANALYSIS

12

### A.    12(b)(6) Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal

13

evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey*, 540 F.3d at 338 (using permissive language regarding a court's ability "to rely on 'documents incorporated into the complaint by reference'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B.    Plaintiff's State Law Claims

All of Plaintiff's amended claims are state law claims between residents of the same state. A court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  Indeed, the Fifth Circuit has recognized that "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding v. Dayco Prods.*, 554 F.3d 595, 602 (5th Cir. 2009). S*ee Miller v. Dunn*, No. 24-10668, 2025 WL 32818, at *2 (5th Cir. Jan. 6, 2025). While the investment of extensive judicial resources may provide for an exception from the general rule, the inquiry is fact specific.

14

*Brookshire Bros.*, 554 F.3d at 602. This Court has already determined that the extensive judicial resources invested in this case justify exercising jurisdiction over the state law claims, even though all federal law claims have been dismissed. (Doc. 195 at 51.)

### i. Claims Against Crain

The Court previously dismissed all claims against Crain. (Docs. 193, 195.) Plaintiff's *Amended Complaint* asserts an amended claim for breach of contract against Crain. (Doc. 196 at ¶¶ 91–104.) At this stage in the litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). After dismissing the claims in Plaintiff's original *Complaint*, the Court provided Plaintiff with leave to amend certain portions of the *Complaint*. (Doc. 193 at 2; Doc. 195 at 61.) Specifically, Plaintiff received leave to amend "as to his breach of contract claims against Defendants Dupre, Horzelski, and Yeargain and as to his defamation claims against Defendant Yeargain." (Doc. 193 at 2; Doc. 195 at 61.) The Court did not give Plaintiff leave to amend his claims against Crain. Nor did Plaintiff file a motion seeking such leave. Additionally, neither Plaintiff's *Amended Complaint* nor his briefing in opposition to the *MTD* indicates that he received Defendants' written consent to amend the claims against Crain. Accordingly, the claims against Crain were amended in violation of Rule 15 of the Federal Rules of Civil Procedure and must be dismissed.

### ii. Claims Against Dupre

The *Amended Complaint* alleges that Dupre intentionally caused SLU to breach its employment contract with Plaintiff. (Doc. 196 at ¶ 105.) Intentional interference with contractual rights is a "very narrow" cause of action under Louisiana law. *Benoist v. Jackson Nat'l Life Ins. Co.*, 2022-0878 (La. App. 1 Cir. 4/14/23), 364 So. 3d 1162, 1167 (emphasis in original). This cause of action has five elements:

(1) the existence of a contract or legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or cause of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Id.* Intentional interference with contractual rights in Louisiana is limited in nature and may not be raised against anyone other than a corporate officer. *C. Robinson Enters., LLC v. ALM Baton Rouge, LLC*, No. 24-512, 2026 WL 303533, at *8 (M.D. La. Jan. 16, 2026), *report and recommendation adopted*, 2026 WL 301258 (M.D. La. Feb. 4, 2026).

Neither the *Complaint* nor the *Amended Complaint* alleges Dupre is a corporate officer. She is instead identified as "a Director of the SLU Human Resources Department." (Doc. 196 at ¶ 105.) A corporate officer is usually a high-ranking executive in a position such as CEO, president, secretary, or treasurer, rather than someone in a lower ranking position such as a department director or manager. *See Officer*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining a corporate officer as an "officer of a corporation, such as a CEO, president, secretary, or treasurer"). *See also C. Robinson Enters., LLC*, 2026 WL 303533, at *8 (finding an operations manager is not a corporate officer and thus not an appropriate defendant for an intentional interference with contract claim). Thus, Plaintiff has not sufficiently alleged that Dupre is a corporate officer, and therefore, he has not plausibly pled a cause of action of intentional interference with contractual rights against Dupre.

### iii.  Claims Against Yeargain

Plaintiff brings a defamation claim against Defendant Yeargain. A claim for defamation under Louisiana law requires the following four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or

16

greater) on the part of the publisher; and (4) resulting injury." *X-BIO LLC v. Gray Media Grp.*, No. 24-869, 2025 WL 2238591, at *2 (M.D. La. Aug. 6, 2025) (Dick, C.J.) (quoting *Costello v. Hardy*, No. 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139). "By contrast, defamation by innuendo 'occurs when one publishes *truthful* statements of fact and those truthful facts carry a false defamatory implication about another ... In other words, defamatory meaning can be insinuated from an otherwise true communication.'" *Williams v. Genesis Energy, LLC*, No. 20-35, 2021 WL 1227873, at *10 (M.D. La. Mar. 31, 2021) (deGravelles, J.) (emphasis and ellipsis in original). At minimum, however, this requires some allegation from Plaintiff that the statements from Defendant Yeargain were both factual and did carry a false and defamatory implication.

"[C]asual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation." *Cook v. Parish of Jefferson*, 621 F. Supp. 3d 666, 676 (E.D. La. 2022) (quoting *Barber v. Marine Drilling Mgmt., Inc.*, No. 01-1986, 2002 WL 237848, at *6 (E.D. La. Feb. 15, 2002)). Notably, if "even one of the required elements of the tort is lacking, the cause of action fails." *X-BIO LLC*, 2025 WL 2238591, at *2 (quoting *Costello*, 864 So. 2d at 140).

### a.  Publication

The publication element "does not require that the defamatory comment be published to the general public, but is satisfied by communication to a person other than the one defamed." *Genesis Energy, LLC*, 2021 WL 1227873, at *11. "Under Louisiana law, communication between officers and agents of the same corporation, and in relation to their duties for the corporation cannot be construed as communication to a third party for purposes of establishing the 'publication' element of a defamation action." *Id.* (citing *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *5 (E.D. La. Mar. 20, 2001)).

17

Plaintiff argues that Yeargain's allegedly defamatory statements should not be protected by this intra-corporate communication rule. (Doc. 203 at 12.) This rule, Plaintiff asserts, should be characterized as an affirmative defense and should require Defendants to prove good faith. (*Id.*) The Court sees no reason to transform the intra-corporate communication rule into an affirmative defense or to inject a good faith requirement into it when neither controlling precedent nor a Louisiana Supreme Court case indicate that such modifications to this jurisprudential rule are appropriate. Plaintiff has provided the Court with no such authority, so the Court will apply the rule as quoted above from the *Genesis Energy* case.

Plaintiff further argues that Yeargain "was not acting within the course and scope of his employment" when he made the statements because he was not speaking within his duties as a professor. (*Id.*) Defendants disagree, noting that Plaintiff himself has alleged that the Faculty Senate meetings were related to employment matters. (Doc. 204 at 4 (citing Doc. 1 at ¶¶ 14, 44, 47).) Plaintiff argues in his sur-reply that Yeargain's statements went beyond his role as Parliamentarian at the meetings. (Doc. 207 at 4.) Based on the allegations in Plaintiff's *Complaint*, the Court finds that Yeargain's statements at the Faculty Senate meetings, in which meetings members discuss issues such as policies that have negative impacts on scholarship and teaching at SLU (Doc. 1 at ¶ 47(c)), were made within the scope of Yeargain's employment at SLU.

Plaintiff's *Opposition* claims the Faculty Senate meetings were open meetings and that the October meeting was attended by students and others who were not on the Facutly Senate. (Doc. 203 at 8.) If the statements were made in the presence of non-employees, the intra-corporate communication rule does not apply. *See Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018) (noting that statements covered by the rule are those between employees); *Cook*, 621 F. Supp. 3d at 676 (same). There are no allegations in the *Complaint* or the *Amended*

*Complaint* that the September meeting was public or that members of the public were present, so based on the face of the pleadings, the statements made at that meeting were intra-corporate communications. Therefore, Plaintiff has failed to plausibly plead that the statements at the September meeting were subject to an unprivileged publication to a third party, and his defamation claims regarding these statements must be dismissed.

However, the *Complaint* indicates that at least two students were at the October meeting. (Doc. 1 at ¶ 52(a)–(b).) Therefore, the statements in that meeting were not intra-corporate communications, and the publication element has been plausibly pled.

### b.  False and Defamatory Statement

Under Louisiana law, there are three key questions "in the determination of whether a given communication is defamatory." *Johnson v. Purpera*, 2020-1175 (La. 5/13/21), 320 So. 3d 374, 388. As the Louisiana Supreme Court explained:

> The first is whether the communication was reasonably capable of conveying the particular meaning or innuendo ascribed to it by the plaintiff. The second is whether that meaning is defamatory in character. And, finally, the third question is whether the meaning in question was in fact conveyed to and understood by the recipient of the communication. The first two questions are reserved for resolution by the court. The third is for the jury or the trier of fact to decide.

*Id.* (citing *Sassone v. Elder*, 626 So. 2d 345, 352 (La. 1993); Restatement (Second) of Torts § 614 (1977)).

The *Amended Complaint* alleges all Yeargain's statements were "made with knowing falsity and/or reckless disregard for the truth." (Doc. 196 at ¶ 113.) Thus, Plaintiff's allegation is that Yeargain knowingly or recklessly made false statements. The *Amended Complaint* also alleges that one defamatory statement was made at the October meeting: Yeargain "recommend[ed] that the Plaintiff obtain counseling" because he was "out of touch with reality." (Doc. 196 at ¶ 109.) Plaintiff asserts that this statement was defamatory because it implied that he was psychotic. (*Id.*)

19

This Court has already found that Yeargain's alleged recommendation that Plaintiff obtain counseling was not a statement of fact but an expression of opinion—that Yeargain believed Plaintiff needed and should get counseling. (Doc. 195 at 57.) As a practical matter, "the crucial difference between statement of fact and opinion depends on whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Purpera*, 320 So. 3d at 394 (quoting *Mashburn v. Collin*, 355 So. 2d 879, 885 (La. 1977)). Defamation, including defamation by innuendo, does not apply to a pure statement of opinion because such a statement "can neither be true nor false." *Id.* Thus, "if a statement expresses an opinion, unless the opinion implies a false and libelous fact, a defamation action will not succeed." *Id.*

However, "if a statement of opinion implies that certain facts exist, then such a statement, even though couched in terms of an opinion, could certainly give rise to a defamation action if the implied factual assertions are defamatory and false." *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99), 737 So. 2d 706, 717 (citing *Freeman v. Cooper*, 414 So. 2d 355 (La. 1982)). That said, "the factual inference created by the statement of opinion must be ascertainable by a reasonable person with some degree of certainty." *Id.* (cleaned up) (quoting *Bussie v. Lowenthal*, 535 So. 2d 378, 378 (La. 1988)). "In sum, an expression of opinion is actionable only if it implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, made with actual malice, and concern another." *Id.*

This Court has previously found that the statement that Plaintiff should obtain counseling because he is out of touch with reality implies the existence of facts (*i.e.*, that Plaintiff had a condition requiring counseling). (Doc. 195 at 57.) The *Amended Complaint* supports this finding by alleging that SLU, through its former president, was aware that Plaintiff had suffered from and

20

received counseling for depression and bipolar II disorder. (Doc. 196 at ¶ 110.) However, the *Amended Complaint* alleges the statement implies a different, more specific fact—that Plaintiff was psychotic.[1] (Doc. 196 at ¶ 109.) The Court must determine whether the communication at issue—i.e., Yeargain's alleged statement that that Plaintiff should obtain counseling because he is "out of touch with reality"—is reasonably capable of conveying this alleged innuendo. *Purpera*, 320 So. 3d at 388. Based on the face of the pleadings, it is not.

Yeargain's alleged statement about Plaintiff being out of touch with reality and needing counseling reasonably implies that Plaintiff has some condition that requires counseling. The *Amended Complaint* supports this inference by specifically alleging that SLU was aware that Plaintiff has received counseling for depression and bipolar II disorder and that Plaintiff's physician Dr. Heintz recommended that Plaintiff continue medicating and going to psychotherapy. (Doc. 196 at ¶ 111.) These allegations also indicate that Yeargain's statement that Plaintiff should get counseling was based in truth. To say Yeargain's statement implies that Plaintiff is affected with psychosis, a serious mental health condition, seems too attenuated from the facts alleged in the pleadings to be a plausible inference. Plaintiff has not plausibly pled that Yeargain's alleged statement of opinion—that Plaintiff should get counseling because he is out of touch with reality— implies a false and defamatory fact. Based on the pleadings, the statement is therefore an opinion upon which "a defamation action will not succeed." *Purpera*, 320 So. 3d at 394. Accordingly, Plaintiff's defamation claim against Yeargain must be dismissed for failure to state a claim.

### iv.    Discretionary Function Immunity

---

[1] "Psychotic" is defined as "of, relating to, marked by, or affected with psychosis." *Psychotic*, MERRIAM-WEBSTER (12th ed. 2025). "Psychosis" is defined as "a serious mental illness (such as schizophrenia) characterized by defective or lost contact with reality often with hallucinations or delusions." *Psychosis*, MERRIAM-WEBSTER (12th ed. 2025).

Defendants argue the discretionary function immunity protects Crain and Dupre against Plaintiff's claims. (Doc. 199-1 at 5.) Plaintiff, however, asserts that the discretionary function immunity is an affirmative defense that should not be adjudicated on a motion to dismiss. (Doc. 203 at 1.) Louisiana Revised Statutes § 2798.1 provides in relevant part, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. 9:2798.1(B).

When analyzing this discretionary function immunity, "a court must initially determine whether the governmental agency had a choice or discretion regarding whether to follow a particular course of action." *Fetty v. Louisiana State Bd. of Priv. Sec. Exam'rs*, 611 F. Supp. 3d 230, 246–47 (M.D. La. 2020) (deGravelles, J.) (citing *Johnson v. Orleans Par. Sch. Bd.*, 2006-1223 (La. App. 4 Cir. 1/30/08), 975 So. 2d 698, 709). The immunity does not apply if the governmental action was not discretionary but was instead dictated by a statute, regulation, or policy. *Id.* at 247 (citing *Orleans Par. Sch. Bd.*, 975 So. 2d at 709–10). "However, if there was no prescribed duty, the defendant must then introduce evidence at trial that the choice was grounded in social, economic, or political policy." *Id.* (internal quotation marks omitted) (quoting *Orleans Par. Sch. Bd.*, 975 So. 2d at 710). This "is a question of fact to be determined through a trial." *Hampton v. Praetorian Ins. Co.*, No. 18-3528, 2020 WL 256148, at *9 (E.D. La. Jan. 17, 2020); *Bouchereau*, 2015 WL 5321285, at *15 (quoting *Lambert v. Riverboat Gaming Enf't Div.*, 96-1856 (La. App. 1 Cir. 12/29/97), 706 So. 2d 172, 177–78).

Even assuming it were appropriate to evaluate the "social, economic, or political policy" issue at the motion to dismiss stage, which is questionable, the Court need not do so here because

Plaintiff's claims have been dismissed on other grounds. The Court, therefore, will deny the *MTD* on this issue as moot.

## IV.    RULE 11 SANCTIONS

If a court determines the contentions in a pleading are not warranted by existing law or are unlikely to have evidentiary support after further investigation or discovery, the court "may impose an appropriate sanction on any attorney, law firm, or party" that is responsible for the frivolous pleading. Fed. R. Civ. P. 11(c)(1). Such sanctions may not be imposed until the offending attorney, law firm, or party has had notice and a reasonable opportunity to respond. *Id.* A party may file a motion for Rule 11 sanctions and be awarded "reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). However, such motion "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* Additionally, before the motion is filed or presented to the Court, it must be served under Rule 5 of the Federal Rules of Civil Procedure, and the offending attorney, law firm, or party must be given twenty-one days after service to withdraw or appropriately correct the challenged paper, claim, defense, contention, or denial. *Id.* "This 'safe harbor' provision in Rule 11 is a mandatory prerequisite for a Rule 11 motion." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 388 (5th Cir. 2022) (citing *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995)).

Defendants' request for Rule 11 sanctions must be denied because Defendants did not comply with Rule 11(c)(2). First, Defendants' sanction request was made in the *MTD* instead of in a separate motion for sanctions. Second, the *MTD* did not indicate whether Defendants complied with Rule 11's safe harbor requirement prior to filing their request before this Court. Therefore, Defendants' request for sanctions is denied.

## V.    LEAVE TO AMEND

Plaintiff has not requested leave to amend. Should he do so, the Court will deny such request. The Court previously afforded Plaintiff an opportunity to amend his pleadings and warned him to have "a good faith basis in law and fact" for the amendment. (Doc. 193 at 2.) Plaintiff's *Opposition* to the *MTD* gives no indication that facts that could change the outcome of this Court's ruling were omitted from the *Amended Complaint*. Thus, the Court finds that the facts alleged in the *Amended Complaint* constitute Plaintiff's best case.

Federal Rule of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely," and "the language of this rule evinces a bias in favor of granting leave to amend." *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 678 (M.D. La. 2019) (deGravelles, J.). But "the Fifth Circuit has made clear that 'denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.'" *Id.* at 679 (citing *Boggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment is deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.* Plaintiff's opposition duplicates many of the allegations in the *Amended Complaint* and provides no new factual allegations that, if added to the *Amended Complaint*, would affect the Court's ruling. For the reasons given above, the Court believes that further amendment would be futile and therefore would deny leave to amend if it were requested. *See id.* (denying leave to amend when plaintiff should have had notice of issue from court's ruling on original motion to dismiss, and when further amendment would be futile); *Skinner v. Ard*, 519 F. Supp. 3d 301, 322 (M.D. La. 2021) (deGravelles, J.) (same); *Martin v. Roy*, No. 20-339, 2022 WL 894599, at *14 (M.D. La. Mar. 25, 2022) (deGravelles, J.) (same).

Furthermore, this case has been pending before this Court since September 26, 2019. (Doc. 1.) The jury trial date has been reset or continued numerous times due to motions regarding the sufficiency of Plaintiff's pleadings, which motions were granted and Plaintiff's case dismissed.

24

25

(*E.g.*, Docs. 157, 183, 193.) If there are additional facts Plaintiff wishes to add to his pleadings, it is unclear to the Court why Plaintiff omitted them from his *Amended Complaint*, especially since this case has been pending for nearly seven years and Plaintiff was warned to ensure his *Amended Complaint* was supported by law and fact. Considering the unexplained delay in adding potential new allegations to the pleadings and the futility of the amendment, the Court sees no reason to allow Plaintiff leave to amend.

[*continued on next page*]

VI.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Defendants' Rule 12(b)(6) Motion to Dismiss on Behalf of Dr. John Crain, Tara Dupre, and Dr. John Yeargain*, (Doc. 199) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion* is **GRANTED** insofar as Plaintiff's claims against Defendants Dr. John L. Crain, Tara Dupre, and Dr. John Yeargain are **DISMISSED WITH PREJUDICE**. Plaintiff's claims against Defendant Dr. John L. Crain are improperly before the Court due to Plaintiff's violation of Rule 15 of the Federal Rules of Civil Procedure and are **DISMISSED WITH PREJUDICE**. Plaintiff's claims against Defendants Tara Dupre and Dr. John Yeargain are **DISMISSED WITH PREJUDICE** for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendants' request for dismissal due to Louisiana's discretionary function immunity, Louisiana Revised Statutes § 9:2798.1, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the *Motion* is **DENIED** to the extent it seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Signed in Baton Rouge, Louisiana, on <u>March 27, 2026</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

26